UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| In re KOSMOS ENERGY LTD SECURITIES LITIGATION | § § § | Consolidated Civil Action No. 3:12-cv-373-B |
| | § | <u>CLASS ACTION</u> |
| This Document Relates To: | § § | |
| ALL ACTIONS. | § § | |
| | § | |

CONSOLIDATED COMPLAINT

## INTRODUCTION

1.        This is a securities class action on behalf of all persons who acquired the common stock of Kosmos Energy Ltd. ("Kosmos" or the "Company") pursuant to a false and misleading Registration Statement and Prospectus (collectively, the "Registration Statement") utilized in connection with Kosmos's May 11, 2011 initial public offering (the "Class").[1]  This case is brought against Kosmos, its Chief Executive Officer, Chief Financial Officer, Vice President and Controller, its board of directors, the investment banks which underwrote Kosmos's initial public offering ("IPO"), as well as the two private equity firms which have controlled Kosmos since 2003.  This case arises out of defendants' sale of approximately $620 million of Kosmos common stock to Lead Plaintiff and the Class at a price of $18 per share.  Lead Plaintiff asserts **strict liability claims** brought under §§11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act").

## SUMMARY OF THE ACTION

2.        Kosmos is an oil exploration and production company with a particular focus in West Africa.  In June 2007, Kosmos discovered a large deepwater oil field offshore Ghana called the Jubilee Field (or "Jubilee").  The Jubilee Field was one of the largest oil discoveries worldwide in 2007 and the largest find offshore West Africa in the last decade.  In July 2009, Kosmos entered into partnership with Tullow Oil PLC and Anadarko Petroleum Corp. and other gas exploration companies to spend over $3.3 billion to develop Jubilee.

3.        Oil production from Jubilee began on November 28, 2010, and Kosmos received its first oil revenues in early 2011.  Throughout the relevant time period, oil sales from Jubilee were the Company's sole source of revenue.

---

[1]        The Registration Statement and Prospectus are identical in all relevant parts.  Every false and misleading statement alleged herein to be contained in the Registration Statement was also contained in the Prospectus.

795364_1

4.       In 2011, Kosmos filed a Registration Statement with the Securities and Exchange Commission ("SEC") in connection with the planned sale of Kosmos common stock to the public. On May 10, 2011, the Registration Statement was declared effective by the SEC and defendants sold approximately $620 million of Kosmos stock pursuant thereto.  The Registration Statement included several false and misleading statements, including:

> (a)    "Since year-end [2010], our current production continues to increase according to our plan, currently achieving 60,000-70,000 boepd [barrels of oil equivalent per day]";
>
> (b)    "We expect gross oil production from the Jubilee Field to reach . . . 120,000 barrels of oil per day ("bopd") in the third quarter of 2011'';
>
> (c)    "Our current production is consistent with our development plan and there have been *no negative indicators* that our production forecast [120,000 bopd] will not be met in 2011"; and
>
> (d)    A chart on page 91, which showed that the J-08 and J-09 wells were producing oil and had been drillstem tested at 16,500 bopd and 20,500 bopd, respectively.

5.       Oil sales from Jubilee have been the Company's only source of revenue since its inception.  Thus, although Jubilee's oil production rates and the Company's projected oil production were critical to investor decision-making, the facts about serious oil production problems at Jubilee prior to the IPO were omitted from the Registration Statement.  Given the importance of the Company's oil production and these problems at Jubilee, they have been a focus on most – if not all – of Kosmos's earnings conference calls and investment conferences since the IPO.  The now-public production problems at Jubilee omitted from the Registration Statement caused significant delays, hundreds of millions of dollars in remediation expenses and hundreds of millions of dollars in lost revenue.

