UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| In re KOSMOS ENERGY LTD SECURITIES LITIGATION | § § § | Consolidated Civil Action No. 3:12-cv-373-B |
| | § | CLASS ACTION |
| This Document Relates To: | § § § | |
| ALL ACTIONS. | § § § | |

**APPENDIX IN SUPPORT OF DEFENDANT WARBURG PINCUS LLC'S
MOTION TO DISMISS AND OPENING BRIEF IN SUPPORT**

| Exhibit | Description | Pages |
|---------|-------------|-------|
| A | Excerpts of Kosmos' Prospectus dated May 10, 2011 | A1-A5 |
| B | Excerpts of Amendment No. 3 to Kosmos' Form S-1 Registration Statement under the Securities Act of 1933 dated March 30, 2011 | A6-A28 |

1

Respectfully submitted,

VINSON & ELKINS L.L.P.

/s/ Andrew E. Jackson
John C. Wander
   State Bar No. 00791877
Matthew R. Stammel
   State Bar No. 24010419
Andrew E. Jackson
   State Bar No. 24055720
2001 Ross Avenue, Suite 3700
Dallas, TX  75201-2975
Telephone: 214.220.7700
Facsimile: 214.220.7716
E-mail: jwander@velaw.com
E-mail: mstammel@velaw.com
E-mail: ajackson@velaw.com

*Attorneys for Defendant Warburg Pincus LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January, 2013, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys who have consented in writing to accept this notice as service of this document by electronic means.

/s/ Andrew E. Jackson
Andrew E. Jackson

# EXHIBIT A

Table of Contents

Filed Pursuant to Rule 424(b)(1)
Registration No. 333-171700
Registration No. 333-174116

**33,000,000 Shares**



# Kosmos Energy Ltd.

## Common Shares

This is an initial public offering of common shares of Kosmos Energy Ltd. Prior to this offering, there has been no public market for our common shares. Our common shares have been approved for listing on the New York Stock Exchange under the symbol "KOS."

The underwriters have an option to purchase a maximum of 4,950,000 additional common shares from us to cover over-allotments of common shares. The underwriters can exercise this option at any time within 30 days from the date of this prospectus.

**Investing in our common shares involves risks. See "Risk Factors" on page 17.**

|  | Price to Public | Underwriting Discounts and Commissions | Proceeds to Us |
|---|---|---|---|
| Per Common Share | $ 18.00 | $ 1.08 | $ 16.92 |
| Total | $ 594,000,000 | $ 35,640,000 | $ 558,360,000 |

Delivery of the common shares will be made on or about May 16, 2011.

Neither the Securities and Exchange Commission nor any other regulatory body has approved or disapproved of these securities or determined if this prospectus is truthful or complete. Any representation to the contrary is a criminal offense.

Consent under the Exchange Control Act 1972 (and its related regulations) has been obtained from the Bermuda Monetary Authority for the issue and transfer of the common shares to persons resident and non-resident of Bermuda for exchange control purposes provided our common shares remain listed on an appointed stock exchange, which includes the New York Stock Exchange. This prospectus will be filed with the Registrar of Companies in Bermuda in accordance with Bermuda law. In granting such consent and in accepting this prospectus for filing, neither the Bermuda Monetary Authority nor the Registrar of Companies in Bermuda accepts any responsibility for our financial soundness or the correctness of any of the statements made or opinions expressed in this prospectus.

*Joint Bookrunning Managers*

**Citi** (Global Coordinator)     **Barclays Capital** (Global Coordinator)     **Credit Suisse**

*Joint Lead Managers*

**BNP PARIBAS**     **SOCIETE GENERALE**

*Co-Managers*

**Credit Agricole CIB**

A1

**Howard Weil Incorporated**

**HSBC**

**Jefferies**

**Natixis**

**RBC Capital Markets**

The date of this prospectus is May 10, 2011.

A2

Table of Contents

## PRINCIPAL SHAREHOLDERS

The following table sets forth certain information with respect to the beneficial ownership of our common shares, on a fully-diluted basis, as of December 31, 2010, and after giving effect to our corporate reorganization, for:

- each of our current executive officers;

- each of our current directors;

- all our current executive officers and directors as a group; and

- each shareholder known by us to be the beneficial owner of more than 5% of our issued and outstanding common shares.

Beneficial ownership is determined in accordance with the rules of the SEC and includes voting or investment power with respect to the securities. Common shares that may be acquired by an individual or group within 60 days of December 31, 2010, pursuant to the exercise of options or warrants, are deemed to be outstanding for the purpose of computing the percentage ownership of such individual or group, but are not deemed to be outstanding for the purpose of computing the percentage ownership of any other person shown in the table. Percentage of ownership is based on 341,176,471 common shares issued and outstanding on December 31, 2010, after giving effect to our corporate reorganization, plus 33,000,000 common shares that we are selling in this offering. The underwriters have an option to purchase up to 4,950,000 additional common shares from us to cover over-allotments.

Except as indicated in footnotes to this table, we believe that the shareholders named in this table have sole voting and investment power with respect to all common shares shown to be beneficially owned by them, based on information provided to us by such shareholders. Unless otherwise indicated, the address for each director and executive officer listed is: 8176 Park Lane, Suite 500, Dallas, Texas, 75231.

A3

Table of Contents

| Name and Address of Beneficial Owner | Number of Shares Beneficially Owned(1) | Percentage of Shares Beneficially Owned(1)(2) | |
|---|---|---|---|
| | | Before the Offering | After the Offering |
| *Directors and Executive Officers* | | | |
| John R. Kemp III(9) | 738,340 | 0.22% | 0.20% |
| David I. Foley(4) | — | — | — |
| Jeffrey A. Harris(3) | — | — | — |
| David Krieger(3) | — | — | — |
| Prakash A. Melwani(4) | — | — | — |
| Adebayo O. Ogunlesi | 1,369,216 | 0.40% | 0.37% |
| Chris Tong | — | — | — |
| Christopher A. Wright | 667,407 | 0.20% | 0.18% |
| Brian F. Maxted(5) | 10,868,515 | 3.19% | 2.90% |
| W. Greg Dunlevy(6) | 7,378,214 | 2.16% | 1.97% |
| William S. Hayes(7) | 839,267 | 0.25% | 0.22% |
| Dennis C. McLaughlin(8) | 725,215 | 0.21% | 0.19% |
| All directors and executive officers as a group (12 individuals) | 22,586,174 | 6.62% | 6.04% |
| *Five Percent Shareholders* | | | |
| Warburg Pincus Funds(3) | 154,379,137 | 45.25% | 41.26% |
| Blackstone Funds(4) | 126,310,180 | 37.02% | 33.76% |

(1)    Assumes the completion of our corporate reorganization prior to or concurrently with the closing of this offering. See "Corporate Reorganization."

(2)    Assumes no exercise of the underwriters' option to purchase additional shares.

(3)    The Warburg Pincus Funds are comprised of the following entities: Warburg Pincus International Partners, L.P., a Delaware limited partnership, together with two affiliated partnerships ("WPIP") who collectively hold 77,225,970 shares, and Warburg Pincus Private Equity VIII, L.P., a Delaware limited partnership, together with two affiliated partnerships ("WP VIII") who collectively hold 77,153,167 shares. Warburg Pincus Partners, LLC, a New York limited liability company ("WP Partners"),and direct subsidiary of Warburg Pincus & Co., a New York general partnership ("WP"), is the sole general partner of WPIP and WP VIII. WP is the managing member of WP Partners. WPIP and WP VIII are managed by Warburg Pincus LLC, a New York limited liability company ("WP LLC"). Messrs. Harris and Krieger, directors of Kosmos Energy Ltd., are Partners of WP and Managing Directors and Members of WP LLC. All shares indicated as owned by Messrs. Harris and Krieger are included because of their affiliation with the Warburg Pincus entities. Messrs. Harris and Krieger disclaim beneficial ownership of all shares owned by the Warburg Pincus entities. Charles R. Kaye and Joseph P. Landy are Managing General Partners of WP and Managing Members and Co-Presidents of WP LLC and may be deemed to control the Warburg Pincus entities. Messrs. Kaye and Landy disclaim beneficial ownership of all shares held by the Warburg Pincus entities. The address of Messrs. Harris, Krieger, Kaye and Landy, WP VIII, WPIP, WP Partners, WP, WP LLC is 450 Lexington Avenue, New York, New York 10017.

