UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re KOSMOS ENERGY LTD SECURITIES LITIGATION | § Consolidated Civil Action No. 3:12-cv-373-B |
| | § |
| | § CLASS ACTION |
| | § |
| This Document Relates To: | § |
| | § |
| ALL ACTIONS | § |
| | § |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION**

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ..................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT ........................................................................................................3

I.      LEGAL STANDARD GOVERNING CLASS CERTIFICATION ....................................3

II.     PLAINTIFF HAS NOT PROVEN adequacy under rule 23(a)(4).......................5

III.    PLAINTIFF HAS NOT PROVEN PREDOMINANCE AS REQUIRED BY
        RULE 23(b)(3)...........................................................................................9

        A.      Plaintiff Cannot Satisfy Rule 23(b)(3)'s Predominance Requirement,
                Given the Inescapable Need for Individualized Inquiries into Investor
                Knowledge ........................................................................................9

        B.      Plaintiff Has Not Met and Cannot Meet the Supreme Court's *Comcast*
                Standard Regarding Damages.............................................................13

III.    THE PROPOSED CLASS DEFINITION IS OVERBROAD...........................................15

        A.      The Proposed Class Includes Aftermarket Purchasers Who Lack
                Standing ...........................................................................................15

        B.      The Proposed Class Is Impermissibly Broad .......................................17

CONCLUSION...................................................................................................18

2950216V1/013030

# TABLE OF AUTHORITIES

## Cases

*Abu Dhabi Comm'l Bank v. Morgan Stanley & Co.*,
  269 F.R.D. 252 (S.D.N.Y. 2010) ................................................................................. 12

*Ahmad v. Old Republic Nat. Title Ins. Co.*,
  690 F.3d 698 ...................................................................................................................... 9

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ........................................................................................... 5

*Altier v. Worley Catastrophe Response, LLC*,
  No. 11-242, 2011 WL 3205229 (E.D. La. Jul. 26, 2011) ................................................. 7

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................................... 15, 16

*Berger v. Compaq Comp. Corp.*,
  257 F.3d 475(5th Cir. 2001), .................................................................................. 5, 6, 9

*Bolin v. Sears, Roebuck & Co.*,
  231 F.3d 970 (5th Cir. 2000) ......................................................................................... 16

*Califano v. Yamasaki*,
  442 U.S. 682 ...................................................................................................................... 4

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) ........................................................................................... 11

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)........................................................................................... passim

*DeMaria v. Andersen*,
  318 F.3d 170 (2d Cir.2003)............................................................................................ 10

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 .................................................................................................................... 18

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)........................................................................................................ 17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  131 S. Ct. 2179 (2011)..................................................................................................... 9

2950216V1/013030

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    718 F.3d 423 (5th Cir. 2013) ................................................................................ 3, 4

*Feder v. Elec. Data Sys. Corp.,*
    429 F.3d 125 (5th Cir. 2005) ...................................................................................... 6

*Forrand v. Fed. Exp. Corp.,*
    No. CV 08-1360 DSF, 2013 WL 1793951 (C.D. Cal. Apr. 25, 2013) ............................ 13

*Freidus v. Barclays Bank PLC,*
    __ F.3d __, 2013 WL 4405291 (2d Cir. Aug. 19, 2013) .................................................. 16

*Gen. Tel. Co. of SW. v. Falcon,*
    457 U.S. 147 (1982)...................................................................................................... 1, 4

*Healey v. Chelsea Res., Ltd.,*
    947 F.2d 611 (2d Cir.1991)............................................................................................ 11

*In re Alcatel Sec. Litig.,*
    382 F. Supp. 2d 513 (S.D.N.Y. 2005)............................................................................. 16

*In re Am. Commer. Lines, LLC,*
    2002 WL 1066743 (E.D. La. May 28, 2002).................................................................... 6

*In re Deepwater Horizon,*
    732 F.3d 326 (5th Cir. 2013) ........................................................................................ 15

*In re Flag Telecom Holdings Ltd. Sec. Litig.,*
    574 F.3d 29 (2d Cir. 2009)............................................................................................ 17

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ........................................................................ 5, 7

*In re IPO Sec. Litig.,*
    471 F.3d 24 (2d Cir. 2006)................................................................................... 10, 12, 13

*In re Lehman Bros. Sec. and ERISA Litig.,*
    No. 09 MD 2017 (LAK), 2013 WL 440622 (S.D.N.Y. Jan. 23, 2013) ............................ 12

*In re Prestige Brands Holding, Inc.,*
    No. 05-CV-06924 (CLB), 2006 WL 2147719 (S.D.N.Y. July 10, 2006)......................... 16

*In re Rail Freight Fuel Surcharge Litig.,*
    725 F.3d 244 (D.C. Cir. 2013)...................................................................................... 13

*In re Wilborn,*
    609 F.3d 748 (5th Cir. 2010) ......................................................................................... 9

iv

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing &*
    *Securitization,*
       616 F. Supp. 2d 461 (S.D.N.Y. 2009)............................................................... 6

*Junker v. Crory,*
       650 F.2d 1349 (5th Cir. 1981) .......................................................................... 11