6.       By August 2012, Kosmos's stock had declined to an all-time low of $8.19, approximately 50% below the IPO offering price.  Lead Plaintiff and the Class who purchased Kosmos stock pursuant and/or traceable to the false and misleading Registration Statement have

suffered hundreds of millions of dollars of economic loss as a result of their purchases of Kosmos stock.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under and pursuant to §§11, 12, and 15 of the Securities Act (15 U.S.C. §§77k, 77l(a)(2) and 77o).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act.

9.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because defendants maintain an office in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

10.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

11.     Lead Plaintiff Nursing Homes and Related Industries Pension Plan acquired the common stock of Kosmos pursuant and/or traceable to the IPO, as set forth in its Private Securities Litigation Reform Act certification previously filed in this case and incorporated by reference herein, and has been damaged thereby.

12.     Defendant Kosmos is a Bermuda corporation with its U.S. headquarters in Dallas, Texas.  Kosmos maintains its headquarters at 8176 Park Lane, Suite 500, Dallas, Texas 75231.

13.     Defendant Brian F. Maxted ("Maxted") was, at all relevant times, Chief Executive Officer and a director of Kosmos.  Maxted signed the false and misleading Registration Statement.

14.     Defendant W. Greg Dunlevy ("Dunlevy") was, at all relevant times, the Chief Financial Officer and Executive Vice President of Kosmos.  Dunlevy signed the false and misleading Registration Statement.

15.     Defendant Sylvia Manor ("Manor") was, at all relevant times, Vice President and Controller of Kosmos.  Manor signed the false and misleading Registration Statement.

16.     Defendant John R. Kemp III ("Kemp") was, at all relevant times, a director of Kosmos and Chairman of the Board.  Kemp signed the false and misleading Registration Statement.

17.     Defendant David I. Foley ("Foley") was, at all relevant times, a director of Kosmos. Foley was The Blackstone Group L.P.'s designee on the Kosmos board.  Foley signed the false and misleading Registration Statement.

18.     Defendant Jeffrey A. Harris ("Harris") was, at all relevant times, a director of Kosmos.  Harris was Warburg Pincus LLC's designee on the Kosmos board.  Harris signed the false and misleading Registration Statement.

19.     Defendant David B. Krieger ("Krieger") was, at all relevant times, a director of Kosmos.  Krieger was Warburg Pincus LLC's designee on the Kosmos board.  Krieger signed the false and misleading Registration Statement.

20.     Defendant Prakash A. Melwani ("Melwani") was, at all relevant times, a director of Kosmos.  Melwani was The Blackstone Group L.P.'s designee on the Kosmos board.  Melwani signed the false and misleading Registration Statement.

21.     Defendant Adebayo O. Ogunlesi ("Ogunlesi") was, at all relevant times, a director of Kosmos.  Ogunlesi signed the false and misleading Registration Statement.

22.     Defendant Chris Tong ("Tong") was, at all relevant times, a director of Kosmos. Tong signed the false and misleading Registration Statement.

23.     Defendant Christopher A. Wright ("Wright") was, at all relevant times, a director of Kosmos.  Wright signed the false and misleading Registration Statement.

24.     Defendants referenced in ¶¶13-23 are collectively referred to as the "Individual Defendants."

25.     By reason of their management positions and their ability to make public statements in the name of Kosmos, the Individual Defendants were and are controlling persons, and had the power and influence to cause – and did cause – Kosmos to engage in the conduct complained of herein.

26.     Defendants Citigroup Global Markets Inc. ("Citigroup"), Barclays Capital Inc. ("Barclays") and Credit Suisse Securities (USA) LLC ("Credit Suisse") served as co-lead underwriters for the IPO, and participated in the drafting and/or dissemination of the Registration Statement as well as the sale of approximately $620 million of Kosmos stock to Lead Plaintiff and the Class.

27.     Defendants BPN Paribas Securities Corp., SG Americas Securities LLC, Credit Agricole Securities (USA) Inc., Howard Weil Incorporated, HSBC Securities (USA) Inc., Jefferies & Company, Inc., Natixis Bleichroeder LLC and RBC Capital Markets LLC, each acted as underwriters of the IPO, and participated in the drafting and/or dissemination of the Registration Statement as well as the sale of approximately $620 million of Kosmos stock to Lead Plaintiff and the Class.