(4)    The Blackstone Funds (as hereinafter defined) are comprised of the following entities: Blackstone Capital Partners (Cayman) IV L.P. ("BCP IV"), Blackstone Capital Partners (Cayman) IV-A L.P. ("BCP IV-A"), Blackstone Family Investment Partnership (Cayman) IV-A L.P ("Family"), Blackstone Participation Partnership (Cayman) IV L.P. ("Participation") and Blackstone Family Investment Partnership (Cayman) IV-A SMD L.P. ("Family SMD", and togetherwith BCP IV, BCP IV-A, Family and Participation, the "Blackstone Funds"). The Blackstone Funds beneficially own (i) 118,316,712 shares, which are held by BCP IV, (ii) 1,929,515 shares, which are held by

Table of Contents

BCP IV-A, (iii) 3,120,870 shares, which are held by Family, (iv) 351,839 shares, which are held by Participation, and (v) 2,591,244 shares, which are held by Family SMD. Blackstone Management Associates (Cayman) IV L.P. ("BMA") is a general partner of each of BCP IV and BCP IV-A. Blackstone LR Associates (Cayman) IV Ltd. ("BLRA") and BCP IV GP L.L.C. are general partners of each of BMA, Family and Participation. Blackstone Holdings III L.P. is the sole member of BCP IV GP L.L.C. and a shareholder of BLRA. Blackstone Holdings III L.P. is indirectly controlled by The Blackstone Group L.P. and is owned, directly or indirectly, by Blackstone professionals and The Blackstone Group L.P. The Blackstone Group L.P. is controlled by its general partner, Blackstone Group Management L.L.C., which is in turn, wholly owned by Blackstone's senior managing directors and controlled by its founder, Stephen A. Schwarzman. In addition, Mr. Schwarzman is a director and controlling person of BLRA. Family SMD is controlled by its general partner, Blackstone Family GP L.L.C., which is in turn wholly owned by Blackstone's senior managing directors and controlled by its founder, Mr. Schwarzman. Each of such Blackstone entities and Mr. Schwarzman may be deemed to beneficially own the shares beneficially owned by the Blackstone Funds directly or indirectly controlled by it or him, but each disclaims beneficial ownership of such shares except to the extent of its or his indirect pecuniary interest therein. Mr. Foley and Mr. Melwani are senior managing directors of Blackstone Group Management L.L.C. and neither is deemed to beneficially own the shares beneficially owned by the Blackstone Funds. The address of each of the Blackstone Funds, BMA and BLRA is c/o Walkers Corporate Services Limited, 87 Mary Street, George Town, Grand Cayman KY1-9005, Cayman Islands and the address for Mr. Schwarzman and each of the other entities listed in this footnote is c/o The Blackstone Group, L.P., 345 Park Avenue, New York, New York 10154.

(5)  Includes 148,347 restricted shares issued to Mr. Maxted in connection with our corporate reorganization but excludes 3,235,294 restricted shares intended to be issued to Mr. Maxted on or shortly after the closing of this offering pursuant to our LTIP. Also includes 1,814,587 restricted shares and 4,915,277 common shares issued to Maxted Family Investments, Ltd., an entity which Mr. Maxted is a beneficial owner of, in connection with our corporate reorganization.

(6)  Includes 601,374 restricted shares issued to Mr. Dunlevy in connection with our corporate reorganization but excludes 1,941,17( restricted shares intended to be issued to Mr. Dunlevy on or shortly after the closing of this offering pursuant to our LTIP. Also includes 707,244 restricted shares and 1,158,335 common shares issued to 2008 Carnegie, Ltd., an entity which Mr. Dunlevy is a beneficial owner of, in connection with our corporate reorganization.

(7)  Includes 548,304 restricted shares issued to Mr. Hayes in connection with our corporate reorganization but excludes 882,353 restricted shares intended to be issued to Mr. Hayes on or shortly after the closing of this offering pursuant to our LTIP.

(8)  Includes 519,247 restricted shares issued to Mr. McLaughlin in connection with our corporate reorganization but excludes 588,235 restricted shares intended to be issued to Mr. McLaughlin on or shortly after the closing of this offering pursuant to our LTIP.

(9)  Includes 75,524 restricted shares issued to Mr. Kemp in connection with our corporate reorganization. Also includes 278,250 common shares, 26,579 common shares, 26,579 common shares, 26,579 common shares, 26,579 common shares and 278,250 common shares issued to John R. Kemp, III, Trustee of the John R. Kemp, III 2011 Grantor Retained Annuity Trust; John R. Kemp, IV, Trustee of the John R. Kemp, IV 2011 Trust No. 1; John R. Kemp, IV, Trustee of the John R. Kemp, IV 2011 Trust No. 2; Rhonda N. Kemp, Trustee of the Rhonda N. Kemp 2011 Trust No. 1; Rhonda N. Kemp, Trustee of the Rhonda N. Kemp 2011 Trust No. 2; Rosalind I. Kemp, Trustee of the Rosalind I. Kemp 2011 Grantor Retained Annuity Trust, respectively, each an entity which Mr. Kemp is a beneficial owner of, in connection with our corporate reorganization.

# EXHIBIT B

<u>QuickLinks</u> -- Click here to rapidly navigate through this document

As filed with the Securities and Exchange Commission on March 30, 2011

Registration No. 333-171700

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

### Amendment No. 3

to

# FORM S-1

### REGISTRATION STATEMENT
### UNDER
### THE SECURITIES ACT OF 1933

## Kosmos Energy Ltd.

(Exact name of registrant as specified in its charter)

| Bermuda | 1311 | 98-0686001 |
|---|---|---|
| (State or other jurisdiction of Incorporation or organization) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification Number) |

**Clarendon House**
**2 Church Street**
**Hamilton HM 11, Bermuda**
**(441) 295-5950**

(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices)

**Brian F. Maxted, Chief Executive Officer**
**c/o Kosmos Energy, LLC**
**8176 Park Lane, Suite 500**
**Dallas, TX 75231**
**(214) 445-9600**

(Name, address, including zip code, and telephone number, including area code, of agent for service)

Copies to:

| Richard D. Truesdell, Jr., Esq. | David J. Beveridge, Esq. |
|---|---|
| Davis Polk & Wardwell LLP | Shearman & Sterling LLP |
| 450 Lexington Avenue | 599 Lexington Avenue |
| New York, NY 10017 | New York, NY 10022 |
| (212) 450-4000 | (212) 848-4000 |

**Approximate date of commencement of proposed sale to the public:**
**As soon as practicable after the effective date of this registration statement.**

If any of the securities being registered on this Form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, check the following box.  ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering.  ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities

A6

Act registration statement number of the earlier effective registration statement for the same offering.  ☐

    If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the  Securities Act registration statement number of the earlier effective registration statement for the same offering.  ☐

    Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☐        Accelerated filer ☐        Non-accelerated filer ☒        Smaller reporting company ☐

(Do not check if a smaller reporting company)

**The registrant hereby amends this registration statement on such date or dates as may be necessary to delay its effective date until the registrant shall file a further amendment which specifically states that this registration statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933 or until the registration statement shall become effective on such date as the Commission, acting pursuant to said Section 8(a), may determine.**

A7

## EXPLANATORY NOTE

This Amendment No. 3 to the Registration Statement on Form S-1 (Registration No. 333-171700) is being filed in order to file certain exhibits. This Amendment No. 3 modifies the Index to Exhibits of the Registration Statement. The provisions of the Prospectus contained in Part 1 of Amendment No. 2 to the Registration on Form S-1 (Registration No. 333-171700) filed on March 23, 2011 are incorporated by reference in their entirety.

## PART II

## INFORMATION NOT REQUIRED IN PROSPECTUS

### Item 13.  Other Expenses of Issuance and Distribution.

The following table sets forth an itemization of the various costs and expenses, all of which we will pay, in connection with the issuance and distribution of the securities being registered. All of the amounts shown are estimated except the SEC registration fee, the NYSE listing fee and the FINRA filing fee:

| | |
|---|---:|
| SEC registration fee | $ 58,050 |
| NYSE listing fee | 250,000 |
| FINRA filing fee | 75,500 |
| Accounting fees and expense | 1,500,000 |
| Printing and engraving expenses | 450,000 |
| Legal fees and expenses | 2,800,000 |
| Transfer Agents and Registrar fees | 25,000 |
| Miscellaneous | 341,450 |
| Total | $ 5,500,000 |

### Item 14.  Indemnification of Directors and Officers.

Section 98 of the Companies Act 1981 of Bermuda (the "Bermuda Companies Act") provides generally that a Bermuda company may indemnify its directors, officers and auditors against any liability which by virtue of any rule of law would otherwise be imposed on them in respect of any negligence, default, breach of duty or breach of trust, except in cases where such liability arises from fraud or dishonesty of which such director, officer or auditor may be guilty in relation to the company. Section 98 further provides that a Bermuda company may indemnify its directors, officers and auditors against any liability incurred by them in defending any proceedings, whether civil or criminal, in which judgment is awarded in their favour or in which they are acquitted or granted relief by the Supreme Court of Bermuda pursuant to section 281 of the Bermuda Companies Act.