*Krim v. pcOrder.com,*
       210 F.R.D. 581 (W.D. Tex. 2002) ...................................................................... 8

*M.D. ex rel. Stukenberg v. Perry,*
       675 F.3d 832 (5th Cir. 2012) ............................................................................ 4

*McManus v. Fleetwood Enters., Inc.,*
       320 F.3d 545 (5th Cir. 2003) .......................................................................... 11

*N.J. Carpenters Health Fund v. Residential Capital LLC,*
       272 F.R.D. 160(S.D.N.Y. 2011), .................................................................... 12

*N.J. Carpenters Health Fund v. Royal Bank of Scotland,*
       709 F.3d 109 (2d Cir. 2013)............................................................................. 10

*New Jersy Carpenters Health Fund v. RALI Series 2006 Q01 Trust,*
       477 Fed. App'x 809 (2d Cir. 2013) ................................................................ 10

*Ogden v. AmeriCredit Corp.,*
       225 F.R.D. 529 (N.D. Tex. 2005) ................................................................ 6, 8

*Oscar Private Equity Investments v. Allegiance Telecom., Inc.,*
       487 F.3d 261 (5th Cir. 2007) ............................................................................ 5

*Roach v. T.L. Cannon Corp.,*
       No. 3:10-CV-0591, 2013 WL 1316452 (N.D.N.Y. Mar. 29, 2013) ................................. 14

*Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.,*
       319 F.3d 205 .................................................................................................. 11

*Shiring v. Tier Techs., Inc.,*
       244 F.R.D. 307 (E.D. Va. 2007) ...................................................................... 8

*Teamsters Local 445 Pension Fund v. Bombardier Corp.,*
       546 F.3d 196 (2d Cir. 2008)............................................................................. 5

*Trustees. of So. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon*
    *Corp.,*
       287 F.R.D. 216 (S.D.N.Y. 2012) .................................................................... 13

2950216V1/013030

*Umsted v. Intelect Comm., Inc.*,
  No. 3:99-CV-2604-M, 2003 WL 79750 (N.D. Tex. Jan. 7, 2003) ................................. 6, 8

*Unger v. Amedisys Inc.*,
  401 F.3d 316 (5th Cir. 2005) ......................................................................................... 4, 7

*Walmart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011).............................................................................................. 1, 3, 4

**Statutes**

15 U.S.C. §77k(e) ....................................................................................................................... 15

15 U.S.C. §77l(b)........................................................................................................................ 15

15 U.S.C. 77l(2) .......................................................................................................................... 11

**Rules**

Fed. R. Civ. P. 23(b)(3)............................................................................................... 5, 9, 13, 14

Rule 23 ................................................................................................................................ passim

Rule 23(a).................................................................................................................... 5, 6, 11

2950216V1/013030

Defendants Kosmos Energy Ltd. ("Kosmos"), the Individual Defendants,[1] and the Underwriter Defendants[2] (collectively "Defendants"), by and through their respective attorneys, respectfully submit this memorandum of law in opposition to Plaintiff's Motion for Class Certification (Dkt. 119).

## SUMMARY OF ARGUMENT

Plaintiff's motion for certification of the putative class should be denied because Plaintiff has failed to demonstrate, by a preponderance of the evidence, that each of the Rule 23 elements has been satisfied.  Before a putative class may be certified, the party seeking certification "must affirmatively demonstrate his compliance with [Rule 23]." *Walmart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  As the Supreme Court has made clear, a motion for class certification must be subjected to "rigorous analysis" because "actual, not presumed, conformance with Rule 23" is "indispensable." *Id.* at 2551–52 (quoting *Gen. Tel. Co. of SW. v. Falcon*, 457 U.S. 147, 160 (1982)).  A class may be certified only if, after a "demanding" analysis, the Court is convinced that the plaintiff has met each of the requirements of Rule 23 by a preponderance of the evidence. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

In the face of this burden, Plaintiff has submitted no real evidence in support of its request for a certified class.  Instead, and in stark contrast to the Supreme Court's direction in *Dukes*, Plaintiff has in essence presumed that a class will be certified.  Plaintiff is wrong, and its failure to provide evidence sufficient to meet its Rule 23 burden is fatal to Plaintiff's motion.

---

[1] The Individual Defendants are Brian Maxted, Greg Dunlevy, Sylvia Manor, John Kemp, David Foley, Jeffrey Harris, David Krieger, Prakash Melwani, Adebayo Ogunlesi, Chris Ton, and Christopher Wright.

[2] The Underwriter Defendants are Citigroup Global Markets Inc., Barclays Capital Inc., Credit Suisse Securities (USA) LLC, BNP Paribas Securities Corp., SG Americas Securities LLC, Credit Agricole Securities (USA) Inc., Scotia Capital (USA) Inc. (f/k/a Howard Weil Incorporated), HSBC Securities (USA) Inc., Jefferies & Company, Inc., Natixis Securities Americas LLC (f/k/a Natixis Bleichroeder LLC), and RBC Capital Markets, LLC.