28.     The defendants referenced in ¶¶26 and 27 are referred to collectively as the "Underwriter Defendants."

29.     Defendant The Blackstone Group L.P. ("Blackstone") is a leading private equity company and venture capital firm.  Defendant Blackstone owns a significant position in Kosmos.  As detailed in the Registration Statement, Blackstone controlled Kosmos both before and after the IPO.

- 5 -

30.     Defendant Warburg Pincus LLC ("Warburg") is a leading private equity company and venture capital firm.  Defendant Warburg owns a significant position in Kosmos.  As detailed in the Registration Statement, Warburg controlled Kosmos both before and after the IPO.

31.     At all relevant times, defendants Blackstone and Warburg have controlled a majority of the voting power of Kosmos's issued and outstanding common shares, and have acted and continue to act together to control Kosmos.  At the start of the IPO, Blackstone and Warburg owned approximately 37% and 45% of the Company, respectively.

32.     Defendant Kosmos and the Individual Defendants who signed the Registration Statement are strictly liable for the false and misleading statements incorporated into the Registration Statement.  Each of the Underwriter Defendants are likewise liable as they acted as part of the Underwriting Syndicate which drafted and disseminated the Registration Statement in connection with the IPO and were paid more than $35 million in connection therewith.  The Underwriter Defendants were responsible for ensuring the completeness and accuracy of the various statements contained in, or incorporated by reference into, the Registration Statement.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS AND OMISSIONS MADE IN THE REGISTRATION STATEMENT

33.     On May 10, 2011, the SEC declared the Registration Statement effective and defendants sold approximately 35 million shares, or approximately $620 million, of Kosmos common stock to Lead Plaintiff and members of the Class at $18 per share.

34.     The Registration Statement was false and misleading in that it contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not misleading and was not prepared in accordance with applicable rules and regulations.

35.     The Registration Statement was false and misleading in that it repeatedly misrepresented the progress the Company was making in oil production at the Jubilee Field.  For example, the Registration Statement stated that:

795364_1

(a) "Since year-end [2010], our current production continues to increase according to our plan, currently achieving 60,000-70,000 boepd [barrels of oil equivalent per day]";

(b) "We expect gross oil production from the Jubilee Field to reach . . . 120,000 barrels of oil per day ("bopd") in the third quarter of 2011";

(c) "Our current production is consistent with our development plan and there have been **no negative indicators** that our production forecast [120,000 bopd] will not be met in 2011"; and

(d) the J-08 and J-09 wells were producing oil and had been drillstem tested at 16,500 bopd and 20,500 bopd, respectively.

**The Rate of Jubilee Oil Production Had Not Been Increasing Since Year-End 2010**

36.     Page 71 of the Registration Statement stated that "[s]ince year-end [2010], our current production continues to increase according to our plan, currently achieving 60,000-70,000 boepd [barrels of oil equivalent per day]." This statement was false and misleading when made. The true facts were that oil production from the Jubilee Field was consistently below Company expectations between year-end 2010 and the date of the IPO. In fact, total oil production had remained flat, failing to increase even as two additional wells came online prior to the effective date of the Registration Statement.

37.     At year-end 2010, Kosmos was producing 55,000 bopd from **three** production wells at the Jubilee Field. By the IPO, Kosmos was **still** only producing approximately 55,000 bopd from **five** production wells at Jubilee.[2]  Thus, between year-end 2010 and the May 2011 IPO, Kosmos brought two additional wells online, but total oil production flat-lined as each well substantially underperformed projections and decreased in production. In fact, average per-well oil production at

---

[2]     Kosmos's statement of current production in ¶35(a) is given as 60,000-70,000 **boepd** (barrels of oil equivalent per day). At Jubilee, that range is approximately equal to 50,000-60,000 **bopd** (barrels of oil per day). In other words, at the IPO in May 2011, Jubilee production was approximately 55,000 **bopd**, just as it was at year-end 2010. The **boepd** measurement includes natural gas production, from which Kosmos receives no revenue whatsoever.