We have adopted provisions in our bye-laws that provide that we shall indemnify our officers and directors in respect of their actions and omissions, except in respect of their fraud or dishonesty. Our bye-laws provide that the shareholders waive all claims or rights of action that they might have, individually or in right of the company, against any of the company's directors or officers for any act or failure to act in the performance of such director's or officer's duties, except in respect of any fraud or dishonesty of such director or officer. Section 98A of the Bermuda Companies Act permits us to purchase and maintain insurance for the benefit of any officer or director in respect of any loss or liability attaching to him in respect of any negligence, default, breach of duty or breach of trust, whether or not we may otherwise indemnify such officer or director.

Insofar as indemnification by us for liabilities arising under the Securities Act may be permitted to our directors, officers or persons controlling the company pursuant to provisions of our bye-laws, or otherwise, we have been advised that in the opinion of the SEC, such indemnification is against public

II-1

A8

**Item 16.   Exhibits and Financial Statement Schedules.**

(a)      The following exhibits are filed as part of this registration statement:

| Exhibit Number | Description of Document |
|---|---|
| 1.1 | Form of Underwriting Agreement* |
| 3.1 | Certificate of Incorporation of Kosmos Energy Ltd. (the "Company")**** |
| 3.2 | Memorandum of Association of the Company**** |
| 3.3 | Form of Bye-laws of the Company |
| 3.4 | Fourth Amended and Restated Operating Agreement of Kosmos Energy Holdings (the "Predecessor"), as amended |
| 3.5 | Memorandum of Association of the Predecessor**** |
| 3.6 | Articles of Association of the Predecessor**** |
| 4.1 | Specimen share certificate* |
| 5.1 | Opinion of Conyers Dill & Pearman Limited* |
| 9.1 | Form of Shareholders Agreement. |
| 10.1 | Petroleum Agreement in respect of West Cape Three Points Block Offshore Ghana dated July 22, 2004 among the Ghana National Petroleum Corporation ("GNPC"), Kosmos Energy Ghana HC ("Kosmos Ghana") and the E.O. Group Limited ("E.O. Group").*** |
| 10.2 | Operating Agreement in respect of West Cape Three Points Block Offshore Ghana dated July 27, 2004 between Kosmos Ghana and E.O. Group.*** |
| 10.3 | Petroleum Agreement in respect of the Deepwater Tano Contract Area dated March 10, 2006 among GNPC, Tullow Ghana Limited ("Tullow Ghana"), Sabre Oil and Gas Limited ("Sabre") and Kosmos Ghana.*** |
| 10.4 | Joint Operating Agreement in respect of the Deepwater Tano Contract Area, Offshore Ghana dated August 14, 2006, among Tullow Ghana, Sabre Oil and Gas Limited, and Kosmos Ghana.*** |
| 10.5 | Assignment Agreement in respect of the Deepwater Tano Block dated September 1, 2006, among Anadarko WCTP Company ("Anadarko WCTP") and Kosmos Ghana.*** |
| 10.6 | Unitization and Unit Operating Agreement covering the Jubilee Field Unit located offshore the Republic of Ghana dated July 13, 2009, among GNPC, Tullow, Kosmos Ghana, Anadarko WCTP, Sabre and E.O. Group.*** |
| 10.7 | Atwood Hunter Offshore Drilling Contract dated June 23, 2008 among Kosmos Ghana, Alpha Offshore Drilling Services Company and Noble Energy EG Ltd., as amended.**** |
| 10.8 | Ndian River Production Sharing Contract dated November 20, 2006 between the Republic of Cameroon and Kosmos Energy Cameroon HC ("Kosmos Cameroon").*** |
| 10.9 | Decree 2005/249 dated June 30, 2005 granting Perenco Oil and Gas (Cameroon) Ltd. ("Perenco") and Société |

A9

Nationale des Hydrocarbures ("SNH") the Kombe-N'sepe Permit.\*\*\*

10.10   Contract of Association relating to the Kombe-N'sepe Permit dated December 11, 1997 between the Republic of Cameroon, CMS Nomeco Cameroon Ltd ("CMS Nomeco Cameroon"), Globex Cameroon, LLC ("Globex Cameroon") and SNH.\*\*\*

II-4

| Exhibit Number | Description of Document |
|---|---|
| 10.11 | Convention of Establishment relating to the Kombe-N'sepe Permit dated December 11, 1997 between the Republic of Cameroon, CMS Nomeco Cameroon and Globex Cameroon.*** |
| 10.12 | Deed of Assignment of the Kombe-N'sepe Permit, Contract of Association and Convention of Establishment dated November 16, 2005 between Perenco and Kosmos Cameroon.*** |
| 10.13 | Agreement on the Management of Petroleum Operations (JOA) covering the Kombe-N'sepe Permit dated July 3, 2008 among SNH, Perenco and Kosmos Cameroon.*** |
| 10.14 | Petroleum Agreement regarding the exploration for and exploitation of hydrocarbons in the area of interest named Boujdour Offshore dated May 3, 2006 between Office National des Hydrocarbures et des Mines ("ONHYM") and Kosmos Energy Offshore Morocco HC ("Kosmos Morocco").*** |
| 10.15 | Association Contract regarding the exploration for and exploitation of hydrocarbons in the Boujdour Offshore Block dated May 3, 2006 between ONHYM and Kosmos Morocco.*** |
| 10.16 | Memorandum of Understanding regarding a new petroleum agreement covering certain areas of the Boujdour Offshore Block dated September 27, 2010 between ONHYM and Kosmos Morocco.*** |
| 10.17 | Common Terms Agreement, dated July 13, 2009 among Kosmos Energy Finance ("Kosmos Finance"), Kosmos Ghana, Kosmos Energy Development ("Kosmos Development") and the various financial institutions and others party thereto, as amended.*** |
| 10.18 | Definitions Agreement, dated July 13, 2009 among Kosmos Finance, Kosmos Ghana, Kosmos Development and the various financial institutions and others party thereto, as amended.*** |
| 10.19 | Senior Bank Facility Agreement, dated July 13, 2009 among Kosmos Finance, Kosmos Development, Kosmos Ghana, Standard Chartered Bank, BNP Paribas SA, Societe Generale, Calyon, ABSA Bank Limited, Africa Finance Corporation, Cordiant Emerging Loan Fund III, L.P. and various other financial institutions party thereto, as amended.*** |
| 10.20 | Intercreditor Agreement, dated July 13, 2009 among Kosmos Finance, Kosmos Ghana, Kosmos Development and the various financial institutions and others party thereto, as amended.*** |
| 10.21† | Form of Long Term Incentive Plan |
| 10.22† | Form of Annual Incentive Plan |
| 10.23† | Form of Non-Qualified Stock Option Award Agreement |
| 10.24† | Form of Restricted Stock Award Agreement (Exchange) |
| 10.25† | Form of Restricted Stock Award Agreement (Service Vesting) |
| 10.26† | Form of Restricted Stock Award Agreement (Performance Vesting) |
| 10.27 | Form of Director Indemnification Agreement* |
| 10.28† | Retirement Agreement dated December 17, 2010 between Kosmos Energy, LLC, Kosmos Energy Holdings, James C. Musselman, Musselman-Kosmos, Ltd. and funds affiliated with Warburg Pincus LLC and The Blackstone Group L.P.*** |

A11

10.29† Consulting Agreement dated November 17, 2010 between Kosmos Energy Holdings and John R. Kemp***