2950216V1/013030

Plaintiff's motion for class certification fails to meet several of the Rule 23 requirements. For example, at the deposition of the proposed class representative in this action, the witness demonstrated a remarkable lack of knowledge of the most basic facts and allegations in this case—the contents of the operative documents in the case, that the price of the relevant stock had fallen, or even the purported reasons why the price was alleged to have fallen. Plaintiff thus has not satisfied and cannot satisfy the Rule 23(a)(4) adequacy requirement.

In addition, Plaintiff has not provided any evidence on the issue of predominance, let alone evidence sufficient to satisfy Plaintiff's burden of proving that common issues will predominate over individual ones. To the contrary, as set out below, individual issues— including each class member's knowledge—will predominate over class-wide issues, contrary to the requirements of Rule 23(b).

Last, Plaintiff—in contravention of the Supreme Court's mandate[3]—has utterly failed to provide any methodology for calculating damages on a class-wide basis. In fact, the only evidence regarding damages comes from Defendants, whose expert has demonstrated that the putative class did not suffer damages. In any event, the proposed class definition is overbroad because it includes members that bought shares other than on the initial public offering ("IPO") and it extends temporally beyond any rational end date (*i.e.*, the date after Plaintiff contends that the improperly withheld information was fully disclosed).

## BACKGROUND

Kosmos is an international oil & gas exploration and production company. An IPO of common shares in Kosmos took place on May 10, 2011. On December 10, 2012, Plaintiff Nursing Homes and Related Industries Pension Plan ("Plaintiff") filed a consolidated complaint in this action. Dkt. 71.

---

[3] *Comcast*, 133 S. Ct. at 1433–34.

The Complaint alleged violations of the securities laws, specifically sections 11, 12(a)(2), and 15 of the Securities Act of 1933.  The claims relate to alleged misstatements contained in the Kosmos Prospectus and Registration Statement.  These alleged misstatements concerned certain projections and estimates of the oil production potential for deepwater drilling operations conducted by Kosmos (in partnership with other entities)[4] in the "Jubilee Field," located off the coast of Ghana.  The Complaint alleges that Kosmos' projections for oil production at the Jubilee Field were materially misleading because of undisclosed problems.

On October 3, 2013, Plaintiff filed its motion for class certification ("Motion"), in which Plaintiff did little more than restate the allegations raised in its Complaint.  Dkt. 119.  The only "evidence" submitted in support of Plaintiff's motion to certify a class is a three-page "declaration" from the Chair of Plaintiff's Board of Trustees in which she states, in sum, that she will remain informed as to the status of the litigation and direct the litigation by overseeing counsel.  Dkt. 120, at A099.  The motion was not accompanied by any expert report, and there was no model or methodology provided for calculating any damages purportedly suffered by members of the putative class or the class as a whole.

**ARGUMENT**

I.      **LEGAL STANDARD GOVERNING CLASS CERTIFICATION**

To certify a class pursuant to Rule 23, a plaintiff must demonstrate that (1) the prerequisites set forth in Rule 23(a) are satisfied and (2) an appropriate class may be certified under at least one of the subdivisions of Rule 23(b).  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 718 F.3d 423, 428 (5th Cir. 2013), *cert. granted*, ___ U.S. ___ (Nov. 15, 2013)).  It is now well settled that class certification is appropriate only "if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  *Dukes*, 131 S. Ct. at

---

[4]   Not only did Kosmos have other partners in the project, Kosmos was not even the operator of the project.

2551 (quoting *Falcon*, 457 U.S. at 161). Plaintiffs must "affirmatively demonstrate compliance with the Rule—that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original). The same holds true for the requirements of Rule 23(b)—a class may not be certified in the absence of a factual showing that the requirements of at least one of the subdivisions of Rule 23(b) are satisfied. *See Comcast*, 133 S. Ct. at 1432; *Erica P. John Fund*, 718 F.3d at 428.

Rule 23(a) imposes four requirements—numerosity, commonality, typicality, and adequacy—that must each be proven not merely pleaded, before a class may be certified. *Dukes*, 131 S. Ct. at 2551; *see also Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) ("The party seeking certification bears the burden of establishing that *all* requirements of Rule 23 have been satisfied."). This need for actual proof reflects that the class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Dukes*, 131 S. Ct. at 2551 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). Before litigation may proceed as a class action, the plaintiffs must go beyond "mere pleading" and "affirmatively demonstrate" and "prove" compliance with Rule 23. *Id.*; *Comcast*, 133 S. Ct. at 1432.

The district court must subject a motion for class certification to "rigorous analysis," because "actual, not presumed, conformance" with Rule 23 is "indispensable." *Dukes*, 131 S. Ct. 2541, 2551–52 (quoting *Falcon*, 457 U.S. at 161). Indeed, the court must "look beyond the pleadings" and evaluate the specific "claims, defenses, relevant facts, and applicable substantive law" in order to "make a meaningful determination" as to whether Rule 23(a) is satisfied in a given case. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 842 (5th Cir. 2012) (internal quotations omitted). Thus, to justify class treatment, plaintiffs must prove that all of Rule 23's

4

requirements are satisfied "by a preponderance of all admissible evidence." *Alaska Elec.*

*Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 228 (5th Cir. 2009) (quoting *Oscar Private*

*Equity Investments v. Allegiance Telecom., Inc.*, 487 F.3d 261, 269 (5th Cir. 2007)); *see also*

*Teamsters Local 445 Pension Fund v. Bombardier Corp.*, 546 F.3d 196, 202 (2d Cir. 2008).