Jubilee had ***decreased by nearly 40%*** in the five months leading up to the IPO.  This was indicative of major Jubilee production problems, which were not disclosed in the Registration Statement.

**There Was No Reasonable Basis for the Company's 120,000 bopd Production Forecast**

38.    At page 1, the Registration Statement further stated that "***[w]e expect gross oil production from the Jubilee Field to reach . . . 120,000 barrels of oil per day ("bopd") in the third quarter of 2011" (the "Production Forecast")***.  This statement was false and misleading when made.

39.    The true facts were that defendants had no reasonable basis to expect, and did not in fact expect, 3Q 2011 oil production to reach 120,000 bopd.  At the time of the IPO, five of the nine planned production wells were online, and had exhibited major productivity problems within days or weeks of being brought online.  When Jubilee production commenced near the end of 2010, per-well oil production had almost immediately been below Company expectations and continued to ***decline*** in the months leading up to the IPO.  By the IPO, these Jubilee wells were underperforming their projected flow rates by at least 20%-30%, with one well underperforming by almost 50%.  These substantial production shortfalls and declines were set forth in daily production reports which were available to defendants and provided oil production figures on each well.  In fact, as of the date of the IPO, Kosmos still did not have a remediation plan in place and was merely evaluating a wide variety of options to rectify the major production shortfalls at Jubilee.

**Contrary to Defendants' Statements There Were Several Negative Indicators Adversely Impacting the Production Forecast**

40.    The Registration Statement at page 71 further stated that "***[o]ur current production is consistent with our development plan and there have been no negative indicators that our Production Forecast [120,000 bopd] will not be met in 2011***."  This statement was also false and misleading when made, as there were several severely negative indicators that were having an

adverse impact on the Production Forecast, indicating that 120,000 bopd would **not** be realized at Jubilee in 2011.  These negative indicators, which existed at the time of the IPO, included:

(a)     That the total rate of Jubilee oil production had not increased, even as additional wells came online.  This factor substantially undercut the Company's Production Forecast as the flat-lining of oil production that occurred in the five months preceding the IPO was indicative of serious oil production problems.  *See* ¶¶36-37;

(b)     That despite the fact that five of the nine planned production wells were online at the date of the IPO, none of those five wells were producing as projected.  Instead, all five wells were underperforming their projected flow rates by 20%-50% and had declined leading up to the IPO.  These facts substantially undercut the production forecast for two reasons: (i) each of the five individual well production shortfalls detracted from the Company's total projection of 120,000 bopd, and (ii) the fact that all five of the production wells online prior to the IPO had been significantly underperforming indicated that the four remaining production wells would exhibit similar shortfalls once they came online;

(c)     That a catastrophic structural failure had occurred on the J-01 well during 2010, which had resulted in a cost over-run of $90 million and pushed the production schedule back by two months;

(d)     That the Jubilee wells suffered from a design defect which adversely impacted oil productivity and precluded them from reaching the 120,000 bopd Production Forecast;[3]

(e)     That extensive rig maintenance during April and May 2011 – **before the IPO** – became a major impediment to the Company's Production Forecast. Specifically, one of Kosmos's oil rigs had required extensive maintenance and repairs on its blowout preventer ("BOP"), which cost Kosmos $43 million and a delay of approximately 40 days in its production schedule; and

(f)     That because of (a)-(e) above, defendants had no reasonable basis to expect, and did not in fact expect, Jubilee oil production to reach 120,000 bopd in 2011.