10.30† Form of Executive Employment Agreement

II-5

A12

| Exhibit Number | Description of Document |
|---|---|
| 10.31 | Letter agreement, dated May 4, 2010 among Tullow Ghana Limited, Anadarko WCTP Company and Kosmos Energy Ghana HC**** |
| 21.1 | List of Subsidiaries*** |
| 23.1 | Consent of Ernst & Young LLP**** |
| 23.2 | Consent of Netherland, Sewell & Associates, Inc.**** |
| 23.3 | Consent of Conyers Dill & Pearman Limited (included in Exhibit 5.1)* |
| 24 | Power of Attorney (included on the signature pages of this registration statement) |
| 99.1 | Estimate of Reserves and Future Revenue to the Kosmos Energy Interest in the Jubilee Field Phase 1 Development Unit Area located in the West Cape Three Points and Deepwater Tano License Areas Offshore Ghana as of December 31, 2009.**** |
| 99.2 | Estimate of Reserves and Future Revenue to the Kosmos Energy Interest in the Jubilee Field Phase 1 Development Unit Area located in the West Cape Three Points and Deepwater Tano License Areas Offshore Ghana as of December 31, 2010.**** |
| 99.3 | Consent of David I. Foley, as director nominee** |
| 99.4 | Consent of Jeffrey A. Harris, as director nominee** |
| 99.5 | Consent of David Krieger, as director nominee** |
| 99.6 | Consent of Prakash A. Melwani, as director nominee** |
| 99.7 | Consent of Bayo O. Ogunlesi, as director nominee** |
| 99.8 | Consent of Christopher A. Wright, as director nominee** |

\*       To be filed by amendment.

\*\*      Filed as part of this registration statement on Form S-1 (Registration No. 333-171700) on January 14, 2011.

\*\*\*     Filed as part of this registration statement on Form S-1 (Registration No. 333-171700) on March 3, 2011.

\*\*\*\*    Filed as part of this registration statement on Form S-1 (Registration No. 333-171700) on March 23, 2011.

†       Management contract or compensatory plan or arrangement.

(b)     Financial Statement Schedule

Schedule I—Condensed Parent Company Financial Statements

    Under the terms of agreements governing the indebtedness of subsidiaries of Kosmos Energy Holdings ("KEH," the "Parent Company"), such subsidiaries are restricted from making dividend payments, loans or advances to KEH. Schedule I of Article 5-04 of Regulation S-X requires the condensed financial information of the Parent Company to be filed when the restricted net assets of consolidated subsidiaries exceed 25 percent of consolidated net assets as of the end of the most recently completed fiscal year.

A13

The following condensed parent-only financial statements of KEH have been prepared in accordance with Rule 12-04, Schedule I of Regulation S-X and included herein. The Parent Company's

A14

## SIGNATURES

Pursuant to the requirements of the Securities Act of 1933, the Registrant certifies that it has duly caused this registration statement to be signed on its behalf by the undersigned, thereunto duly authorized, in Dallas, Texas on March 30, 2011.

**Kosmos Energy Ltd.**

By:     /s/ BRIAN F. MAXTED

---

Brian F. Maxted
*Director and Chief Executive Officer*

Pursuant to the requirements of the Securities Act of 1933, this registration statement has been signed by the following persons in the capacities held on the dates indicated.

| SIGNATURE | TITLE | DATE |
|---|---|---|
| /s/ BRIAN F. MAXTED<br>Brian F. Maxted | Director and Chief Executive Officer (Principal Executive Officer) | March 30, 2011 |
| /s/ W. GREG DUNLEVY<br>W Greg. Dunlevy | Chief Financial Officer and Executive Vice President (Principal Financial Officer) | March 30, 2011 |
| /s/ SYLVIA MANOR<br>Sylvia Manor | Vice President and Controller (Principal Accounting Officer) | March 30, 2011 |
| *<br>John R. Kemp | Chairman of the Board of Directors | March 30, 2011 |
| *<br>David I. Foley | Director | March 30, 2011 |
| *<br>Jeffrey A. Harris | Director | March 30, 2011 |
| *<br>David B. Krieger | Director | March 30, 2011 |
| *<br>Prakash A. Melwani | Director | March 30, 2011 |
| *<br>Adebayo O. Ogunlesi | Director | March 30, 2011 |
| *<br>Chris Tong | Director | March 30, 2011 |
| *<br>Christopher A. Wright | Director | March 30, 2011 |

*By:     /s/ BRIAN F. MAXTED

---

Brian F. Maxted

A15

*Attorney-in-Fact*

II-13

Exhibit 3.3

**BYE-LAWS OF**

**KOSMOS ENERGY LTD.**

**TABLE OF CONTENTS**

**Interpretation**

| | | |
|---|---|---|
| 1. | Definitions | 1 |

**Shares**

| | | |
|---|---|---|
| 2. | Power to Issue Shares | 3 |
| 3. | Rights Attaching to Shares | 4 |
| 4. | Power of the Company to Purchase its Shares | 6 |
| 5. | Fractional Shares | 6 |
| 6. | Calls on Unpaid Shares and Forfeiture of Shares | 6 |

**Alteration of Share Capital**

| | | |
|---|---|---|
| 7. | Power to Alter Capital | 8 |
| 8. | Variation of Rights Attaching to Shares | 8 |

**Dividends and Capitalisation**

| | | |
|---|---|---|
| 9. | Dividends | 8 |
| 10. | Method of Payment | 9 |
| 11. | Capitalisation | 10 |

**Meetings of Members**

| | | |
|---|---|---|
| 12. | Annual General Meetings | 10 |
| 13. | Special General Meetings | 10 |
| 14. | Notice | 10 |
| 15. | Giving Notice | 12 |
| 16. | Notice of Nominations and Member Business | 12 |
| 17. | Postponement or Cancellation of General Meeting | 16 |
| 18. | Electronic Participation and Security at General Meetings | 16 |
| 19. | Quorum at General Meetings | 17 |
| 20. | Organization | 17 |
| 21. | Voting on Resolutions | 17 |
| 22. | Power to Demand a Vote on a Poll | 18 |
| 23. | Voting by Joint Holders of Shares | 19 |
| 24. | Instrument of Proxy | 20 |
| 25. | Representation of Corporate Member | 21 |
| 26. | Adjournment of General Meeting | 21 |
| 27. | Action by Written Resolutions Without a General Meeting | 22 |
| 28. | Directors Attendance at General Meetings | 23 |

**Directors and Officers**

| | | |
|---|---|---|
| 29. | Election of Directors | 23 |
| 30. | Classes and Term of Office of Directors | 24 |
| 31. | Removal of Directors | 24 |
| 32. | Vacancy in the Office of Director | 25 |
| 33. | Remuneration of Directors | 25 |
| 34. | Defect in Appointment | 26 |
| 35. | General Powers of Directors | 26 |
| 36. | Conflicts of Interest | 27 |
| 37. | Appointment of Officers | 28 |
| 38. | Appointment of Secretary | 28 |
| 39. | Duties of Officers | 28 |
| 40. | Removal of Officers | 28 |
| 41. | Register of Directors and Officers | 28 |
| 42. | Indemnification and Exculpation of Directors and Officers | 28 |

**Meetings of the Board of directors**

| | | |
|---|---|---|
| 43. | Board Meetings | 31 |
| 44. | Notice of Board Meetings | 31 |
| 45. | Quorum at Board Meetings; Manner of Acting | 32 |
| 46. | Board to Continue in the Event of Vacancy | 33 |
| 47. | Chairman to Preside | 33 |

A17

| 48. | Electronic Participation in Meetings | 33 |
| 49. | Written Resolutions | 33 |
| 50. | Validity of Prior Acts of the Board | 33 |

**Corporate Records**

| 51. | Minutes | 33 |
| 52. | Place Where Corporate Records Kept | 34 |
| 53. | Form and Use of Seal | 34 |

**Accounts**

| 54. | Books of Account | 34 |
| 55. | Financial Year End | 34 |

**Audits**

| 56. | Annual Audit | 35 |

i

| 57. | Appointment of Auditor | 35 |
| 58. | Remuneration of Auditor | 35 |
| 59. | Duties of Auditor | 35 |
| 60. | Access to Records | 35 |
| 61. | Financial Statements | 35 |
| 62. | Distribution of Auditor's Report | 36 |
| 63. | Vacancy in the Office of Auditor | 36 |

**Business Combinations**

| 64. | Amalgamation | 36 |
| 65. | Sales of All or Substantially All Assets | 36 |