Rule 23(b) likewise requires a rigorous factual analysis before certification may be

granted.  Here, Plaintiff invokes only the third subdivision of Rule 23(b), which requires the

proponent of certification to demonstrate, among other things, that "the questions of law or fact

common to class members predominate over any questions affecting only individual members."

Fed. R. Civ. P. 23(b)(3).  As with Rule 23(a), the requirements of Rule 23(b)(3) must be

established by a preponderance of the evidence.  *Alaska Elec. Pension Fund*, 572 F.3d at 228;

*see also In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d

1040, 1052 (S.D. Tex. 2012) ("The Fifth Circuit has indicated that the preponderance standard

applies to the Rule 23 determination.").

## II.    PLAINTIFF HAS NOT PROVEN ADEQUACY UNDER RULE 23(a)(4)

Rule 23(a) requires that the representative parties fairly and adequately protect the

interests of the class.  Adequacy of the class representative is not presumed; rather, the plaintiff

bears the burden of establishing that the adequacy requirement has been satisfied.  *Berger v.*

*Compaq Comp. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001), *rehearing and rehearing en banc*

*denied*, 279 F.3d 313 (5th Cir. 2002).  The adequacy standard turns on several factors, but, at a

minimum, the class representative must "possess a sufficient level of knowledge and

understanding to be capable of 'controlling' or 'prosecuting' the litigation." *Id.* at 482–83.

Compliance with the adequacy requirement is essential because it "protect[s] . . . the due

process rights of the absent members of the class," who must rely on the class representative's

5

knowledge and judgment in defending their interests. *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 133 (5th Cir. 2005). This concern is heightened in the context of securities class actions, given that the Private Securities Reform Litigation Act requires a class representative "to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance." *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009).

Moreover, the plaintiff's duty to protect the class is non-delegable: "it is not enough that plaintiff's counsel are competent if the plaintiffs themselves almost totally lack familiarity with the facts of the case." *Berger*, 257 F.3d at 483 n.18. As the Fifth Circuit has noted, "[c]lass action lawsuits are intended to serve as a vehicle for capable, committed advocates to pursue the goals of the class members through counsel, not for capable, committed counsel to pursue their own goals through those class members." *Id.* at 484.

In other words, Rule 23(a) requires more than a belief that "bad things occurred and the defendants must have been involved." *Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 534 (N.D. Tex. 2005). Thus, for example, the court in *Ogden* found a proposed class representative inadequate based upon her "lack of knowledge and understanding, her level of reliance on counsel, and her failure to demonstrate her willingness and ability to proceed as class representative." *Id.* at 537. Further, the court held that "it is error to presume the adequacy of the putative representative[] in the absence of specific proof otherwise." *Id.* at 532 (quoting *In re Am. Commer. Lines, LLC*, 2002 WL 1066743, at *9 (E.D. La. May 28, 2002)). The court held that, "while 'class representatives need not be legal scholars and are entitled to rely on counsel, [they] do need to know more than that they were involved in a bad business deal.'" *Id.* at 534 (internal quotation omitted) (citation omitted); *see also Umsted v. Intelect Comm., Inc.*, No. 3:99-

6

CV-2604-M, 2003 WL 79750, at *3 (N.D. Tex. Jan. 7, 2003) (finding class representatives inadequate and holding that "class representatives must be willing to be more than spectators; they must work at and participate actively in the litigation").

Recently, the Southern District of Texas described the Fifth Circuit's adequacy standard as follows:

> To meet Rule 23 requirements [for adequate representation], the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members. Counsel must be both competent and zealous in representing class interests. **Class representatives must satisfy the court that they, and not counsel, are directing the litigation.** To do this, <u>**class representatives must show themselves sufficiently informed about the litigation to manage the litigation effort**</u>.

*In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1055 (emphasis added); *accord Unger*, 401 F.3d at 321.

In *Altier v. Worley Catastrophe Response, LLC*, No. 11-242, 2011 WL 3205229 (E.D. La. Jul. 26, 2011), the court found that the representative plaintiffs failed to present any evidence to demonstrate that (1) they were directing the litigation, (2) they were sufficiently informed about the case in order to manage the litigation effort, or (3) they were willing and able to take an active role and protect the interests of absentee class members. *Id.* at *10. The court noted that, "[i]n the absence of such evidence, plaintiffs have not carried their burden to demonstrate adequacy of representation" and further stated that the "absence of this type of evidence, as well as the absence of any trial plan . . . undercuts plaintiffs' argument that their counsel are skilled at prosecuting class actions." *Id.* Thus, the court found adequacy was not established.

Plaintiff here has presented little, if any, evidence to demonstrate those points. Indeed, the evidence establishes the opposite: Plaintiff has virtually no knowledge about the case and therefore cannot manage the litigation.