---

[3]     The design defect in the Jubilee production wells was that filtration screens in the well were designed with holes that were too small.  As a result, the wells became partially clogged almost immediately after oil production began, thus decreasing total production at Jubilee.

**The Misleading Production Numbers for the J-08 and J-09 Wells**

41.     A chart on page 91 of the Registration Statement provided that the J-08 and J-09

wells were producing oil, and had been drillstem tested at 16,500 bopd and 20,500 bopd,

respectively.  This statement was misleading when made, as the Registration Statement omitted

material facts necessary to make this statement not misleading.

42.     The Registration Statement provided information regarding each individual well at

Jubilee.  Five of these wells were listed in "producing" status, but the actual oil flow rate was not

provided for any of the five producing wells.  As of the IPO, the J-08 and J-09 wells were online and

producing oil at rates 20%-30% *below* their drillstem-tested rates, and both wells failed to increase in

productivity at all in the months leading up to the IPO.  Defendants omitted this information and

included only the drillstem test rates for J-08 and J-09.  A drillstem test is simply a preliminary test –

conducted during drilling, before the actual well is even constructed (or "completed") – used to

predict how much oil a well will produce once that well is built and brought online.  However, once

an oil well is constructed and comes into production, any prior drillstem test is irrelevant to

measuring well productivity.  It  was therefore misleading for Kosmos to provide preliminary test

numbers and omit the actual oil production rates which were far below the outdated and irrelevant

drillstem test rates.

**Jubilee Production Problems Disclosed After the IPO**

43.     At the beginning of 3Q 2011, one of Kosmos's partners revealed that oil production

from Jubilee was approximately 80,000 bopd, 40,000 barrels below the projected 120,000 bopd.

44.     On August 11, 2011 – just two months after selling its last share into the market—

Kosmos reported disappointing production numbers alongside second quarter earnings.  On that day,

a Company release revealed that total Jubilee production was a meager 80,000 bopd.  This came in

the middle of 3Q 2011, the time by which Kosmos said it expected to reach 120,000 bopd.  Worse,

- 10 -

the aggregate 80,000 bopd was being produced with eight of the nine planned production wells already constructed and online. These numbers, while entirely inconsistent with key statements in the Registration Statement, marked a mere continuation of the well productivity problems occurring at Jubilee before the IPO.

45.     Kosmos continued to report disappointing production numbers with its third quarter earnings performance, again announcing that it was still producing just 80,000 bopd.  To this day, Kosmos has never even come close to reaching its Jubilee Production Forecast of 120,000 bopd.

46.     The price of Kosmos stock has fallen drastically since the IPO.  Defendants' failure to disclose the true facts in connection with the IPO has had a significant, negative impact on investors who purchased Kosmos stock, causing hundreds of millions of dollars of losses to Lead Plaintiff and the Class.

## CLASS ACTION ALLEGATIONS

47.     Lead Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired shares of Kosmos common stock pursuant or traceable to the Company's false and misleading Registration Statement and were damaged thereby.  Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

48.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Lead Plaintiff at this time and can only be ascertained through appropriate discovery, Lead Plaintiff believes that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Kosmos or its transfer agent and may be notified of the

795364_1

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

49.     Lead Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

50.     Lead Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

51.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)     whether the Registration Statement was false or misleading;

        (b)     whether the Securities Act was violated by defendants' acts as alleged herein; and

        (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

52.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### Violations of §11 of the Securities Act
### Against All Defendants Except Blackstone and Warburg

53.     Lead Plaintiff repeats and realleges each and every allegation contained above, except any allegation construed to allege fraud or intentional misconduct.

795364_1

54.     This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants except Blackstone and Warburg.

55.     Lead Plaintiff acquired Kosmos common stock pursuant and/or traceable to the Registration Statement.

56.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

57.     Kosmos is the registrant for the IPO.  As issuer of the common stock, Kosmos is strictly liable to Lead Plaintiff and the Class for the misstatements and omissions in the Registration Statement.