**Voluntary Winding-Up and Dissolution**

| 66. | Winding-Up | 37 |

**Corporate Opportunities**

| 67. | Corporate Opportunities | 37 |

**Changes to Constitution**

| 68. | Changes to Bye-laws | 39 |
| 69. | Discontinuance | 39 |

**Registration Of Shares and Share Certificates**

| 70. | Register of Members | 40 |
| 71. | Registered Holder Absolute Owner | 40 |
| 72. | Transfer and Transmission of Registered Shares | 40 |
| 73. | Share Certificates | 42 |

| Annex A | | 44 |

ii

## INTERPRETATION

1.    **Definitions**

    1.1     In these Bye-laws (other than Annex A hereto), the following words and expressions shall, where not inconsistent with the context, have the following meanings, respectively:

| | |
|---|---|
| Act | the Companies Act 1981 as amended from time to time; |
| Blackstone | Blackstone Capital Partners (Cayman) IV L.P., Blackstone Capital Partners (Cayman) IV-A L.P., Blackstone Family Investment Partnership (Cayman) IV-A L.P., Blackstone Family Investment Partnership (Cayman) IV-A SMD L.P., and Blackstone Participation Partnership (Cayman) IV L.P.; |
| Board | the board of directors appointed or elected pursuant to these Bye-laws and acting by resolution in accordance with the Act and these Bye-laws or the directors present at a |

meeting of directors at which there is a quorum;

| | |
|---|---|
| Chairman | the chairman of the Board; |
| Company | the company for which these Bye-laws are approved and confirmed, as the name of such company may be changed from time to time; |
| Effective Date | the first date on which Warburg Pincus and their affiliates and Blackstone and their affiliates no longer constitute a group that beneficially owns more than 50% of the outstanding voting power of the Company; |
| Member | each person registered in the Register of Members as the holder of shares in the Company and, when two or more persons are so registered as joint holders of shares, means the person whose name stands first in the Register of Members as one of such joint holders or all of such persons, as the context so requires; |

1

| | |
|---|---|
| Officer | any person, including the Secretary, appointed by the Board to hold an office in the Company; |
| Register of Directors and Officers | the register of directors and Officers referred to in these Bye-laws; |
| Register of Members | the register of Members referred to in these Bye-laws; |
| Resident Representative | any person appointed to act as resident representative and includes any deputy or assistant resident representative; |
| Securities Exchange Act of 1934 | the United States Securities Exchange Act of 1934, as amended from time to time, and any rules and regulations thereunder; |
| Secretary | the person appointed to perform any or all of the duties of secretary of the Company and includes any deputy or assistant secretary and any person appointed by the Board to perform any of the duties of the Secretary; |
| Treasury Share | a share of the Company that was or is treated as having been acquired and held by the Company and has been held continuously by the Company since it was so acquired and has not been cancelled; and |
| Warburg Pincus | Warburg Pincus International Partners, L.P., Warburg Pincus Netherlands International Partners I, C.V., WP-WPIP Investors, L.P., Warburg Pincus Private Equity VIII, L.P., Warburg Pincus Netherlands Private Equity VIII I, C.V., WP-WP VIII Investors, L.P. |

1.2   In these Bye-laws, where not inconsistent with the context:

(a)   words denoting the plural number include the singular number and vice versa;

(b)   words denoting the masculine gender include the feminine and neuter genders;

2

(c)   words importing persons include companies, associations or bodies of persons whether corporate or not;

(d)   the words:

   (i)   "may" shall be construed as permissive; and

   (ii)   "shall" shall be construed as imperative;

(e)   the word "include" and its cognates shall be deemed to be followed by "without limitation"; and

(f)   unless otherwise provided herein, words or expressions defined in the Act shall bear the same meaning in these Bye-laws.

1.3   For so long as any of Blackstone, Warburg Pincus or their respective affiliates have the right to designate at least one director pursuant to

A19

so by the person to whom the shares have been allotted. In the case of a share held jointly by several persons, delivery of a certificate to one of several joint holders shall be sufficient delivery to all.

73.3    If any share certificate shall be proved to the satisfaction of the Board to have been mutilated, lost or destroyed the Board may cause a new certificate to be issued and request an indemnity for the lost or destroyed certificate if it sees fit.

73.4    Notwithstanding any provisions of these Bye-laws:

(a)     the directors shall, subject always to the Act and any other applicable laws and regulations and the facilities and requirements of any relevant system concerned, have power to implement any arrangements they may, in their absolute discretion, think fit in relation to the evidencing of title to and transfer of uncertificated shares and to the extent such arrangements are so implemented, no provision of these Bye-laws shall apply or have effect to the extent that it is in any respect inconsistent with the holding or transfer of shares in uncertificated form; and

(b)     unless otherwise determined by the directors and as permitted by the Act and any other applicable laws and regulations, no person shall be entitled to receive a certificate in respect of any share for so long as the title to that share is evidenced otherwise than by a certificate and for so long as transfers of that share may be made otherwise than by a written instrument.

43

Annex A

**1.1     Definitions**

In this Annex A, the following words and expressions shall have the following meanings, respectively:

"Affiliate" has the meaning ascribed thereto in Rule 12b-2 promulgated under the Exchange Act, as in effect on the date hereof.

"Agreement" means the Shareholders Agreement, dated as of [ ● ] as the same may be amended, supplemented, restated or otherwise modified from time to time.

"Blackstone Group" means the entities listed on Schedule A to the Agreement under the heading "Blackstone Group" as such schedule may be amended from time to time, and their respective successors and Permitted Assigns.

"Board" means the board of directors of the Company.

"Class I Director" has the meaning set forth in Section 2.1(c) of this Annex A.

"Class II Director" has the meaning set forth in Section 2.1(c) of this Annex A.

"Class III Director" has the meaning set forth in Section 2.1(c) of this Annex A.

"Common Shares" means the common shares, par value US$0.01 per share, in the capital of the Company and any other shares of the Company into which such shares are reclassified or reconstituted.

"Company" means Kosmos Energy Ltd., an exempted company incorporated under the laws of Bermuda.

"Director" means any member of the Board.

"Exchange" means the New York Stock Exchange or such other stock exchange or securities market on which the Common Shares are listed or quoted.

"Exchange Act" means the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder, as the same may be amended from time to time.

"Governmental Authority" means any nation or government, any state or other political subdivision thereof, and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"Independent Director" means an "independent director" as such term is used in the listing requirements of the Exchange.

44

"Investor Designee" has the meaning set forth in Section 2.1(a) of this Annex A.

"Investor Group" means any of the Blackstone Group or the Warburg Group.

A20

"Investor Parties" means each party to the Agreement (other than the Company), together with its Permitted Assigns.

"IPO" means the underwritten initial public offering of the Company's Common Shares.

"IPO Date" means the date upon which the IPO is completed.

"Law" means any statute, law, regulation, ordinance, rule, injunction, order, decree, governmental approval, directive, requirement, or other governmental restriction or any similar form of decision of, or determination by, or any interpretation or administration of any of the foregoing by, any Governmental Authority.

"Permitted Assigns" means with respect to any of the Investor Parties, their respective Affiliates who are a Transferee of Common Shares (which are transferred other than pursuant to a widely distributed public sale) that agrees in writing to become party to, and be bound to the same extent as its transferor by the terms of, the Agreement, in customary form; provided, that upon such Transfer, such Permitted Assign shall be deemed to be the "Investor Party" hereto for all purposes herein.

"Total Number of Directors" means, as of any time of determination, the total number of Directors comprising the Board at such time.

"Transfer" (including its correlative meanings, "Transferor", "Transferee" and "Transferred") means, with respect to any security, directly or indirectly, to sell, contract to sell, give, assign, hypothecate, pledge, charge, encumber, grant a security interest in, offer, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, lend or otherwise transfer or dispose of any economic, voting or other rights in or to such security. When used as a noun, "Transfer" shall have such correlative meaning as the context may require.

"Warburg Group" means the entities listed on Schedule A of the Agreement under the heading "Warburg Group," as such schedule may be amended from time to time, and their respective successors and Permitted Assigns.