7

A comparison of the instant case to other cases in which class certification has been denied on adequacy grounds amply illustrates the point.

| RECORD HERE | SIMILAR CASES DENYING CERTIFICATION |
| --- | --- |
| Plaintiff had never seen, much less read, the registration statement[5] that forms the basis of both of plaintiff's causes of action. (Deposition of S. Saville 11/7/13 at Appx. 21) | "[The proposed class representative] demonstrated a general understanding of the nature of the suit, although he still did not know it involved two allegedly misleading registration statements." *Krim v. pcOrder.com*, 210 F.R.D. 581, 588 (W.D. Tex. 2002). |
| Plaintiff could not identify any misstatements in the registration statement. (*Id.* at Appx. 5–6) | "[Plaintiff] could not identify the claims asserted in the Complaint or any alleged misrepresentations or omissions by [defendant]." *Unsted v. Intelect Comms. Co.*, 2003 WL 79750, at *2 (N.D. Tex., Jan. 7, 2003) (Lynn, J.). |
| Plaintiff did not recognize the names of certain defendants. (*Id.* at Appx. 5–6) | "For example, plaintiff, it appears from his deposition, was not aware of the positions held at Tier by all of the named defendants, [and] could not explain why those defendants were selected.") *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 316 (E.D. Va. 2007); "[The class representative] should at least have an understanding of why all of the individuals or companies are defendants." *Ogden*, 225 F.R.D. at 535. |
| Plaintiff did not know whether the Kosmos stock price had dropped after Plaintiff purchased the stock,[6] *id.* at Appx. 88-89, and had no knowledge of what might have caused the stock price to drop (*id.* at Appx 11). | "[The proposed representative] has no factual knowledge, beyond knowing that money was lost, to support her allegations in her complaint." *Ogden*, 225 F.R.D. at 535. |

The above examples demonstrate that Plaintiff does not understand its own allegations, let alone any of the core themes permeating the litigation.  The adequacy requirement in Rule

---

[5]  According to plaintiff, "The Registration Statement and Prospectus are identical in all relevant parts." (Consolidated Complaint ¶ 1, n. 1).

[6]  *See* Saville Tr. at Appx. 8-9 (Q. Did the price of Kosmos stock that you held decline after you bought it? A. Not that I'm aware of.  If you're talking about a time period, I'm not aware of any decline.  In reading the materials, I know we bought at 18.  Q. But you're not aware of any decline?  A. During a certain period?  Q. During any period.  A. No.).  After a break, Plaintiff changed this testimony in response to questioning from her counsel.  *Id.* at Appx. 10.

23(a)(4) demands more than an allegedly aggrieved, totally uninformed plaintiff that takes all of its cues from class counsel.  An informed and vigorous representative is required to satisfy the adequacy requirement of Rule 23—a requirement that is even more important given "the PSLRA's mandate that class representatives, and not lawyers . . . direct and control the litigation."  *Berger*, 257 F.3d at 481.  The record here reveals that Lead Plaintiff is not up to the task.  The motion should be denied on adequacy grounds.

## III.  PLAINTIFF HAS NOT PROVEN PREDOMINANCE AS REQUIRED BY RULE 23(b)(3)

Plaintiff here cannot show that any alleged common questions *predominate* over the individualized inquiries that this litigation necessarily will entail.  In assessing predominance, the court must "identify[] the substantive issues that will control the outcome, assessing which issues will predominate and then determining whether the issues are common to the class."  *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010).  The factual and legal issues governing the controversy must be capable of determination "on a class-wide basis using class-wide proof."  *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 703–04 (5th Cir. 2012).  If resolution of the case would require a "series of individualized inquiries rather than a single, class-wide determination," class certification is inappropriate.  *Id.* at 703.

### A.  Plaintiff Cannot Satisfy Rule 23(b)(3)'s Predominance Requirement, Given the Inescapable Need for Individualized Inquiries into Investor Knowledge

Individualized issues of investor knowledge render Plaintiff incapable of satisfying the predominance standard in this case.  "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).

It is well-settled that proof of an investor's knowledge of an alleged misstatement is a defense to every Section 11 claim, *N.J. Carpenters Health Fund v. Royal Bank of Scotland*, 709 F.3d 109, 127 n.12 (2d Cir. 2013), and, accordingly, that "[p]laintiffs must show lack of knowledge to recover" on such claims, *In re IPO Sec. Litig.*, 471 F.3d 24, 43 (2d Cir. 2006).

In the *In re IPO Securities Litigation*, the plaintiffs purported to bring numerous class actions under several provisions of the securities laws, including section 11. After a lengthy survey of Supreme Court precedent as well as the case law in various circuits, the Second Circuit concluded, inter alia, that a district judge may certify a class only after making a factual determination on each of the requirements of Rule 23. *Id.* at 41.

The decision then addressed the lower court's certification of the class under section 11. "The Plaintiffs must show lack of knowledge to recover on their section 11 claims ...." *Id.* at 43, (citing *DeMaria v. Andersen*, 318 F.3d 170, 175 (2d Cir.2003)). In that regard, the Second Circuit found that plaintiffs' failure to do so precluded class certification. *In re IPO*, 471 F.3d 43; *accord. New Jersy Carpenters Health Fund* v. *RALI Series 2006 Q01 Trust*, 477 Fed. App'x 809, 813-14 (2d Cir. 2013). The court believed that any claim that lack of knowledge was common to the class was "thoroughly undermined" by investors who likely would have had knowledge of the alleged misstatements. *In re IPO*, 471 F.3d 43. The court vacated the class certification order. *Id.* at 45.