58.     The defendants named in this Count were responsible for the contents and dissemination of the Registration Statement.  None of the defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

59.     By reason of the conduct herein alleged, each defendant named in this Count violated §11 of the Securities Act.

60.     Lead Plaintiff and the Class have sustained damages.  The value of Kosmos common stock has declined substantially subsequent to the IPO as a result of defendants' violations.

61.     At the time of their purchases of Kosmos common stock, Lead Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to March 1, 2012.  Less than one year has elapsed from the time that Lead Plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that Lead Plaintiff filed this complaint.  Less

- 13 -

than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time this action was commenced.

## COUNT II

### Violation of §12(a)(2) of the Securities Act
### Against All Defendants

62.    Lead Plaintiff repeats and realleges each and every allegation contained above, except any allegation construed to allege fraud or intentional misconduct.

63.    This Count is brought pursuant to §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of the Class, against all defendants.

64.    The Prospectus contained untrue statements of material fact, and omitted material facts necessary to make the statements made therein not misleading as detailed above.  Defendants owed Lead Plaintiff and the other members of the Class who purchased Kosmos stock pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

65.    Defendants sold Kosmos stock directly to Lead Plaintiff and/or other members of the Class for financial gain by means of the false and misleading Prospectus prepared and used in connection with the IPO.  Specifically, Kosmos, Individual Defendants, Blackstone and Warburg selected the Underwriter Defendants to sell Kosmos stock in connection with the IPO.  Pursuant to an underwriting agreement, Kosmos issued and Underwriter Defendants underwrote and promoted the sale of Kosmos stock to Lead Plaintiff and the Class.  All Defendants participated in the preparation and dissemination of the false and misleading Prospectus for their own financial benefit.

- 14 -

The Prospectus was calculated to create investor interest in Kosmos stock, and was widely distributed by or on behalf of defendants for that purpose.

66.      Lead Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Registration Statement and the Prospectus incorporated therein at the time Lead Plaintiff acquired the Company's shares.

67.      By reason of the conduct alleged herein, defendants violated §12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, Lead Plaintiff and the other members of the Class who purchased Kosmos common stock pursuant to the Prospectus sustained substantial damage in connection with their purchase of Kosmos common stock.  Accordingly, Lead Plaintiff and the other members of the Class who hold such common stock have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to the defendants sued herein.  Lead Plaintiff seeks damages on behalf of those Class members who have sold their shares of Kosmos common stock.

## COUNT III

### Violations of §15 of the Securities Act
### Against Individual Defendants, Blackstone and Warburg

68.      Lead Plaintiff repeats and realleges each and every allegation contained above, except any allegation construed to allege fraud or intentional misconduct.

69.      This Count is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o, against the Individual  Defendants, Blackstone and Warburg.

70.      Each of the Individual Defendants, Blackstone and Warburg was a control person of Kosmos by virtue of his or her position as an owner, director and/or senior officer of Kosmos.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Kosmos.  At the start of the IPO, Blackstone owned 37% and Warburg owned 45% of the Company.  Blackstone exercised

- 15 -

control over Kosmos through Blackstone's designees on the Company's board of directors, defendants Melwani and Foley.  Warburg exercised control through its designated directors, defendants Krieger and Harris.

71.     Each of the Individual Defendants, Blackstone and Warburg was a culpable participant in the violations of §11 of the Securities Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process, which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying Lead Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Lead Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Lead Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.     Awarding rescission or a rescissory measure of damages; and

E.     Such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Lead Plaintiff hereby demands a trial by jury.

DATED:  December 10, 2012

ROBBINS GELLER RUDMAN
  & DOWD LLP
X. JAY ALVAREZ
LUCAS F. OLTS


s/ X. JAY ALVAREZ
X. JAY ALVAREZ

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

KENDALL LAW GROUP, LLP
JOE KENDALL (State Bar No. 11260700)
JAMIE J. MCKEY (State Bar No. 24045262)
3232 McKinney Avenue, Suite 700
Dallas, TX  75204
Telephone:  214/744-3000
214/744-3015 (fax)