**2.1     Board of Directors**

(a)       The members of the Board shall be nominated and elected in accordance with the Bye-laws and the provisions of this Agreement. On the IPO Date, the Board shall consist of nine members, each of which shall be a "Director".  As of the IPO Date, the initial Board shall be comprised of the following individuals:

45

John R. Kemp III
Brian F. Maxted
David I. Foley
Jeffrey A. Harris
David B. Krieger
Prakash A. Melwani
Adebayo O. Ogunlesi
Chris Tong
Christopher A. Wright

So long as the Board consists of nine Directors and subject to the remainder of this Section 2.1, (i) two such Directors shall be nominated by the Blackstone Group (which the Nominating and Corporate Governance Committee or similar committee of the Board shall nominate, and the entire Board shall recommend, for election by the Company's shareholders at the next successive general meeting of shareholders), (ii) two such Directors shall be nominated by the Warburg Group (which the Nominating and Corporate Governance Committee or similar committee of the Board shall nominate, and the entire Board shall recommend, for election by the Company's shareholders at the next successive general meeting of shareholders), (iii) one such Director shall be the then serving Chief Executive Officer of the Company, (iv) three such Directors shall be Independent Directors nominated by the Nominating and Corporate Governance Committee or similar committee (which the entire Board shall recommend for election by the Company's shareholders at the next successive general meeting of shareholders), and (v) any other such Directors shall be nominated by the Nominating and Corporate Governance Committee or similar committee of the Board (which the entire Board shall recommend for election by the Company's shareholders at the next successive general meeting of shareholders).  Each specified Investor Group nominee shall be referred to herein as an " Investor Designee".

(b)       Notwithstanding anything herein to the contrary, following the IPO Date, each of (1) the Blackstone Group and/or their Permitted Assigns and (2) the Warburg Group and/or their Permitted Assigns, shall have the right, but not the obligation, to nominate to the Board a number of designees equal to:

(i)       two Directors (or if the size of the Board is increased, twenty-five percent of the Total Number of Directors, rounded to the nearest whole number (with one-half being rounded upward)), so long as (x) such Investor Group collectively beneficially owns twenty percent or more of the issued and outstanding Common Shares (that are eligible to vote at an annual general meeting of shareholders) and (y) such Investor Group (and/or its respective Affiliates) collectively beneficially owns fifty percent or more of the Common Shares owned by such Investor Group immediately prior to the completion of the IPO; and

(ii)       one Director (or if the size of the Board is increased, twelve and one half percent of the Total Number of Directors, rounded to the nearest whole number (with one-half being rounded upward)), so long as such Investor Group collectively beneficially owns seven and

A21

one half percent or more of the issued and outstanding Common Shares (that are eligible to

46

vote at an annual general meeting of shareholders) (in the case of this clause (ii), if such Investor Group is not entitled to nominate additional Directors);

provided, that the foregoing clauses (i) and (ii) shall not limit the number of individuals the Blackstone Group and/or their Permitted Assigns and the Warburg Group and/or their Permitted Assigns may nominate to the Board; provided further, that other than as otherwise set forth in this Section 2.1 (including this Section 2.1(b)) the Board shall have no obligation to nominate and recommend for election designees nominated by the Blackstone Group and/or their Permitted Assigns or the Warburg Group and/or their Permitted Assigns.

For purposes of calculating the number of Directors that the Blackstone Group and/or the Warburg Group (and/or their respective Permitted Assigns) are entitled to designate pursuant to the immediately preceding sentence, any fractional amounts shall automatically be rounded to the nearest whole number (with one-half being rounded upward) and any such calculations shall be made on a pro forma basis, including, for the avoidance of doubt, taking into account any increase in the size of the Board.  In the event that the Blackstone Group and/or the Warburg Group (and/or their Permitted Assigns) has nominated less than the total number of designees such Investor Group (and/or their Permitted Assigns) shall be entitled to nominate pursuant to this Section 2.1(b), the Blackstone Group and/or the Warburg Group (and/or their Permitted Assigns) shall have the right, at any time, to nominate such additional designees to which it is entitled, in which case, the Directors shall take all necessary corporate action to (x) enable the Blackstone Group and Warburg Group (and/or their Permitted Assigns), as the case may be, to nominate such additional individuals, whether by increasing the size of the Board, subject to the maximum number of Directors set forth by Bye-law 29 of the Bye-laws of the Company, or otherwise and (y) to designate such additional individuals nominated by the Blackstone Group (and/or their Permitted Assigns) and/or the Warburg Group (and/or their Permitted Assigns) to fill such newly-created vacancies.  In the event, and each time, that the number of Directors whom the Blackstone Group and/or the Warburg Group (and/or their respective Permitted Assigns) has the right to nominate decreases by one pursuant to this Section 2.1(b), one of the Investor Designees of such Investor Group shall, unless the Board otherwise requests, resign immediately (and such Investor Group shall use its best efforts to obtain a resignation of one of its Investor Designees) or the Company shall use its best efforts to cause one Investor Designee of such Investor Group to resign (or be removed) from the Board and each committee thereof.

(c)        In accordance with the Bye-laws, from and after the date on which the Investor Parties (and/or their  respective Affiliates) no longer constitute a group that beneficially owns more than fifty percent of the outstanding voting power of the Company (the " Classifying Date"), the Company shall cause the Directors to be, and the Directors shall be, divided into three classes designated Class I, Class II and Class III.  Each class of Directors shall consist, as nearly as possible, of one third of the total number of Directors constituting the entire Board.  The Board is hereby authorized to assign members of the Board in office at the Classifying Date to such classes.  Each Director shall serve for a term ending on the date of the third annual general meeting of shareholders next following the annual general meeting of shareholders at which such Director was elected, provided that Directors initially designated as Class I Directors ("Class I Directors") shall serve for a term ending on the date of the first

47

annual general meeting of shareholders following the Classifying Date, Directors initially designated as Class II Directors (" Class II Directors") shall serve for a term ending on the second annual general meeting of shareholders following the Classifying Date, and Directors initially designated as Class III Directors ("Class III Directors") shall serve for a term ending on the date of the third annual general meeting of shareholders following the Classifying Date.   The Investor Designees shall be allocated to the longest duration classes and, unless otherwise agreed by the Blackstone Group and the Warburg Group, the Investor Designees of each Investor Group shall be apportioned equitably within an applicable class as compared to the Investor Designees of the other Investor Group.

(d)        In the event that a vacancy is created at any time by the removal, bankruptcy, death, disability or resignation of any Director designated pursuant to this Section 2.1, the remaining Directors and the Company shall cause the vacancy created thereby to be filled, as soon as possible, (i) in the case of a vacancy created by an Investor Designee, by a new designee of the applicable Investor Group (and/or its Permitted Assigns) that had the right to designate such former Director, (ii) in the case of a vacancy created by the Chief Executive Officer and/or Independent Directors, so long as the Board shall consist of nine Directors, by a replacement Chief Executive Officer and/or Independent Director, as applicable, and (iii) in the case of any other vacancy, by a person nominated by the Nominating and Corporate Governance Committee, and in the case of each of clauses (i), (ii) and (iii), the Company hereby agrees to take, at any time and from time to time, all actions necessary to accomplish the filling of a vacancy pursuant to this Section 2.1(d).

(e)        Each Investor Group shall have the right to appoint an Observer to the Board; provided, however, an Investor Group shall cease to have the right to designate an Observer to the Board in the event that such Investor Group ceases to have the right to designate a Director pursuant to this Section 2.1. Each Observer shall have the same obligation to keep confidential any information furnished to it in connection with its role as Observer as Directors have in regards to such information, whether such obligation is as a result of provisions in this Agreement, the Bye-laws or any other legal or regulatory requirement to which the Directors are subject.

(f)        At each general meeting of shareholders of the Company at which Directors of the Company are to be elected, the Company agrees to include in the slate of nominees recommended by the Board the persons designated pursuant to this Section 2.1 and to use its best efforts to cause the election of each such designee to the Board at each such meeting, including nominating such individuals to be elected as Directors as provided herein.