Plaintiff here has a similar problem that should result in the same fate. Throughout the proposed class period, Kosmos and its drilling partners, Tullow and Anadarko, disclosed problems with production from the Jubilee field. Indeed, Defendants' expert witness, Dr. Glenn Hubbard, a professor of finance and economics at Columbia University's graduate business school, has identified 14 dates during the putative class period that either had (i) conference calls

or press releases from Kosmos, Tullow or Anadarko concerning negative news about Jubilee

Field's production; or (ii) "new" negative news about production at the field from news sources

other than Kosmos, Tullow or Anadarko's announcements.  (Hubbard Declaration ¶ 26)

(Hubbard Declaration at Appx. _____)

Thus, a thorough exploration of the "claims, defenses, relevant facts, and applicable

law"—which Rule 23(a) requires, *McManus v. Fleetwood Enters., Inc*., 320 F.3d 545, 548 (5th

Cir. 2003)—reveals that individualized considerations of each particular investor's knowledge

with respect to the alleged misstatements pervade any attempt at classwide adjudication of

liability issues, thereby precluding certification.

Indeed, Plaintiff does not even attempt to prove a uniform lack of knowledge common to

all class members, which fatally undermines the notion that establishing liability would amount

to a predominating common contention that unifies all class members.  *See Sandwich Chef of

Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 220–21 (5th Cir. 2003) (individual

issues predominate where defense implicated individual class member knowledge as to

misrepresentations in invoices received from defendants); *Castano v. Am. Tobacco Co.*, 84 F.3d

734, 742 n.15 (5th Cir. 1996) (suggesting individual class member knowledge about effects of

smoking precluded finding of predominance).

Plaintiffs' failure to make any showing or provide any evidence whatsoever on the

subject of investor knowledge is even more pronounced in the context of its Section 12(a)(2)

claim.  Lack of investor knowledge is an affirmative element of a Section 12(a)(2) claim that

each member of the proposed class must prove in order to establish liability.  15 U.S.C. 77l(2);

*Junker v. Crory*, 650 F.2d 1349, 1359 (5th Cir. 1981); *Healey v. Chelsea Res., Ltd.*, 947 F.2d

611, 617 (2d Cir.1991) (requiring the plaintiff to prove "that he had no knowledge of the untruth

11

or omission" that formed the basis of his Section 12 claim).  Here, Plaintiff has not provided *any* evidence—let alone evidence sufficient to sustain its burden on this motion—establishing that the Section 12(a)(2) claims raised in this case are capable of resolution on a class-wide basis.

Specifically, Plaintiff has made no showing—nor could it—as to how it would prove on a classwide basis that investors lacked knowledge of this negative information concerning production at the Jubilee field, which is fatal to certification of the Section 12(a)(2) claim. Indeed, given that Plaintiff could not possibly prove through common proof each individual class member's lack of knowledge, this case will necessarily devolve into hundreds of mini-trials on the issue.

Faced with the prospect of being forced to conduct a series of individual mini-trials to determine issues of investor knowledge, courts have repeatedly held that the predominance of such individualized inquiries precludes certification in cases asserting Section 11 and 12(a)(2) claims. *See ,e.g.,  In re IPO*, 471 F.3d at 43–44; *N.J. Carpenters Health Fund v. Residential Capital LLC*, 272 F.R.D. 160, 168 (S.D.N.Y. 2011), *aff'd*, 477 Fed. App'x 809 (2d Cir. 2013) (issue of purchaser knowledge predominated over common liability questions); *In re Lehman Bros. Sec. and ERISA Litig.*, No. 09 MD 2017 (LAK), 2013 WL 440622, at *4 (S.D.N.Y. Jan. 23, 2013) (denying certification of Section 12(a)(2) class due to predominance of investor-knowledge issues).  Judicial determinations regarding the knowledge of individual purchasers will necessarily turn on consideration of documents and witness testimony regarding the specific decision-making and due-diligence processes, level of sophistication, and access to public and non-public sources of information attributable to each purchaser—a process that necessarily would overwhelm any question susceptible of class-wide determination.  *See In re IPO*, 471 F.3d at 43 n.1; *N.J. Carpenters*, 272 F.R.D. at 169–70; *see also Abu Dhabi Comm'l Bank v. Morgan*

12

*Stanley & Co.*, 269 F.R.D. 252, 261 (S.D.N.Y. 2010) ("[M]aterial differences among investors

with regard to their decision making processes, investment guidelines, due diligence inquiries

and communications" required individualized inquiries "on an investor-by-investor[] basis").[7]

Inquiry into the state of each investor's knowledge will be critical to the resolution of each and

every one of their Section 11 and 12(a)(2) claims.  Thus, individual questions of investor

knowledge predominate over any presumed common issues.