Liaison Counsel

- 17 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 10, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 10, 2012.

s/ X. JAY ALVAREZ
X. JAY ALVAREZ

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:jaya@rgrdlaw.com

## Mailing Information for a Case 3:12-cv-00373-B

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **X Jay Alvarez**
  JayA@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Theodore Carl Anderson , III**
  tca@kilgorelaw.com,pam@kilgorelaw.com

- **Bruce D Angiolillo**
  bangiolillo@stblaw.com

- **Robert M Behrendt**
  rmb@kilgorelaw.com,ddb@kilgorelaw.com

- **Willie Briscoe**
  wbriscoe@thebriscoelawfirm.com

- **Warren T Burns**
  wburns@susmangodfrey.com,eehrenfeld@susmangodfrey.com

- **Daniel H Charest**
  dcharest@susmangodfrey.com,rlicon@susmangodfrey.com

- **Deborah Clark-Weintraub**
  dweintraub@scott-scott.com,edewan@scott-scott.com,efile@scott-scott.com

- **Amber L Eck**
  Ambere@zhlaw.com

- **Nicholas Even**
  nick.even@haynesboone.com,cecelia.madej@haynesboone.com

- **Carol E Farquhar**
  carolf@lfdlaw.com,betsya@lfdlaw.com

- **William B Federman**
  wbf@federmanlaw.com,ngb@federmanlaw.com,law@federmanlaw.com

- **Jim L Flegle**
  jimf@lfdlaw.com,dylans@lfdlaw.com,coreyw@lfdlaw.com,lisaf@lfdlaw.com,monicaj@lfdlaw.com

- **Lionel Z Glancy**
  lglancy@glancylaw.com,dmacdiarmid@glancylaw.com,mmgoldberg@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **Katherine L I Hacker**
  khacker@susmangodfrey.com,rlicon@susmangodfrey.com

- **Carrie Lee Huff**
  huffc@haynesboone.com,kimberly.dean@haynesboone.com

- **Andrew Eric Jackson**
  ajackson@velaw.com,schiniara@velaw.com

- **James I Jaconette**
  jamesj@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Geoffrey Johnson**
  gjohnson@scott-scott.com,aslaughter@scott-scott.com

- **Joe Kendall**
  administrator@kendalllawgroup.com,jkendall@kendalllawgroup.com

- **Veronica S Lewis**
  VLewis@gibsondunn.com,CFitzgerald@gibsondunn.com

- **Hamilton Philip Lindley**
  hlindley@goldfarbllp.com,bhamilton@goldfarbllp.com,ccashion@goldfarbllp.com

- **Brian M Lutz**
  BLutz@gibsondunn.com

- **James A Maro**
  jmaro@ktmc.com,pleadings@ktmc.com

- **Tricia L McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jamie Jean McKey**
  jmckey@kendalllawgroup.com,bgribble@kendalllawgroup.com

- **Lucas F Olts**
  lolts@rgrdlaw.com,stremblay@rgrdlaw.com

- **Terrell W Oxford**
  toxford@susmangodfrey.com,kswecker@susmangodfrey.com

- **Shruti Raju**
  sraju@stblaw.com

- **Matthew R Stammel**
  mstammel@velaw.com,schiniara@velaw.com

- **Stephen D Susman**
  ssusman@susmangodfrey.com,jmccrary@susmangodfrey.com

- **John C Wander**
  jwander@velaw.com,sadavis@velaw.com

- **Jonathan K Youngwood**
  jyoungwood@stblaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Brian F Maxted**
901 Main Street
Suite 5100
Dallas, TX 75202

**Darren          J Robbins**
Robbins Geller Rudman & Dowd LLP
655 W Broadway
Suite 1900
San Diego, CA 92101-3301