**2.2      Committees**

As of the IPO Date, the Board has designated each of the following committees: a Nominating and Corporate Governance Committee, a

A22

Exhibit 9.1

**SHAREHOLDERS AGREEMENT**

by and among

**KOSMOS ENERGY LTD.**

and

**EACH OF THE PARTIES IDENTIFIED ON <u>SCHEDULE A</u>**

Dated as of [•], 2011

## Table of Contents

| | | Page |
|---|---|---|
| Article I. | DEFINED TERMS | 1 |
| | Defined Terms | 1 |
| | Construction | 4 |
| | | |
| Article II. | CORPORATE GOVERNANCE MATTERS | 4 |
| | Board of Directors | 4 |
| | Committees | 7 |
| | VCOC Matters | 8 |
| | | |
| Article III. | COVENANTS | 8 |
| | Books and Records; Access | 8 |
| | Periodic Reporting | 8 |
| | Confidentiality | 9 |
| | Indemnification Agreements | 9 |
| | IPO Expenses | 9 |
| | Corporate Opportunities | 9 |
| | | |
| Article IV. | MISCELLANEOUS | 10 |
| | Termination | 10 |
| | Notices | 10 |
| | Further Assurances | 11 |
| | Assignment | 11 |
| | Amendment; Waiver | 11 |
| | Third Parties | 12 |
| | Governing Law | 12 |
| | Jurisdiction | 12 |
| | WAIVER OF JURY TRIAL | 12 |
| | Specific Performance | 12 |
| | Entire Agreement | 12 |
| | Headings | 12 |
| | Severability | 12 |
| | Counterparts | 13 |
| | Effectiveness | 13 |
| | Bye-laws | 13 |

A23

**SHAREHOLDERS AGREEMENT**

This SHAREHOLDERS AGREEMENT is entered into as of [ ● ], 2011 (and effective as set forth in <u>Section 4.15</u>) by and among Kosmos Energy Ltd., an exempted company incorporated under the laws of Bermuda (the " <u>Company</u>"), and each of the parties identified on <u>Schedule A</u>.

RECITALS:

WHEREAS, the Company is currently contemplating an underwritten initial public offering (" <u>IPO</u>") of its Common Shares (as defined in <u>Section 1.1</u>);

WHEREAS, immediately prior to the completion of the IPO, the Company will acquire all of the outstanding equity interests of Kosmos Energy Holdings, an exempted company incorporated under the laws of the Cayman Islands (" <u>Old Kosmos</u>"), pursuant to an exchange transaction and in connection therewith shall issue to the Investor Parties (as defined in <u>Section 1.1</u>) and other former shareholders of Old Kosmos its Common Shares; and

WHEREAS, in connection with, and effective upon, the completion of the IPO (such date of completion, the " <u>IPO Date</u>") of the Company, the Company and the Investor Parties wish to set forth certain understandings between such parties, including with respect to certain governance matters;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and other good and valuable consideration, the parties hereto hereby approve this Agreement and mutually covenant and agree with each other as follows:

ARTICLE I.   DEFINED TERMS

1.1   <u>Defined Terms</u>. As used in this Agreement, the following terms have the meanings set forth below:

" <u>Affiliate</u>" has the meaning ascribed thereto in Rule 12b-2 promulgated under the Exchange Act, as in effect on the date hereof.

" <u>Agreement</u>" means this Shareholders Agreement, as the same may be amended, supplemented, restated or otherwise modified from time to time in accordance with the terms hereof.

" <u>Applicable Law</u>" means, with respect to any Person, any statute, law, regulation, ordinance, rule, injunction, order, decree, governmental approval, directive, requirement, or other governmental restriction or any similar form of, decision of, or determination by, any governmental authority or the Exchange, applicable to such Person or its Subsidiaries or their respective assets.

" <u>Authorized Recipient</u>" has the meaning set forth in <u>Section 3.3</u>.

" <u>Blackstone Group</u>" means the entities listed on <u>Schedule A</u> hereto under the heading "Blackstone Group" as such schedule may be amended from time to time, and their respective successors and Permitted Assigns.

" <u>Board</u>" means the board of directors of the Company.

" <u>Business Day</u>" means a day other than a Saturday, Sunday, federal or New York State holiday or other day on which commercial banks in New York, New York are authorized or required by law to close.

" <u>Bye-Laws</u>" means the bye-laws of the Company in force as at the IPO Date, as the same may be amended, restated, or otherwise modified from time to time.

" <u>Class I Director</u>" has the meaning set forth in <u>Section 2.1(c)</u>.

" <u>Class II Director</u>" has the meaning set forth in <u>Section 2.1(c)</u>.

" <u>Class III Director</u>" has the meaning set forth in <u>Section 2.1(c)</u>.

" <u>Company</u>" has the meaning set forth in the Preamble.

" <u>Common Shares</u>" means the common shares, par value US$0.01 per share, in the capital of the Company and any other shares of the Company into which such shares are reclassified or reconstituted.

" <u>Confidential Information</u>" has the meaning set forth in <u>Section 3.3</u>.

" <u>control</u>" (including its correlative meanings, " <u>controlled by</u>" and " <u>under common control with</u>") means possession, directly or indirectly, of the power to direct or cause the direction of management or policies (whether through ownership of securities or partnership or other ownership interests, by

A24

contract or otherwise) of a Person.

"Directed Opportunity" has the meaning set forth in Section 3.6.

"Director" means any member of the Board.

"Exchange" means the New York Stock Exchange or such other stock exchange or securities market on which the Common Shares are listed or quoted.

"Exchange Act" means the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder, as the same may be amended from time to time.

"Governmental Authority" means any nation or government, any state or other political subdivision thereof, and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"Independent Director" means an "independent director" as such term is used in the listing requirements of the Exchange.

"Investor Designee" has the meaning set forth in Section 2.1(a).

"Investor Group" means any of the Blackstone Group or the Warburg Group.

"Investor Parties" means each party to this Agreement (other than the Company), together with its Permitted Assigns.

"IPO" has the meaning set forth in the Recitals.

2

"IPO Date" has the meaning set forth in the Recitals.

"IPO Expenses" means, with respect to any Person, any and all reasonable out-of-pocket expenses (other than underwriting discounts and commissions) incurred or accrued by such Person in connection with the IPO or any underwriting agreement entered into in accordance therewith, including, (i) all fees and expenses of complying with all applicable securities laws, (iii) all road show, printing, messenger and delivery expenses, (iii) the fees and disbursements of counsel and (iv) other fees and expenses of such Person.

"Law" means any statute, law, regulation, ordinance, rule, injunction, order, decree, governmental approval, directive, requirement, or other governmental restriction or any similar form of decision of, or determination by, or any interpretation or administration of any of the foregoing by, any Governmental Authority.

"Permitted Assigns" means with respect to any of the Investor Parties, their respective Affiliates who are a Transferee of Common Shares (which are transferred other than pursuant to a widely distributed public sale) that agrees in writing to become party to, and be bound to the same extent as its transferor by the terms of, this Agreement, in customary form; provided, that upon such Transfer, such Permitted Assign shall be deemed to be the "Investor Party" hereto for all purposes herein.

"Person" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization and a governmental entity or any department, agency or political subdivision thereof.

"Representative" means, with respect to either Investor Group, the applicable Director(s) nominated by any member of such Investor Group (and/or any Observer appointed by such Investor Group), any individual appointed to a Board committee or committee of the Company or any of its Subsidiaries pursuant to a direct or indirect recommendation or nomination by any member of such Investor Group, and such Investor Group's and each of its Affiliates' respective directors, managers, officers, partners, members, principals, employees, professional advisers and agents.

"Specified Party" has the meaning set forth in Section 3.6.

"Subsidiary" means, with respect to any Person, any corporation, limited liability company, partnership, association or other business entity of which: (i) if a corporation, a majority of the total voting power of shares of capital stock entitled (without regard to the occurrence of any contingency) to vote in the election of directors, representatives or trustees thereof is at the time owned or controlled, directly or indirectly, by that Person or one or more of the other Subsidiaries of that Person or a combination thereof; or (ii) if a limited liability company, partnership, association or other business entity, a majority of the total voting power of capital stock (or equivalent ownership interest) of the limited liability company, partnership, association or other business entity is at the time owned or controlled, directly or indirectly, by any Person or one or more Subsidiaries of that Person or a combination thereof. For purposes hereof, a Person or Persons shall be deemed to have a majority ownership interest in a limited liability company, partnership, association or other business entity if such Person or Persons shall be allocated a majority of limited liability company, partnership, association or other business entity gains or losses or shall be or control the managing director or general partner of such limited liability company, partnership, association or other business entity.

"Total Number of Directors" means, as of any time of determination, the total number of Directors comprising the Board at such time.

3

A25

"Transfer" (including its correlative meanings, "Transferor", "Transferee" and "Transferred") means, with respect to any security, directly or indirectly, to sell, contract to sell, give, assign, hypothecate, pledge, charge, encumber, grant a security interest in, offer, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, lend or otherwise transfer or dispose of any economic, voting or other rights in or to such security.  When used as a noun, "Transfer" shall have such correlative meaning as the context may require.