      **B.**     **Plaintiff Has Not Met and Cannot Meet the Supreme Court's *Comcast*
Standard Regarding Damages**

     In *Comcast,* 133 S. Ct. 1426, the Supreme Court reversed and decertified a class because

the plaintiffs had offered a flawed damage model.  Under *Comcast,* courts can certify a Rule

23(b)(3) class only if there is evidence demonstrating the existence of a class-wide method of

awarding relief that is consistent with the plaintiffs' theory of liability.  "As the Supreme Court

reemphasized in *Comcast,* in order for Rule 23(b)(3)'s predominance requirement to be satisfied,

a plaintiff must bring forth a measurement method that can be applied class-wide *and* that ties

the plaintiff's legal theory to the impact of the defendant's allegedly illegal conduct." *Forrand v.

Fed. Exp. Corp.,* No. CV 08-1360 DSF, 2013 WL 1793951, at *3 (C.D. Cal. Apr. 25, 2013); *In

re Rail Freight Fuel Surcharge Litig.,* 725 F.3d 244, 252 (D.C. Cir. 2013) ("The plaintiffs must

also show that they can prove, through common evidence, that all class members were in fact

injured.").

---

[7]   For example, to the extent that an individual member of the proposed class of purchasers (or investment
professionals acting on its behalf) communicated directly with any of the Defendants about Kosmos, evidence
concerning such communications would be relevant to ascertaining the extent of that purchaser's knowledge—
and only that purchaser's knowledge. *See In re IPO,* 471 F.3d at 43–44; *see also Trustees. of So. Cal. IBEW-
NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp.,* 287 F.R.D. 216, 228 (S.D.N.Y. 2012)
(individual class members' instructions to defendants as to investments in Lehman notes precluded
certification).

13

Here, the Plaintiff has done neither.  Plaintiff has not even offered a damage methodology, much less one that ties to the Plaintiff's theory of liability.  "The failure of the proponent of the class to offer a damages model that was susceptible of measurement across the entire class for purposes of Rule 23(b)(3) [is] fatal to the certification question."  *Roach v. T.L. Cannon Corp.,* No. 3:10-CV-0591, 2013 WL 1316452 (N.D.N.Y. Mar. 29, 2013).  Thus, under *Comcast*, the Plaintiff's class certification motion must fail.

It should come as no surprise that Plaintiff has failed to propose any methodology for calculating class-wide damages; no such methodology is possible because the class suffered no damages.  After conducting a detailed event study and review of the allegations in this case, Defendants' expert, Dr. Glenn Hubbard, reached the following conclusions:

    a.   The disclosure of information about production issues at the Jubilee field following Kosmos' IPO did not cause any declines in Kosmos' stock price during the alleged class period.  (Hubbard Declaration ¶ 34);

    b.   Kosmos' stock price performance during the Class Period was consistent with that of its peers, which supports the conclusion that disclosures concerning production issues at the Jubilee field did not cause any declines in Kosmos' stock price (*id.* ¶ 39); and,

    c.   Plaintiffs suffered no damages as a result of the alleged misstatements identified in the complaint, and thus, there is no evidence of any statistically sound methodology that could demonstrate class-wide damages arising from the allegations in the complaint (*id.* ¶ 55).

14

Rather than providing a methodology for calculating damages, Plaintiff asserts that damages can be calculated using "simple arithmetic" based on "the common formulae" in Sections 11 and 12(a)(2).  This facile assertion runs afoul of *Comcast* in at least two ways.  First, it is not a methodology.  Second, the statutory formulas of Section 11 and 12 do not amount to "simple arithmetic."  Instead, any measure of damages must account for the part of any stock price decline attributable to something other than the alleged misstatements.  15 U.S.C. §77k(e) (defense to §11 damages); 15 U.S.C. §77l(b) (loss causation defense).  Plaintiff here has proposed no method at all to account for this far-from-simple adjustment.  Plaintiff's "simple arithmetic" does not, in the words of *Comcast*, "measure only those damages attributable to" defendants' alleged misconduct while eliminating "damages that are not the result of the wrong." 133 S. Ct. at 1433–34.

In sum, Plaintiff's failure to provide *any* methodology for calculating damages in this case—indeed, its inability to prove that the putative class suffered any damages—is fatal to the class certification motion.

III.   **THE PROPOSED CLASS DEFINITION IS OVERBROAD**

A.   **The Proposed Class Includes Aftermarket Purchasers Who Lack Standing**

Plaintiff's proposed class definition also falls well short of the standards imposed by Rule 23 and Local Rule 23.2.  "The Supreme Court has cautioned that Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure shall not abridge, enlarge or modify any substantive right."  *In re Deepwater Horizon*, 732 F.3d 326, 341 (5th Cir. 2013) (internal quotations omitted) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)).  "By including claimants in the class definition that lack colorable claims, a court disregards this warning.  It ignores the

15

standing requirement of Article III and creates a substantive right where none existed before."
*Id.*

Here, Plaintiff proposes a single class definition for both the Section 11 and Section 12(a)(2) claims—a class of all purchasers who "purchased or otherwise acquired Kosmos . . . common stock issued pursuant to or traceable to" the IPO offering documents. Mot. at ¶ 1.  This proposed class definition fails to heed the Supreme Court's admonitions because it purports to include class members who have no standing to assert the Section 12(a)(2) claims Plaintiff seeks to prosecute.[8]