"VCOC Shareholder" has the meaning set forth in Section 2.3(a).

"Warburg Group" means the entities listed on Schedule A hereto under the heading "Warburg Group" as such schedule may be amended from time to time, and their respective successors and Permitted Assigns.

1.2     Construction.  The language used in this Agreement will be deemed to be the language chosen by the parties to express their mutual intent, and no rule of strict construction will be applied against any party.  Unless the context otherwise requires: (i) " or" is disjunctive but not exclusive, (ii) words in the singular include the plural, and in the plural include the singular, (iii) whenever the words " include", "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation", and (iv) the words "hereof", "herein", and "hereunder" and words of similar import when used in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section references are to this Agreement unless otherwise specified.

ARTICLE II.     CORPORATE GOVERNANCE MATTERS

2.1     Board of Directors.

(a)     The members of the Board shall be nominated and elected in accordance with the Bye-laws and the provisions of this Agreement.  On the IPO Date, the Board shall consist of nine members, each of which shall be a "Director".  As of the IPO Date, the initial Board shall be comprised of the following individuals:

> John R. Kemp III
> Brian F. Maxted
> David I. Foley
> Jeffrey A. Harris
> David B. Krieger
> Prakash A. Melwani
> Adebayo O. Ogunlesi
> Chris Tong
> Christopher A. Wright

So long as the Board consists of nine Directors and subject to the remainder of this Section 2.1, (i) two such Directors shall be nominated by the Blackstone Group (which the Nominating and Corporate Governance Committee or similar committee of the Board shall nominate, and the entire Board shall recommend, for election by the Company's shareholders at the next successive general meeting of shareholders), (ii) two such Directors shall be nominated by the Warburg Group (which the Nominating and Corporate Governance Committee or similar committee of the Board shall nominate, and the entire Board shall recommend, for election by the Company's shareholders at the next successive general meeting of shareholders), (iii) one such Director shall be the then serving Chief Executive Officer of the Company, (iv) three such Directors shall be Independent Directors nominated by the Nominating and

4

Corporate Governance Committee or similar committee (which the entire Board shall recommend for election by the Company's shareholders at the next successive general meeting of shareholders), and (v) any other such Directors shall be nominated by the Nominating and Corporate Governance Committee or similar committee of the Board (which the entire Board shall recommend for election by the Company's shareholders at the next successive general meeting of shareholders).  Each specified Investor Group nominee shall be referred to herein as an " Investor Designee".

(b)     Notwithstanding anything herein to the contrary, following the IPO Date, each of (1) the Blackstone Group and/or their Permitted Assigns and (2) the Warburg Group and/or their Permitted Assigns, shall have the right, but not the obligation, to nominate to the Board a number of designees equal to:

(i)     two Directors (or if the size of the Board is increased, twenty-five percent of the Total Number of Directors, rounded to the nearest whole number (with one-half being rounded upward)), so long as (x) such Investor Group collectively beneficially owns twenty percent or more of the issued and outstanding Common Shares (that are eligible to vote at an annual general meeting of shareholders) and (y) such Investor Group (and/or its respective Affiliates) collectively beneficially owns fifty percent or more of the Common Shares owned by such Investor Group immediately prior to the completion of the IPO; and

(ii)     one Director (or if the size of the Board is increased, twelve and one half percent of the Total Number of Directors, rounded to the nearest whole number (with one-half being rounded upward)), so long as such Investor Group collectively beneficially owns seven and one half percent or more of the issued and outstanding Common Shares (that are eligible to vote at an annual general meeting of shareholders) (in the case of this clause (ii), if such Investor Group is not entitled to nominate additional Directors);

A26

Title: Partner

**WARBURG PINCUS NETHERLANDS INTERNATIONAL PARTNERS I, C.V.**

By: Warburg Pincus Partners LLC, its General Partner
By: Warburg Pincus & Co., its managing member

By: _____
Name: Jeffrey A. Harris
Title: Partner

**WP-WPIP INVESTORS, L.P.**

By: Warburg Pincus Partners LLC, its General Partner
By: Warburg Pincus & Co., its managing member

By: _____
Name: Jeffrey A. Harris
Title: Partner

*[Signature Page to Shareholders Agreement]*

**WARBURG PINCUS PRIVATE EQUITY VIII, L.P.**

By: Warburg Pincus Partners LLC, its General Partner
By: Warburg Pincus & Co., its managing member

By: _____
Name: Jeffrey A. Harris
Title: Partner

**WARBURG PINCUS NETHERLANDS PRIVATE EQUITY VIII I, C.V.**

By: Warburg Pincus Partners LLC, its General Partner
By: Warburg Pincus & Co., its managing member

By: _____
Name: Jeffrey A. Harris
Title: Partner

**WP-WP VIII INVESTORS, L.P.**

By: Warburg Pincus Partners LLC, its General Partner
By: Warburg Pincus & Co., its managing member

By: _____
Name: Jeffrey A. Harris
Title: Partner

*[Signature Page to Shareholders Agreement]*

Schedule A

A27

*(as of [•], 2011)*

Blackstone Group
1. Blackstone Capital Partners (Cayman) IV L.P.
2. Blackstone Capital Partners (Cayman) IV-A L.P.
3. Blackstone Family Investment Partnership (Cayman) IV-A L.P.
4. Blackstone Family Investment Partnership (Cayman) IV-A SMD L.P.
5. Blackstone Participation Partnership (Cayman) IV L.P.

Warburg Group
1. Warburg Pincus International Partners, L.P.
2. Warburg Pincus Netherlands International Partners I, C.V.
3. WP-WPIP Investors, L.P.
4. Warburg Pincus Private Equity VIII, L.P.
5. Warburg Pincus Netherlands Private Equity VIII I, C.V.
6. WP-WP VIII Investors, L.P.

---

**KOSMOS ENERGY LTD.**

[          ], 20[   ]

[VCOC INVESTOR]
[ADDRESS]

Dear Sir/Madam:

Reference is made to the Shareholders Agreement dated as of [ • ], 2011 by and among Kosmos Energy Ltd. (the "Company"), [          ] (the "VCOC Investor") and the other shareholders of the Company identified therein (as amended, modified or supplemented from time to time, the "Shareholders Agreement") to which a form of this letter agreement is attached as Annex B.

The Company hereby agrees that for so long as a VCOC Investor, directly or indirectly through one or more conduit subsidiaries, continues to hold, together with its affiliates, securities of the Company representing (or convertible into equity securities of the Company representing) at least one percent of the total voting power of the Company's equity securities, without limitation or prejudice of any of the rights provided to such VCOC Investor under the Shareholders Agreement or any other agreement relating to the Company, the Company shall:

1) Provide such VCOC Investor or its designated representative with:

    a.   the right to visit and inspect any of the offices and properties of the Company and its subsidiaries and inspect and copy the books and records of the Company and its subsidiaries, at such times as the VCOC Investor shall reasonably request;

    b.   as soon as available and in any event within 60 days after the end of each of the first three quarters of each fiscal year of the Company, consolidated balance sheets of the Company and its subsidiaries as of the end of such period, and consolidated statements of income and cash flows of the Company and its subsidiaries for the period then ended prepared in conformity with generally accepted accounting principles in the United States applied on a consistent basis, except as otherwise noted therein, and subject to the absence of footnotes and to year-end adjustments;

    c.   as soon as available and in any event within 120 days after the end of each fiscal year of the Company, a consolidated balance sheet of the Company and its subsidiaries as of the end of such year, and consolidated statements of income and cash flows of the Company and its subsidiaries for the year then ended prepared in conformity with generally accepted accounting principles in the United States applied on a consistent basis, except as otherwise noted therein, together with an auditor's report thereon of a firm of established national reputation;

    d.   to the extent the Company is required by law or pursuant to the terms of any outstanding indebtedness of the Company to prepare such reports, any annual reports, quarterly reports and other periodic reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, actually prepared by the Company as soon as available; and

---

    e.   to the extent consistent with applicable law (and with respect to information which requires public disclosure, only following the Company's public disclosure thereof through applicable securities law filings or otherwise), copies of all materials provided to the Company's Board of Directors; provided, that the Company will not be obligated to furnish to the VCOC Investor or its designated representative with such portion of any such material as is reasonably necessary to protect any critical attorney-client privilege of the Company.

2) Make appropriate officers and/or directors of the Company available periodically and at such times as reasonably requested by such VCOC

A28