For example, in order to have standing under Section 12(a)(2), a plaintiff must have purchased the securities at issue "directly from the defendants"—*i.e.* directly in the public offering.  *Freidus v. Barclays Bank PLC*, __ F.3d __, 2013 WL 4405291, at *7 (2d Cir. Aug. 19, 2013) (Section 12(a)(2) claim may not be premised merely on purchase "pursuant or traceable to" defendant's offering materials); *accord, e.g., In re Prestige Brands Holding, Inc.*, No. 05-CV-06924 (CLB), 2006 WL 2147719, at *9 (S.D.N.Y. July 10, 2006); *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 530 n.8 (S.D.N.Y. 2005).  Plaintiff's proposed class definition here, however, purports to include all purchasers of Kosmos stock, including indirect purchasers (purchasers who did not purchase in the IPO) who lack standing under Section 12(a)(2).  Thus, the class Plaintiff proposes here cannot possibly be certified for purposes of the Section 12(a)(2) claims.  Any certified class for a Section 12(a)(2) claim must be limited to only those shareholders who can prove that they purchased Kosmos common stock *directly* in the IPO.

---

[8]  "[A] court should certify a class on a claim-by-claim basis, treating each claim individually and certifying the class with respect to only those claims for which certification is appropriate."  *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000).

**B.     The Proposed Class Is Impermissibly Broad**

As to both the Section 11 and 12(a)(2) claims, Plaintiff's proposed class definition

sweeps far too broadly, because it fails to impose any reasonable temporal limits as to the timing

of relevant purchases.  Plaintiff's theory of the case presumes that the alleged misstatements or

omissions at issue were revealed to the market in the third quarter of 2011, when Kosmos

allegedly revised downward its production estimates for the Jubilee Field, as disclosed in its

2011 second quarter earnings release issued on August 11, 2011.  Compl. ¶¶ 36-45.

Nevertheless, Plaintiff does not even attempt to tie any decrease in Kosmos' stock price to the

disclosures in that earnings release—or, for that matter, to any other alleged corrective

disclosure.  Instead, Plaintiff merely avers that "[t]he price of Kosmos stock has fallen drastically

since the IPO."  *Id.* ¶ 46.  What is even more problematic, the proposed class definition purports

to include *all* persons who purchased "pursuant to or traceable to" Kosmos' IPO offering

materials, Pl.'s Mem. at 1, in other words, without regard for whether they purchased and sold

their securities *before* or *after* negative information regarding the Jubilee Field production was

revealed in late 2011.

Such a temporally unbounded class would improperly include numerous parties who lack

standing to assert the Securities Act claims at issue here.  For example, the proposed class would

impermissibly include purchasers who sold the stock prior to any corrective disclosure, a group

that, as a matter of law, cannot prove loss causation.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S.

336, 342 (2005) (noting that sale of security prior to disclosure of alleged misrepresentation fails

to show causation or damages); *In re Flag Telecom Holdings Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d

Cir. 2009) ("in-and-out traders" were unable to "prove loss causation as a matter of law" where

disclosure occurred after date traders).  Conversely, the proposed class would also include

investors who purchased only *after* the production shortfall at Jubilee was disclosed to investors,

17

a group that cannot show that it suffered any damages from any misrepresentation in the Offering Materials. For that matter, Plaintiff's definition would even include people who purchased after commencement of this litigation. In short, Plaintiff's proposed class definition is clearly improper.

These fatally overbroad aspects of the proposed class preclude certification. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006) (a class "must therefore be defined in such a way that anyone within it would have standing"). At best, should the Court decide to certify a class at all, the class period should end on the date that Plaintiff alleges the production issues at the Jubilee field were disclosed: August 10, 2011.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for class certification should be denied in its entirety.

Dated: November 18, 2013

SUSMAN GODFREY LLP

_____/s/ Terrell W. Oxford_____
Stephen D. Susman
State Bar No. 19521000
Zenobia V. Harris
State Bar No. 24065378
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666

Terrell W. Oxford
State Bar No. 15390500
Warren T. Burns
State Bar No. 24053119
Daniel H. Charest
State Bar No. 24057803
Omar Ochoa
State Bar No. 24079813

18

901 Main Street, Suite 5100
Dallas, Texas 75205-3775
Telephone: (214) 754-1900
Fax: (214) 754-1933

*Attorneys for Kosmos Energy, Ltd.*
*and the Individual Defendants*

GIBSON DUNN & CRUTCHER LLP
Veronica S. Lewis
State Bar No. 24000092
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201-6912
vlewis@gibsondunn.com
Telephone: (214) 698-3320
Fax: (214) 571-2936

Brian M. Lutz
(admitted to practice *pro hac vice*)
New York State Bar No. 4164208
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-3881
Fax: (212) 351-5291

*Attorneys for the Underwriter Defendants*

## CERTIFICATE OF SERVICE

On November 18, 2013, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court, which served the document on the following counsel of record:

/s/ Terrell W. Oxford
Terrell W. Oxford

19

2950216V1/013030