IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


In re:

KOSMOS ENERGY LTD.         )   Consolidated Civil Action
SECURITIES LITIGATION      )   No. 3:12-CV-373-B
_____)

CLASS CERTIFICATION HEARING
BEFORE THE HONORABLE JANE J. BOYLE
UNITED STATES DISTRICT JUDGE
DECEMBER 11, 2013

A P P E A R A N C E S
For the Lead Plaintiff:

     Robbins Geller Rudman & Dowd LLP
     655 W Broadway - Suite 1900
     San Diego, CA  92101
     619/231-1058
     Email: JayA@rgrdlaw.com
     BY:  X Jay Alvarez
          Julie Kearns

     Kendall Law Group LLP
     3232 McKinney Avenue - Suite 700
     Dallas, TX  75204
     214/744-3000
     Email: administrator@kendalllawgroup.com
     BY:  Joe Kendall

For Kosmos Energy, Ltd.:

     Susman Godfrey
     First Interstate Plaza
     1000 Louisiana St Suite 5100
     Houston, TX 77002-5096
     713/653-7801
     Email: ssusman@susmangodfrey.com
     BY:  Stephen D. Susman

---

SHAWNIE ARCHULETA, CSR/CRR
FEDERAL COURT REPORTER - 214.753.2747

        Susman Godfrey LLP
        901 Main St Suite 5100
        Dallas, TX 75202-3775
        214/754-1900
        Email: toxford@susmangodfrey.com
        BY:  Terrell W. Oxford

For the Underwriter Defendants:

        Gibson Dunn & Crutcher LLP
        200 Park Ave
        New York, NY  10166-0193
        212/351-3881
        Email: BLutz@gibsondunn.com
        BY:  Brian M. Lutz

COURT REPORTER:   SHAWNIE ARCHULETA, TX CCR No. 7533
                  1100 Commerce Street
                  Dallas, Texas 75242

proceedings reported by mechanical stenography,
transcript produced by computer.

```
 1              (In open court at 10:21 a.m.)

 2              THE COURT:  Good morning.  Let's see.  For

 3    the record, this is Brady v. Kosmos Energy, Limited,

 4    et al.  Case 3:12-CV-0373.  We are here this morning

 5    on the plaintiff's motion, lead plaintiff's motion,

 6    for class certification, and that's document 119,

 7    filed October 3rd this year.  I have the response

 8    and the reply and all the submissions, and I have

 9    reviewed all of those.

10              So what I would like to do is begin by

11    having -- and let me get my chart here before you

12    start -- you each introduce yourselves, who you are

13    and who you represent, and I'm going to start with

14    Jay Alvarez.

15              MR. ALVAREZ:  Good morning, Your Honor.

16    Jay Alvarez and Julie Kearns of Robbins Geller on

17    behalf of the lead plaintiff.

18              MR. KENDALL:  Joe Kendall, Kendall Law

19    Group on behalf of plaintiff.

20              THE COURT:  And for the defense side,

21    underwriters.

22              MR. SUSMAN:  Steve Susman, Your Honor.

23              MR. LUTZ:  If we are going to start with

24    the underwriters, I am Brian Lutz with the law firm

25    of Gibson Dunn representing the underwriter
```

```
 1   defendants.
 2              THE COURT:  Thank you.
 3              MR. SUSMAN:  Steve Susman, Sussman
 4   Godfrey, for Kosmos.
 5              THE COURT:  For Kosmos and the
 6   individuals.
 7              MR. SUSMAN:  And the individuals.
 8              MR. OXFORD:  Yes.  Terry Oxford; same
 9   thing, Your Honor.
10              THE COURT:  Anybody else we need to have
11   introduced before we go any further?
12              All right.  Well, I have read through all
13   of this, and I would like to hear the arguments, I
14   believe you all requested argument.  It's
15   interesting as this issue of class certification and
16   these kinds of cases have evolved, with the Amgen
17   case and now the Halliburton case has been sent back
18   up to the Supreme Court, they accepted cert in
19   Judge Lynn's court for the second time.  So I'm not
20   sure what all that means for class certification.  I
21   think what it means is it's still not entirely
22   clear, especially with the fraud on the market
23   theory and loss causation.
24              But having said that, I think part of the
25   question here is what the Court can consider in
```

1  deciding what seems to be primarily a predominance

2  issue.  And I want to hear from you all all of the

3  reasons why you think this is a class.  It seems to

4  me that's one of the major issues that the Court has

5  to decide.

6          I am also interested in the fact that

7  these are 1933 Act claims.  So we don't have this

8  issue of reliance and scienter that we have in most

9  of the cases that have come out on certification in

10 these kinds of cases.  So I just wonder if there is

11 a crossover, if you all think what they have

12 reasoned out in those cases is the same or similarly

13 applicable in a case like this where you have

14 Section 11, Section 13, and Section 12 cases.

15         Those are some of my questions.  I know

16 that you all have talked about limiting your remarks

17 to 30 minutes, and I appreciate that.  I will give

18 you leeway there.

19         Who is going to go for the plaintiffs?

20         MR. ALVAREZ:  Thank you, Your Honor.  Jay

21 Alvarez on behalf of the plaintiffs.

22         Your Honor, I'm going to try not to say

23 the same things that were in my papers.  It's fairly

24 easy here, I think, with respect to class

25 certification and Rule 23(a).  Obviously, there are

```
 1    four requirements the plaintiff would have to prove:
 2    Numerosity; commonality; typicality; adequacy.  As
 3    Your Honor is aware, the parties have stipulated
 4    that the first, numerosity and commonality, have
 5    been satisfied.
 6              And if you -- to go back -- I'm not going
 7    to reiterate, like I said, what's in the papers.
 8    But if you look at pages 6 to 9 of the moving
 9    papers, it will lay out how we have satisfied those
10    requirements, and the defendants have agreed that we
11    have satisfied those requirements.
12              With respect to typicality, Your Honor,
13    the third prong, the defendants dispute typicality.
14    But if you look at their opposition papers -- and
15    I'm sure Your Honor read them, because you said you
16    did -- they don't mention typicality.  It's void of
17    any -- they don't mention it at all.  So I'm -- I
18    would like to see what they have to say with respect
19    to typicality so that I can respond appropriately.
20    But I think that since it's not in there that they
21    have waived any such argument.
22              And the reasons for typicality are spelled
23    out in our moving papers on pages 9 and 10.  Like
24    the commonality requirement, Your Honor, this
25    requirement for typicality is not demanding.  The
```

```
 1   lead plaintiff and class claims arise from the same
 2   events and the same course of conduct.
 3          The defendants' misrepresentations and
 4   omissions in the offering documents, which Your
 5   Honor held, are actionable.  In order to prove that
 6   up, we're going to have -- to present the same facts
 7   about Kosmos and its oil production operations to
 8   prove that the statements in the Registration
 9   Statement were false.  So it's the same thing; they
10   are all typical.  So I will reserve further argument
11   if Your Honor has any questions with respect to
12   that.
13          But the main attack -- there's two attacks
14   that the defendants bring with respect to not
15   satisfying the requirements of class cert.  The
16   first is adequacy.  What they say is that the
17   defendants erroneously claimed, though, that the
18   lead plaintiff is totally uninformed and has
19   virtually no knowledge about the case.
20          In support of this, they rely on a few
21   snippets of Sue Saville's deposition testimony.
22   Sue Saville is the Chairman of the Board for the
23   Nursing Homes and Related Industries' Pension Plan.
24   She was deposed earlier this year.
25          So here's what they say on page 8 of their
```

```
 1   brief.  They have four little arguments.  The first
 2   is, hey, plaintiff had never seen, much less read,
 3   the Registration Statement that forms the basis of
 4   both plaintiffs' causes of action.
 5         Like Your Honor said, we don't have a
 6   Section 11 case.  We don't have to prove up
 7   reliance, we don't have to prove up knowledge, we
 8   don't have to prove up any causation.  We don't have
 9   to prove up that the plaintiff read the Registration
10   Statement.  It's not something that we have to
11   prove.  She didn't even have to read it.  It's just
12   kind of like, so what?
13         And then, they go on to say:  Plaintiff
14   could not identify any misstatements in the
15   registration statement.  Well, it's a 200-page
16   document, Your Honor.  And what happened in the
17   deposition -- yes, in the complaint there are
18   references to the Registration Statement to the
19   prospectus.
20         What do the defendants do when they depose
21   Ms. Saville?  They don't mention Registration
22   Statement, they don't mention prospectus when they
23   are asking her.  They put this 200-page document in
24   front of her and say, this is the S 180 form.
25         "Look at this.  Have you seen this before?
```

1          "No.

2          "Tell me where the misrepresentations are

3    in this document."

4          That's all they say.  They didn't show her

5    the complaint.  They never said, hey -- they never

6    asked her, Ms. Saville, what's this case about?

7    What is the plan alleged in the complaint?  What did

8    the defendants do wrong?  They made a twist not to

9    ask her any of those questions.

10          THE COURT:  Mr. Alvarez, along those

11   lines, I have another question.  And that is:  At

12   this stage, I don't know that it's entirely clear

13   after the Amgen case what the Court can consider.

14   It's obviously beyond the four corners of the

15   motions and the complaint.  But they have warned

16   against using the type of rebuttal evidence that was

17   used in the lower courts in that case as

18   inappropriate at the class certification stage.  So

19   I am curious as to what I can consider, and you're

20   talking about what can be considered summary

21   judgment type evidence.

22          MR. ALVAREZ:  No.  But see, that --

23   that's -- what I'm saying is that -- yes, I

24   understand.  So it's spelled out in our papers

25   exactly what Your Honor could consider.  And I think

```
 1    they want to make it a very rigorous test and that
 2    Your Honor can look at the claims, the defenses, and
 3    whatnot.
 4            And it's -- it is appropriate to a certain
 5    extent to look at the merits of the case, but not to
 6    decide the merits; not to say, hey, the plaintiff is
 7    going to win or lose.  You can't do that.
 8            So what Your Honor could consider is -- is
 9    the merits to the extent that it would show whether
10    or not we met all of the requirements of Rule 23.
11    But with respect to adequacy, I mean, these are --
12    these are questions -- it's appropriate here.  I
13    guess maybe I'm not understanding your question.
14            THE COURT:  No, and I'm probably going
15    beyond the adequacy question.  I do have a question
16    about what all I can consider in light of the
17    present state of the case authority.  But I know you
18    are talking about adequacy now.  So if you want to
19    save the rest of that for the other portion of your
20    argument, that's fine, if you want to focus just on
21    the adequacy component.
22            MR. ALVAREZ:  Yes.  If Your Honor has any
23    question, I will be happy to answer that.
24            With respect to the adequacy, they are
25    not -- they didn't ask her any of those questions.
```

```
1              So here -- and what they are saying is
2    that -- in support of this they say, hey, plaintiff
3    could not -- they cite the Umsted case, where
4    plaintiff could not identify the claims asserted in
5    the complaint or any alleged misrepresentations or
6    omissions.  Again, they were asking her about the
7    complaint.  They were asking her about the
8    allegations of the complaint.  And they went
9    in-depth about who the defendants were, what the
10   defendants did.  That's not -- that didn't happen
11   here at all.
12             What did they do, though?  Well, okay,
13   they are going to say the next little point -- so
14   those are the first two little points.  The next
15   point they say is that plaintiff did not recognize
16   the names of certain defendants.  Right?  But it's
17   not -- they make it seem like certain defendants.
18   But Your Honor, there are 23 defendants in this
19   case.  And you know what they asked her?  They asked
20   her, hey, who is Chris Tong?
21             I don't know.
22             What about Christopher Wright?
23             I don't know.
24             Those two are board of director members,
25   and they were like the last two individuals listed
```

1    as defendants under the board of directors.  First

2    you had all of the executives, you listed the 12

3    board of directors, and those were the last two.  So

4    if that's all they got, they are going to base their

5    whole claim that, hey, our client is not adequate

6    because they didn't remember -- she didn't know or

7    remember two names out of 23 defendants?  You know

8    what?  Let them.

9              But what they didn't tell Your Honor is

10   that, well, when they did ask her about a defendant,

11   what did she respond?

12             They asked her:  "Hey, who is CitiGroup?

13             "CitiGroup is one of the underwriters.

14             "Why are you suing CitiGroup?

15             "Because they didn't do their due

16   diligence.

17             "Due diligence for what?

18             "Due diligence as set forth in the

19   allegations of the complaint."

20             That's it.  They didn't -- they didn't --

21   so when they asked her about -- specifically about a

22   defendant, she knew what happened and why that

23   particular defendant like CitiGroup was sued.  They

24   never asked her about any of the other underwriters

25   and, you know, what their position was and why were

13

1  they sued.  They never asked her about any of the

2  individual defendants.  They never asked her, hey,

3  Ms. Saville, why did the plaintiff sue the CEO,

4  controller?  They never asked her anything like that

5  at all.  They asked her about those two defendants.

6         What -- Your Honor, what they do neglect

7  to tell you and what they ignore is that Ms. Saville

8  had knowledge about the case.  What did she say?

9  Kosmos commenced oil production in 2010.  They put

10 out the prospectus in 2011, I think it was in May,

11 which it was, May 2011.  The production problems

12 didn't start coming out to the public until late

13 2011.  That's the basis of this case.  Those are the

14 allegations.

15        What also they didn't tell Your Honor is

16 that she was clearly aware of what the role of the

17 lead plaintiff was.  They asked her specifically:

18 Do you understand the concept of a lead plaintiff,

19 what that means for purposes of class action

20 litigation?

21        Answer:  We direct the actions towards the

22 case.  We keep informed of all proceedings that are

23 discussed, also, with our legal counsel from the

24 Plan.  We want to pursue, to be reimbursed for all

25 of our losses.

14

```
 1              It goes on to say in a different portion
 2   of the transcript:  The Court will determine any
 3   recovery.  Our wish list would be that we get the
 4   full restitution for the whole class.
 5              Again, in another portion of the
 6   transcript:  The plan had the largest loss, and our
 7   members' money is very important to the plan, to the
 8   trustees.  And it's our due diligence and fiduciary
 9   responsibility to pursue any avenue that we can to
10   recoup losses.
11              Clearly knows what it means to be a lead
12   plaintiff and is ready and able to carry out those
13   responsibilities.
14              They also neglect to tell you that there
15   was a declaration submitted by Ms. Saville in
16   support of the Motion for Class Cert.  And in that
17   declaration, it is absolutely clear that the plan is
18   an appropriate -- is adequate to represent the
19   class.
20              Because what happens is that it's
21   undisputed; they don't dispute it.  You can look at
22   the transcript, you can look at their papers, they
23   don't dispute that the plan is participated in
24   decision-making with respect to litigation matters
25   and supervising outside legal counsel is an
```

1  institutional investor committed to --

2         THE COURT REPORTER:  Excuse me.  You need

3  to slow down when you are reading.

4         MR. ALVAREZ:  -- is an institutional

5  investor committed to vigorously prosecuting this

6  litigation; has regularly consulted with its lawyers

7  regarding significant developments in this case; has

8  made specific strategic decisions regarding the

9  course of litigation; reviewed court filings; and

10 supervised discovery.

11        And I will give you just a little example.

12 In this case at the motion to dismiss stage, Your

13 Honor dismissed without prejudice Blackstone and

14 Warburg Pincus.  You gave the plaintiff 30 days to

15 seek amendment of those claims.

16        So what did we do?  We called up

17 Ms. Saville and explained to her the pros and cons

18 of doing this; had a discussion with her.  She

19 provided input; ultimately decided, then, the plan

20 was not going to go forward with that amendment.

21        I don't know how more adequate you can be

22 that -- it's not the attorneys that are running the

23 case.  She has input, and they can't dispute that.

24 They don't even try to attack that, because they

25 cannot.  The record is void of any of that.  So it's

1    clear that the plan is -- is adequate to represent

2    the nonclass members.

3           The second argument, Your Honor, is, as

4    you alluded to earlier, the issue of predominance.

5    So with respect to this case, when you read all

6    those cases, they always say that the predominant

7    issue for class certification is liability.  Right?

8           Well, that's the predominant issue here.

9    In order to establish liability under Section 11 and

10   12, the lead plaintiff in the class must prove

11   defendants made untrue statements of material fact

12   in or omitted material facts from the offering

13   documents concerning the oil production at the

14   Jubilee Field.

15          That's what we have to prove.  That's the

16   liability.  How are we going to do that?  We are

17   going to do that with common proof regarding these

18   misrepresentations and omissions.  So its common

19   proof is going to show -- it clearly shows that

20   there's common questions of law and fact --

21          THE COURT:  Okay.  But this all gets down

22   to, then, this issue, as I see it -- little bit

23   easier for the plaintiffs in this case because it's

24   not a PSL case, but that issue of materiality, what

25   exactly does that mean?  It seems that it gets

```
1   interpreted as a reliance element, as well as other
2   elements, but it's materiality.  So how is that
3   connected up with this predominance fact?
4            MR. ALVAREZ:  See, that's the whole thing.
5   The materiality is presumed in a Section 11 case;
6   it's presumed in a Section 11 case.  So -- and it's
7   common, because if we don't prove up commonality at
8   trial, right, what happens?  The case goes away
9   completely.  So it's common proof.  And that's all
10  we have to show, is that it's predominance; it's not
11  perfection, it's a common question.
12           And there are common questions here, like
13  the falsity of those statements.  Like the Supreme
14  Court in Amgen has said, the falsity or misleading
15  nature of defendants' alleged statements or
16  omissions are common questions that need not be
17  adjudicated before a class is certified.
18           Another common question -- another common
19  predominating question is whether the underwriter
20  defendants acted as statutory sellers in this
21  action.  So there is a host, and it's spelled out in
22  our moving papers, of these common questions.
23           But what the defendants try to do, despite
24  the issues of commonality, predominance, common
25  questions, what they say is they try to pick away at
```

1    it.  What they say first is, hey, with respect to a

2    Section 11 case, the defendants -- the plaintiffs

3    have to prove knowledge, and that is absolutely

4    incorrect.

5            I mean, I don't -- the statute, itself,

6    just a plain reading of the statute, itself, that

7    controls.  There is -- we don't have the -- the

8    plaintiffs don't have to prove knowledge.  Knowledge

9    could be an affirmative defense, yes, but that's

10   something that the defendants -- for the defendants

11   to prove.  It's not something to be decided at class

12   cert, it's something to be decided at summary

13   judgment or at trial.

14           With respect to the knowledge of -- that

15   knowledge is not an element, here, I will just give

16   you a couple of cases.  In re:  First Republicbank

17   Securities Litigation, 1989 U.S. District LEXIS

18   11139, and it's star 22.  It's a Northern District

19   of Texas case, knowledge by the purchaser of an

20   alleged misrepresentation or omission is a defense

21   to plaintiff's Section 11 claim.  It's not an

22   affirmative element, it's a defense.

23           In Re: IndyMac Mortgage-Backed Securities

24   Litigation, 2012 U.S. District LEXIS 116586, star

25   33, defendants ignore the fact that knowledge is an

```
 1    affirmative defense, not a required element of a
 2    Securities Act claim.  So it's -- we don't have that
 3    burden.  It's their burden.  It's a defense.
 4              Now, the -- even the cases that the
 5    defendants cite, themselves, you have to -- Judge,
 6    you have to look at each case individually.  In
 7    those cases that they cite, there's a couple of
 8    things:  Either there is affirmative evidence
 9    presented by the defendants at class cert that
10    certain investors had knowledge of, if you would,
11    quote, unquote, the fraud, or were somehow involved
12    in it.  Okay?  You don't have that here.  They
13    haven't proved anything.  They haven't shown you any
14    evidence whatsoever about any of the investors
15    having knowledge of the misrepresentation or the
16    misstatements in the Registration Statement.  None.
17              They cite a couple of 5th Circuit cases,
18    Sandwich and Castano, to talk more about this
19    knowledge and Section 11 cases.  But in Sandwich,
20    what happens?  Defendants introduced evidence that
21    class members individually negotiated with insurers
22    re worker's compensation insurance premiums.
23              Okay.  So there are individual issues, so
24    there's not going to be predominance.  There is no
25    such evidence here.  Castano, what was -- what
```

1   happened there?  Class members were exposed to

2   nicotine through different products, different

3   amounts of time, a different period.  The class

4   members had -- the class members' knowledge about

5   effects of smoking differs.  They began smoking for

6   different reasons.  There were variations in the

7   state laws.

8           Yeah, if that situation occurred, yeah,

9   that's something totally different.  That's not

10  here.  Here, it's a simple case.  There's three

11  misstatements that we have alleged in the

12  Registration Statement regarding Kosmos and the oil

13  production.  That's it.  And there is an IPO;

14  there's nothing else.  There's no other state laws

15  implicated at all.  There's no evidence that the

16  defendants have submitted regarding the knowledge

17  that any investor may have had.

18          THE COURT:  So how do you define your

19  class?  I know you've got it in writing, but give me

20  an idea of how you define your class.  And what is

21  it precisely that happened to them?  And I

22  understand this fraud on the market theory that you

23  are going to show proximate causation.

24          MR. ALVAREZ:  Right.  Well, see, that's

25  the whole thing.  We don't have to show -- there's

21

1   no implication whatsoever.

2           THE COURT:  Please, go ahead and define

3   your class for me and give me just a step-by-step

4   approach of how it is you are going to get where you

5   need to go to show liability.

6           MR. ALVAREZ:  Okay.  I just want to make

7   it clear --

8           THE COURT:  I understand your point.

9           MR. ALVAREZ:  Fraud on the market is not

10  applicable here.  It's a Section 11 case.  It's not

11  a 10(b) case.  So as we have set forth in our

12  motion -- and I think the key point is -- the class

13  period is all persons and entities who purchased or

14  otherwise acquired Kosmos Energy, Limited, common

15  stock issued pursuant to or traceable to Kosmos'

16  initial public offering --

17          THE COURT:  Slow down just a little bit.

18          MR. ALVAREZ:  -- paren, quote, IPO, closed

19  quote, closed paren, registration statement and

20  prospectus that became effective on May 10th, 2011,

21  and who were damaged thereby.

22          THE COURT:  What's our time frame of

23  eligible plaintiffs?

24          MR. ALVAREZ:  That's the other thing.  I

25  don't think that there is necessarily a need for any

22

1    time frame.  Obviously, you begin at the date of the

2    IPO.

3              THE COURT:  Which was?

4              MR. ALVAREZ:  Which was May 10th of 2011.

5              Now, the end date -- there is really no --

6    it's not like a 10(b) case where you have to have

7    like an end date, like the truth is revealed.

8    Because when you look at the statute, itself -- and

9    again, you're going back to the plain language.  So

10   the plain language of the statute contemplates that

11   even after a year from the IPO.  So reliance is

12   presumed up to like one year after the IPO.  An

13   investor could even sue under Section 11 in the IPO

14   after that one year.  But guess what?  He's going to

15   have to prove that he relied on those statements.

16   So the presumption goes up to a year.  So

17   theoretically, you could go past that.

18             But if you're asking for an end date, the

19   defendants' expert, loss causation expert, who it's

20   totally irrelevant here because that's the defense

21   that the defendants could put on at summary judgment

22   or at a trial, he acknowledges, okay, well, we're

23   going to take the date that the first complaint was

24   filed in this case, which would have been January

25   10th of 2012.  And if Your Honor wants an end

23

```
 1   date --
 2             THE COURT:  I think the point here is,
 3   it's got to be a manageable class.  It all goes back
 4   to the Rule 23(a) and (b) factors.  It has to be a
 5   manageable class, and it helps along those lines on
 6   that factor to know what the time frame is so we
 7   will have a better idea.  Is it going to go on
 8   forever or is it manageable?
 9             MR. ALVAREZ:  Then we're fine.  The lead
10   plaintiff is fine to have the end date to be on
11   January 10th of 2012, which their expert says that's
12   the date that the first complaint was filed.  The
13   reason you pick that date is because, you know, if
14   the first complaint is filed, then there should
15   be -- the investors who purchased afterwards should
16   be on notice of these allegations.
17             THE COURT:  All right.  So just let's
18   assume arguendo that that's the time frame.  I want
19   you to walk through, then, what you have to show to
20   get to liability.  I know it's just not false
21   statements and it's automatic.  There's got to be
22   more to this, and I want to have you run through
23   what it is you are going to have to establish to get
24   past the liability issue here.
25             MR. ALVAREZ:  Well, yeah, but for purposes
```

```
 1   of class certification, we've just got to make sure
 2   that there are predominating -- that there are facts
 3   that are common to everybody.
 4           THE COURT:  Right.  But on the other end
 5   of that, which makes this analogy confusing and
 6   conflated sometimes, is that we have to be sure that
 7   you have models of proof or methods of proof, not
 8   the actual proof itself, that will lend themselves
 9   to commonality and predominance.  And so that's why
10   I ask you, how do you get to the end?  How do you
11   get to liability?  Maybe you don't have to prove it
12   with evidence.  No, you don't, but you are going to
13   have to tell me what your proof is so I know it's
14   predominating and common.
15           MR. ALVAREZ:  It's our position that
16   that's a discussion, yes, we can have down the road
17   with respect to summary judgment or trial.
18           Right now, all I can tell you is that the
19   same evidence -- see, we're in the discovery stage,
20   so we are getting some documents from the defense,
21   we're building up the case.  But right now I can't
22   tell you what the evidence is, but we are going to
23   have to show that the statements alleged in the
24   Registration Statement were material and were false
25   or there were omissions.  So all of that evidence
```

```
 1    that we can get from the defendants, all documents,
 2    all e-mails, you know, testimony from the people
 3    that we depose, all of that stuff.
 4              THE COURT:  I think I'm maybe not asking
 5    you this right.  I'm not so much asking you to tell
 6    me what is out there in your case that you will
 7    prove, but in any case, what's your model of proof
 8    here?  What are you going to use which makes me
 9    convinced that it's not more individualized than it
10    is appropriately centralized in a class action?
11              MR. ALVAREZ:  Maybe I'm confused, Your
12    Honor.  Because the model of proof, it's the same --
13    whatever we are going to prove, it's the same
14    documents, the same testimony, the same --
15              THE COURT:  Showing what?
16              MR. ALVAREZ:  Showing that the defendants
17    made material misstatements regarding the Jubilee
18    Oilfield.
19              THE COURT:  Right.
20              MR. ALVAREZ:  For example, what's alleged
21    in the complaint?  They had these daily production
22    reports that were showing that the wells weren't
23    producing as they had projected.  And therefore,
24    whenever they said, hey, we're going to make
25    120,000 barrels of oil a day later on in the year,
```

 1    that was false.  There was no reasonable basis for

 2    that.

 3           So that's how we are going to prove it up;

 4    those documents, things like that.  But it's going

 5    to be common for everybody.  And if we don't prove

 6    that up, we lose.  So that's the proof.  But if

 7    you're talking about proof with respect to like

 8    damages, I mean --

 9           THE COURT:  No.  I'm trying to get an idea

10    of -- because it seemed almost like you are skipping

11    over what you're going to have to show in the

12    general sense in a case like this that would

13    convince me that this is more appropriately a class

14    action as opposed to more individualized cases and

15    that you actually have enough to show that you've

16    got some materiality and that this is a case that

17    deserves class certification.

18           MR. ALVAREZ:  Right.  But all those

19    factors are in a 10(b) case maybe, but we don't have

20    to prove -- we don't have to show materiality.  We

21    don't have to show reliance.  We don't have to show

22    you loss causation.

23           THE COURT:  How is it you get to

24    materiality?

25           MR. ALVAREZ:  It's presumed.

```
 1            THE COURT:  I understand that.  But it's
 2   an element of a Rule 11, Rule 12, Rule 15, so it's
 3   an element.  It's not just there, it has to get
 4   there somehow.  And I analyzed that in depth in the
 5   June 24th order as to the elements.  So it's not
 6   just -- there's more to it than just saying it's --
 7            MR. ALVAREZ:  No, no.  That's the whole
 8   thing.  You are right, at a different stage; not for
 9   class cert.  You can't have the plaintiff prove up
10   the allegations of materiality now.  It's presumed
11   right now.  We're going to have to prove it up at
12   trial.
13            THE COURT:  All right.  You've answered my
14   question on that.
15            Is there anything else you want to tell me
16   on how it is this case looks as a class case from
17   the liability standpoint -- what does it look like?
18   What is going to happen -- so we can talk a little
19   bit -- I can be a little more clear on how it falls
20   within the Rule 23(b)(3) factors.
21            MR. ALVAREZ:  No, other than it's just
22   common proof, Your Honor.  I mean, like I said, the
23   same documents, same testimony, same reports, it's
24   all the same.
25            THE COURT:  To show --
```

1              MR. ALVAREZ:  To show --

2              THE COURT:  -- that this group of people

3    that are your class, that what happened?

4              MR. ALVAREZ:  No, no.  That those

5    statements in the Registration Statement were false

6    and material when made or certain facts were

7    omitted.

8              THE COURT:  But not everyone in the

9    universe is tied into that, so this group of people

10   is tied into that how?

11             MR. ALVAREZ:  Well, they were investors in

12   Kosmos, that's how they are tied in.  But again,

13   they don't even have to read the Registration

14   Statement because --

15             THE COURT:  They are investors.  That's

16   the point I'm --

17             MR. ALVAREZ:  They are investors, yes.

18             THE COURT:  Investors that invested during

19   this period of time that you have called your class.

20             MR. ALVAREZ:  Correct.

21             THE COURT:  All right.

22             MR. ALVAREZ:  Yes.  I mean, it's -- the

23   majority of the investors are going to be those

24   individuals that purchased in the IPO.  But there

25   could be other investors that subsequently purchased

1  from the IPO, and that's allowed under the law as

2  set forth in our briefs.

3          But it's -- I just want to -- I hope I am

4  answering your questions, because it just -- if we

5  don't prove up any of those elements, it will all

6  fall down.

7          The only thing that -- with respect to

8  what the defendants are saying, well, they are

9  saying -- the other thing they are talking about

10 predominance is the damages issues, and they are

11 talking about Comcast.

12         And they are basically saying, hey, under

13 Comcast, you're not showing any measured method of

14 damages that can be applied class-wide, and your

15 damage methodology is not tied to any plaintiff's

16 theory of liability.

17         Well, Comcast and that BP case that they

18 gave you, those are totally different.  Comcast is

19 an antitrust case, very complicated.  BP is a 10(b)

20 case with alleged multiple frauds.  But if you look

21 at those, what happened in those cases?  What

22 happened in Comcast?

23         Well, the defendants set forth -- the

24 plaintiffs set forth four theories of liability.

25 The Court kicked out three of those theories of

```
 1   liability.  Right?  So there was only one left.
 2           What did plaintiff's expert do in that
 3   case when he was measuring the damages?  Well, he --
 4   his damage model included all four theories of
 5   liability.  He admitted that he couldn't parse them
 6   out.  So clearly, yeah, it's not -- your model is
 7   not -- doesn't work class-wide and it's not tied to
 8   the theories of liability.  Right?  If his model had
 9   only been tied to the one theory of liability, then
10   that's a different story.
11           We don't have any of those issues here.
12   The statute, the plain reading of the statute says
13   how damages are calculated.  And the theory of
14   liability is only one theory regarding those
15   misrepresentations regarding the oil production at
16   Jubilee Field.  It's not multiple theories of fraud.
17   That's one, and it's tied to that.
18           So unlike Comcast, unlike BP, this is a
19   rather straightforward case, and the statute tells
20   you class-wide how to calculate the damages.  Like
21   in Constar, the 3rd Circuit case, it says,
22   Section 11 damages are calculated as the difference
23   between purchase price of a security and a price at
24   the time suit was filed or securities sold.
25           I mean -- so that's -- it applies to
```

```
 1   everybody.  That's class-wide, and there's only one
 2   theory of liability.  So those cases have no impact
 3   on this case.  If it was a 10(b) case, if it was an
 4   antitrust case, maybe, but that's not the situation.
 5            THE COURT:  What are your best Section 11
 6   cases on these points?
 7            MR. ALVAREZ:  Right there, Constar.
 8            THE COURT:  Besides that.  I'm curious
 9   about -- I agree with you that the cases do seem to
10   talk more about other areas, other areas of law, or
11   other kinds of securities fraud.  But just if you
12   could tell me, because there are a lot of cases
13   cited in here, what your best class certification
14   cases are under the 33 Act in these sections that
15   would support your position on class certification.
16            MR. ALVAREZ:  You know, Your Honor,
17   it's -- I would direct your attention to Butler v.
18   Sears at 727 F.3d 796, 801, 7th Circuit 2013.  And
19   it's a parenthetical.  It says:  If the issues of
20   liability are genuinely common issues and the
21   damages of individual class members can be readily
22   determined, the fact that damages are not identical
23   across all class members should not preclude
24   certification.
25            THE COURT:  Could I have that case cite
```

32

1   again?

2           MR. ALVAREZ:  It is 727 F.3d 796, 7th

3   Circuit.  And it's a case that discusses Comcast

4   and -- discusses Comcast and how Comcast is -- you

5   know, you have to look at it -- at the facts.

6   Again, the facts were different in Comcast because

7   of no class-wide theory of methodology, which we

8   don't have here, and the theory -- the liability

9   theory wasn't tied to that methodology, which we

10  have here.

11          THE COURT:  Okay.  Can you give me an

12  idea, just a ballpark in numbers, what you might be

13  talking about as class members?  I'm not going to

14  tie you to that, but we have tried to get that.

15          MR. ALVAREZ:  That's hard to say at this

16  stage, but it is clearly like in the hundreds.

17          THE COURT:  Okay.  All right.  You're a

18  little past your 30 minutes, but I know I asked you

19  some questions, so I will let you add anything you

20  like.

21          MR. ALVAREZ:  The only other thing that I

22  just want to make clear, you know, is how the

23  defendants are saying -- well, they have said it

24  over and over in the brief, and if Your Honor has

25  any questions, maybe we can answer them now or

33

```
 1   later.
 2            But with respect to loss causation, their
 3   expert report, that is totally irrelevant to class
 4   cert.  I mean, the cases we have cited in our brief
 5   say -- the Supreme Court has said, you don't prove
 6   up loss causation at a class certification.  And
 7   anyway it's all common, right?  And Your Honor is
 8   well aware of that.  And they have the burden, not
 9   the plaintiffs, they have the burden to show
10   negative causation.  It's not an element, and it's
11   not something the plaintiffs would have to prove.
12            THE COURT:  Right.  But I think it can
13   be -- and I'm not saying I think it is right now --
14   but it can be a valid consideration for the Court on
15   class certification, not as a merits inquiry, but
16   just as the superiority of the class as opposed to
17   individual types of claims when you are talking
18   about how you are going to get into loss causation.
19            Again, I think a lot of this is conflated
20   with the other --
21            MR. ALVAREZ:  Right.
22            THE COURT:  -- and maybe appropriately so
23   because of the complex nature of this.  But I think
24   there is a little bit of that that they can bring up
25   today.
```

34

```
 1              MR. ALVAREZ:  With respect to loss

 2   causation?

 3              THE COURT:  With respect to the

 4   predominance and superiority here, when we are

 5   talking about down the road, is it appropriately --

 6   because there are damages issues that can derail a

 7   class certification, because the damages issues are

 8   so separate and individualized.  I'm not saying that

 9   I see that here, but I am just telling you that I

10   don't think it's completely off limits for the Court

11   to consider some of that.

12              MR. ALVAREZ:  Okay.  Yes.  But remember,

13   just like what I said before, the way damages are

14   calculated are set forth by statute.  And it's

15   class -- it's class-wide.  It's been done, I don't

16   know, for many, many years, so. . . with respect to

17   superiority, I just want to say, again, Your Honor,

18   they are contesting that they say.  But it's not in

19   their papers, so I don't know what their argument is

20   going to be about superiority.  I would submit that

21   they have waived any such argument.  They don't make

22   it here.

23              THE COURT:  I will give you a chance to

24   get back up when I have heard from the others.

25              As far as the defense goes, I'll let you
```

1   all tell me -- are the underwriters going to go

2   first or -- Mr. Susman?

3              MR. SUSMAN:  Your Honor, Steve Susman.

4   I'm going to speak on behalf of Kosmos on the issues

5   of predominance and damages.  I will limit my

6   remarks to the Section 11 case.

7              My partner, Mr. Oxford, in and on behalf

8   of Kosmos, will deal with adequacy and class

9   definition.  And then Mr. Lutz will conclude

10  speaking on behalf of the underwriters, limiting his

11  remarks, I believe, to the Section 12 claim, which

12  is against the underwriters and has different

13  elements of the Section 11 claim.

14             Your Honor, before the Supreme Court's

15  decision this year in Comcast, it was generally

16  assumed by the Securities Bar -- and Mr. Alvarez

17  said for years and years that's how the class action

18  bar has done things -- generally assumed that any

19  Section 11 case with an adequate class

20  representative was per se certifiable because

21  individual issues of each class member's knowledge

22  and absence of loss causation were defenses, not

23  elements, of the plaintiff's cause of action.

24             And that general assumption has caused

25  most plaintiff's lawyers, like Mr. Alvarez, to come

 1    to court and assert they have essentially a

 2    statutory right to proceed as a class action,

 3    whether or not they can articulate a trial plan when

 4    asked by the Court or not.

 5             But -- and while it's generally true of

 6    most Section 11 cases, it's not true of this case

 7    for the following reasons:  First, there is an

 8    exception to the general rule, that the patient plan

 9    itself admits on page 6 of its reply brief.  Quote:

10    Individual knowledge typically predominates only if

11    there is specific evidence in the record that the

12    proposed class representatives and other class

13    members knew different things at the same time,

14    which defendants have not even attempted to

15    introduce, closed quote.  That's from their brief.

16             To the contrary, we did introduce that

17    evidence and we do fall within the exception they

18    recognize.  We introduced the declaration of

19    Professor Hubbard.  He identified 14 public

20    announcements, both by Kosmos and its three Jubilee

21    Field partners, that contained new news, adverse

22    information about production in the field directly

23    contradicting the three alleged misrepresentations

24    about current and projected production, which this

25    Court has allowed to proceed beyond the pleading

1    stage.  That's from your opinion.  You allowed three

2    misrepresentations to proceed to trial.

3            Now, depending on when a given shareholder

4    investor purchased Kosmos stock, every class member

5    may have read one or more or even all of these

6    public announcements.  The Court can take judicial

7    notice, if you know some statistics, that there are

8    16,383 possible combinations of widespread

9    information produced by this mix of 14 public

10   announcements on the stated dates, each -- according

11   to the professor -- containing something new.

12           The pension plan has not even attempted to

13   rebut that.  And this fact alone brings this case

14   within the exception that the pension plan

15   recognizes and acknowledges in their reply brief.

16   It makes this case much more like the 2nd Circuit's

17   IPO decision that all of the other cases cited by

18   the plan that have certified Section 11 cases over

19   claims of hypothetical differences of knowledge

20   among class members.

21           In the IPO, the complaint itself alleged

22   that class members were aware of, and in some cases

23   participants in, the practice complained of.  And

24   there was other evidence in discovery responses that

25   demonstrated, and I'm quoting the 2nd Circuit,

```
 1   quote:  That the predominance requirement is
 2   defeated because common questions of knowledge do
 3   not predominate over individual questions, closed
 4   quote.
 5           Here, Your Honor, proof of widespread
 6   individual knowledge is provided not by the
 7   complaint's allegation but by the unanswered
 8   declaration of Professor Hubbard.  In an effort to
 9   avoid the IPO case, the plan cites the decision of a
10   Southern District of New York district court in
11   Public Employees Retirement System of Mississippi.
12           According to the plan's footnote, that
13   district court decision clarifies what the
14   2nd Circuit meant in IPO.  In fact, Judge Rakoff in
15   that case, distinguished IPO on the basis that --
16   and I'm quoting him -- quote:  Sheer conjecture of
17   class members, must they discover that the reps and
18   warranties at issue in the case were, in fact,
19   false, is insufficient to defeat plaintiff's showing
20   of predominance when there is no admissible evidence
21   to support defendants' assertion.
22           That's not this case.  Because, here, the
23   admissible evidence is Professor Hubbard's
24   unrebutted declaration.  He cites, he gives you
25   where to go look and see the 14 public announcements
```

1  that relate directly to the Jubilee Field's

2  production.

3          THE COURT:  Mr. Susman, why is it okay for

4  the Court to consider that at this stage, as opposed

5  to a summary judgment stage, this admissible

6  evidence?

7          MR. SUSMAN:  Because it is a declaration;

8  it's unrebutted.  I mean, we all had fair warning

9  that you were going to have a hearing without being

10 allowed to call witnesses; they did, too.  They

11 didn't ask for some ability to call live witnesses.

12         THE COURT:  I just want to make sure I'm

13 not running afoul of the Supreme Court's --

14         MR. SUSMAN:  You are not.  I think he

15 would readily concede that every Court that talks

16 about these cases talks about the declarations of

17 experts, including Judge Ellison's decision last

18 Friday we talked about.

19         In Ellison's decision, it was interesting.

20 In that case, the plaintiffs had an expert.  They

21 didn't rely upon his testimony for class

22 certification, but they had one.  They don't even

23 have an expert here.  They put nothing forward in

24 response to Professor Hubbard.  And they were

25 totally permitted to come forward with an affidavit

1   from their experts, but they did not.

2          In the Public Employees Retirement System

3   case, Judge Rakoff's case, the class representative

4   testified that it lacked knowledge.  And the

5   defendants' own expert testified that he was not

6   aware that the plaintiff's money managers knew of

7   the false statements.  And despite an extensive

8   literature search, he found nothing about false

9   statements in connection with the offerings at

10  issue.  Again, that's the case that relies on the

11  testimony of the experts.

12         Here, Professor Hubbard, in an admissible

13  declaration, opined that the 14 news announcements

14  were widespread enough; that, as an economist, he

15  expected each to have an effect on the price if the

16  information were deemed materially adverse.

17         The other pre-Comcast case that the plan

18  relies upon to get around the IPO decision is a case

19  called IndyMac Mortgage, a Southern District of New

20  York case, which he referred to, Mr. Alvarez just

21  referred to.

22         In that case, Judge Kaplan started with

23  the proposition -- and I'm quoting -- quote:  In

24  determining whether the predominance requirement has

25  been met, courts must consider both affirmative

1   claims and potential defenses.  That's a Section 11

2   case.  Judge Kaplan, who is a very scholarly

3   Southern District judge, acknowledges right up front

4   that you don't just ignore affirmative defenses.

5          He then, in that case, reviewed news

6   articles and complaints filed in other courts

7   discussing the mortgage-backed securities and

8   housing market generally and even some that

9   mentioned IndyMac Bank specifically.  But he found

10  that the only articles mentioned in the bank did not

11  discuss any other facts that were the basis of the

12  Section 11 complaint.

13         Now, Your Honor can go look at the

14  citations that Professor Hubbard found, the 14

15  instances, and they are talking about the same

16  production from the same field that they claim was

17  misrepresented.  This is an unusual case, because

18  there were four partners in that field.  Each of

19  them are making statements publicly about

20  production.  And we don't know, obviously, which

21  class members had exposure, actual exposure, to any

22  combination of the pronouncements of the bad news by

23  one or all of those four partners.

24         In any event, the IndyMac case, because of

25  the way Judge Kaplan described his review of the

1  evidence, is entirely different from the 14 news

2  announcements that identified Professor Hubbard.

3          It is also, in the absence of any

4  evidence, makes it impossible for this Court to

5  conclude, as Judge Kaplan did, that, quote, the

6  record before it does not contain enough evidence

7  that any prospective class members or member likely

8  knew or had notice of the alleged misstatements or

9  omissions in the offering documents.  The unrebutted

10  declaration of Professor Hubbard, you can't reach

11  that conclusion.  In fact, you could conclude the

12  opposite, that it was likely that they knew about

13  one or more of these announcements.

14          The second reason why this Court should

15  not certify this post-Comcast Section 11 case is

16  that the pension plan utterly fails to present any

17  proof that damages can be calculated on a class-wide

18  basis so that individual issues, in calculating

19  damages, will not predominate.  That, after all, is

20  the ultimate requirement of Rule 23.

21          And look at the last paragraph of

22  Professor Hubbard's unrebutted declaration.  He

23  says, quote:  I have seen no evidence of any

24  statistically sound methodology that could

25  demonstrate class-wide damages arising from the

1    allegations in the complaint, closed quote.

2            Now, they can't, in light of that

3    unrebutted expert statement, fall back on the

4    statutory formula for calculating damages and fail

5    to introduce -- they have no evidence before you on

6    this issue of damages or knowledge.  All they have

7    is, well, we are presumed -- we are presumed to have

8    damages.

9            All I'm saying is, post-Comcast,

10   regardless of the cases before Comcast, plaintiffs'

11   lawyers can no longer come into court and rely on

12   just that assertion that, oh, well, there is a

13   formula so we don't have to tell you how we prove

14   damages.  Or, because knowledge is an affirmative

15   defense, I don't have to explain to you how we are

16   going to handle in trial the efforts of what happens

17   when the defense lawyer begins showing every witness

18   that they call one of these 14 announcements and

19   begins asking, did you see this, what did you know

20   about this?  You know, the jury is going to -- I

21   mean, it's going to be -- individual issues are

22   going to totally predominate, and they are not going

23   to be relegated to the common issues.

24           Dr. Hubbard testified in his affidavit

25   that there are 17 days, 17 separate days on which

1   new news about the Jubilee Field was disclosed,

2   between the effective date with a class period when

3   the IPO became effective, that was the May date, and

4   the date the complaint was filed, presumably, he

5   says, the end of the class period.

6           The factors affecting the price of stock

7   purchased and sold during each of these 16 periods

8   of time -- there are 16 separate time periods in

9   this period from May to January, in between these

10  new news events.  He has to -- what Professor

11  Hubbard did is, he looked at the prices during each

12  of these -- how the prices reacted to each of these

13  new news events.  He applied a regression analysis

14  to remove other factors and to determine whether

15  there was any impact.

16          The plan here responds that his use of an

17  event study -- that's what he calls it, an event

18  study -- to show no damages to a class proves that

19  such a study can be used to prove damages on a

20  class-wide basis.

21          That is similar to the argument made by

22  the plaintiffs in the BP case that Judge Ellison

23  reviews to certify the plan.  There, only the

24  defendants' expert had prepared an event study, and

25  defendants were using their own expert study to

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER — 214.753.2747**

1   demonstrate the preponderance of individual issues.

2   There, at least, the plaintiffs had their own

3   expert.  But the Court said he failed to explain how

4   he would conduct an event study that would prove

5   damages on a class-wide basis.

6            Here, the plaintiff hasn't bothered to

7   submit anything from its own expert.  And looking at

8   the number of times Professor Hubbard had to make a

9   regression calculation suggests that combinations

10  are so many that individual issues will clearly

11  predominate.

12           According to the plaintiff, Comcast did

13  change nothing, and it is entitled to have its

14  Section 11 claims certified without introducing any

15  knowledge as to how -- any evidence as to how

16  knowledge or damages could be dealt with on a

17  class-wide basis.  No case, post-Comcast, including

18  Butler, stands for that in-your-face proposition.

19           Let me now turn to the main case on which

20  the plan relies, the Constar case.  The defendants

21  in Constar did not claim that the knowledge of

22  individual class members was an individual issue.

23  Instead they argued that loss causation was an

24  individual issue.  The 3rd Circuit noted, as we

25  concede, that loss causation is an affirmative

1    defense.  That's why it's called negative causation

2    in the Section 11 context.

3              It went on to note that, in most cases,

4    loss causation or negative causation would not

5    defeat predominance because, quote, any affirmative

6    defense on this ground would present a common issue,

7    not an individual issue.  If something other than

8    the alleged misrepresentations produce a drop in

9    stock price, be it the weather, market conditions,

10   or any other factor, class members would be affected

11   uniformly.  If, for example, Investors X, Y, and Z

12   all purchased Security A, and Security A's price

13   happens to fall dramatically in the ensuing months,

14   the cause of that decline would not differ as to

15   each investor, closed quote.

16             The assumption made by the Court in the

17   Constar case, in that example, is that all investors

18   purchase and sell at the same time; therefore,

19   subjecting them all to the same events.

20             Here the events, which affect both prices,

21   are potential announcements.  There are 14 of them

22   that occurred at 14 different times.  These

23   announcements would have an effect on some class

24   members, but not on others.  Some may have purchased

25   after the announcement.  Some may have purchased

 1   before the announcement.  The combinations are

 2   mind-boggling insofar as how these announcements

 3   would have affected prices.

 4           So we believe that what makes this case

 5   different -- and we are not saying -- he's right,

 6   generally; the general rule, knowledge is an

 7   affirmative defense.  The general rule, loss

 8   causation is an affirmative defense -- or the

 9   absence of loss causation is an affirmative defense.

10   The general rule is that damages are calculated by

11   use of statutory formula.

12           But Comcast has said to trial courts,

13   you've got to get beyond generalities.  There's no

14   longer an entitlement to class certification.  The

15   plaintiff has got to come forward with proof.  Yes,

16   indeed, like a mini-trial with evidence, witnesses,

17   experts, that prove that a class -- a case can be

18   actually tried efficiently as a class case.

19           And here, Your Honor, they have elected

20   not to present such proof, and for that reason the

21   Court should not allow them to proceed under

22   Section 11 case.

23           THE COURT:  Mr. Susman, the arguments you

24   are making, do they go primarily to predominance

25   under 23(a) and (b)?

1            MR. SUSMAN:  I say primarily predominance,

2     but superiority is so closely related to

3     predominance; yes.

4            Mr. Oxford will deal with the adequacy of

5     the individuals.

6            THE COURT:  Thank you.  I would like to

7     take a five-minute break if that's all right.  Five

8     minutes.

9            (Recess taken.)

10            THE COURT:  Mr. Lutz.

11            MR. OXFORD:  I will do this, Your Honor,

12     Terry Oxford.

13            THE COURT:  I'm sorry.  Mr. Oxford.

14            MR. OXFORD:  Your Honor, one place I want

15     to begin is, to the extent I heard the plaintiffs

16     argue that there's not a rigorous test or that we

17     made that up somehow, that language comes directly

18     from the Supreme Court's decision in the Walmart

19     case, quoting:  Certification is proper only if the

20     trial court is satisfied after a rigorous analysis

21     that the prerequisites of Rule 23(a) have been

22     satisfied.  And of course the same thing can be said

23     for 23(b).

24            I heard the Court also ask the plaintiff

25     several times about what's their plan here, and I

49

1    don't believe I ever heard an answer.  A plan of

2    proof is something the plaintiff should demonstrate,

3    not prove the issues, but say, I have a plan.  Here

4    is my plan on how we are going to prove liability.

5    We did not hear -- at least I didn't hear any answer

6    to the Court's question on that ground.

7         We have conceded that plaintiff's counsel

8    is adequate, but that's not enough.  As the Berger

9    Court in the 5th Circuit said:  It is not enough

10   that plaintiff's counsel are competent if the

11   plaintiffs, themselves, almost totally lack

12   familiarity with the facts of the case.

13        Now, we heard plaintiff's counsel talk

14   about testimony in the deposition on the

15   Registration Statement.  He says to hand over a

16   document that was marked as Exhibit 2 -- and I hope

17   the Court has -- we sent over the full deposition,

18   and I hope we attached the exhibits.  If we didn't,

19   we will.  And Exhibit 2 is a Form S-1/A, as

20   plaintiff's counsel just said.

21        Your Honor, on Exhibit 2, on the very

22   first page right under where it says S-1/A, quote:

23   General Form Registration Statement for all

24   companies.

25        So anybody who had looked at the key

1   document that they base their entire case on would

2   know that this is a Registration Statement.  It says

3   it right there.  It says it on the second page, too,

4   Form S-1, Registration Statement under the

5   Securities Act of 1933.

6         What did the plaintiffs say about the

7   Registration Statement?  The first -- I'm quoting

8   from page 21, starting on line 20 in the deposition.

9         "The first question is whether you have

10   ever reviewed this document before.

11         "I have never seen this document.

12         "Do you know whether this document is

13   related to the litigation?

14         "No.

15         "Do you know whether there's any false

16   statements in this document?

17         "I don't know what's in this document.

18         "Can you point me to any false statements

19   in this document?

20         "No."

21         That not only fails to demonstrate an

22   understanding of the case, it fails to demonstrate

23   the key -- any familiarity whatsoever with the key

24   document.  And Your Honor, we've seen or heard that

25   the plaintiff read the complaint.  But I suggest

1    that is impossible to read the complaint and see the

2    dozens of references to this document and not have

3    any curiosity about what is in the document.  If

4    she's never seen the document, I submit she's never

5    seen the complaint.

6          Oh, one other point, Your Honor.  No one,

7    not Ms. Saville or anyone else on behalf of the

8    plaintiffs, has attended -- is in attendance at this

9    hearing today.  And that is a factor to be

10   considered, both the Ogden case, which is Judge --

11   my name is blank now, from Fort Worth -- Terry

12   Means.  In Judge Means' decision, the Ogden case,

13   and in Judge Lynn's decision here, in the Northern

14   District, Dallas Division, in the Umsted case, they

15   both mention that the plaintiff did not attend the

16   hearing.

17          They accuse us of relying on a few

18   isolated out-of-context excerpts from the

19   deposition.  I submit none of those excerpts are

20   taken out of context, and we have supplied the Court

21   with the entire deposition, and you can verify that.

22          The other answer they have on this in the

23   reply brief, they cite -- oh, I skipped one.  They

24   say that this is a Section 11 case and the plaintiff

25   need not have read the prospectus even to have a

```
 1   claim, and that's absolutely true.  But we're not
 2   talking about the merits here, we're talking about
 3   class certification.  It's two entirely different
 4   inquiries.
 5           Yes, when they get to the merits of the
 6   case, they don't have to show that someone read the
 7   Registration Statement.  So they may or may not have
 8   a meritorious claim, but the question is, can this
 9   plaintiff be an adequate representative with no
10   knowledge whatsoever of the key document in the
11   case?  Not having read the complaint, not having
12   looked at the document, not being able to articulate
13   anything wrong that's in the document, that's the
14   adequacy inquiry here.  And to say, well, it's not
15   part of a Section 11 claim has nothing to do with
16   the adequacy inquiry here.
17           Last, they cite a case called Veeco, but
18   they ignore the two Northern District of Texas cases
19   we have cited to the Court, Ogden and Umsted.  Those
20   cases are both right on point.
21           Veeco is -- I think it's the Southern
22   District of New York -- discusses this issue of
23   adequacy in a single paragraph, not citing any
24   evidence.  And in essence, it is one of these
25   presumed adequate cases that are no longer viable
```

53

 1    after the cases of Berger in the 5th Circuit,
 2    Walmart, and Comcast.
 3              Last, Your Honor, as Mr. Susman said, I
 4    want to talk about class definition.  I think the
 5    Court had some questions about that.  And I think
 6    the Court mentioned, which is entirely accurate,
 7    that the class, as defined, quote, goes on forever.
 8    The class, as defined -- and they mention that to
 9    the Court -- is:  All persons or entities who
10    acquire shares of Kosmos common stock pursuant or
11    traceable to the company's false or misleading
12    registration statement and were damaged thereby.
13    There is no time parameters on that whatsoever.
14              We know the beginning date, because we
15    know when the prospectus issued.  We don't know
16    from this the end date.  Under that class
17    definition, someone who buys today is a class
18    member; someone who buys next week is a class
19    member; someone who buys when trial starts is a
20    class member; or when the case is on appeal.
21              Now, I heard some shuffling on the
22    plaintiff's behalf to say, well, maybe the end date
23    is the date the lawsuit was filed.  The lawsuit was
24    first filed on January 10th, 2012.  They have
25    amended their petition, they have amended their

54

1   class motion.  There is no allegation about a

2   temporal limit on the class in any of the paperwork

3   we have seen so far.

4           Last, Your Honor, we point out a number of

5   ways in our opposition brief why the class is

6   overbroad.  If they are ever to get around all of

7   that, based on the current class definition, is to

8   focus on these last four words, "and were damaged

9   thereby."  That, Your Honor, is an improper class

10  definition.

11          To figure out who is in a class, that is

12  which of all these people were damaged, the case has

13  got to be tried.  We will not know until the case is

14  tried who is in this class.  Meanwhile, if the Court

15  were to certify this class, these members would have

16  to be notified.  Who do we notify?  There is no way

17  we can figure that out until we finish with trial.

18          This leads back to Mr. Susman's point,

19  which is, they haven't even proposed a way at this

20  stage that we can identify who has been damaged.

21  And as a result, they haven't identified who is in

22  the class.

23          So for those reasons, Your Honor, I urge

24  the Court that the motion for class certification

25  should be denied.

---

```
 1              THE COURT:  Thank you, Mr. Oxford.

 2              Mr. Lutz, for the underwriters.

 3              MR. LUTZ:  Thank you, Your Honor.  Brian

 4    Lutz with Gibson Dunn.  I will be very brief, I

 5    think, and I don't want to tread on any of the

 6    arguments that have already been made.  I will just

 7    make a couple of points specifically about

 8    Section 12 and then just make a couple of comments

 9    on the Comcast issue, trying to respond to some of

10    the questions you had raised.

11              I guess I just wanted to start by

12    responding to something you said at the beginning of

13    the hearing where you commented on the analysis for

14    class certification has evolved, I think is the word

15    that you used.

16              I thought it was a very apt description of

17    the analysis that must be done.  As we all know,

18    there are some very recent Supreme Court cases on

19    the issue of class certification that have really

20    changed the landscape for assessing whether

21    plaintiff has complied with his burden, has met its

22    burden of showing that it actually can prove that

23    the Rule 23 elements have been satisfied.

24              You look at the Walmart case, which all of

25    us have touched on.  You think -- and you look at
```

1    what plaintiffs have shown here in their two briefs,

2    in their supporting papers.  It seems as if they

3    have been briefing class certification before this

4    evolution, before the Walmart case, before Comcast

5    and other cases.

6              Comcast of course made clear that

7    plaintiff must affirmatively demonstrate and prove,

8    prove, not allege, but prove its conformance and its

9    compliance with each of the Rule 23 elements, and it

10   must do so by a preponderance of the evidence.

11             It's plaintiff's burden to come forward

12   with evidence at the class certification stage that

13   has complied with each of the elements of, here,

14   23(a) and 23(b)(3), plaintiff's burden,

15   preponderance of the evidence.

16             So your question to Mr. Susman, I believe,

17   and I think to Mr. Alvarez, as well, as to what you

18   could consider, can I consider the Hubbard

19   affidavit?  Absolutely you can consider it, and you

20   must consider it respectfully all of the evidence

21   that's before you on class certification, given that

22   it's a preponderance of the evidence standard that's

23   at issue here.  Weighing the evidence, have

24   plaintiffs met their burden of doing so, you have to

25   look at all the evidence before you.

57

1          So notwithstanding that burden that's

2    unquestionably on the plaintiffs, what have they

3    submitted in their class certification briefing?  No

4    documents; no e-mails, that sort of thing; no

5    deposition testimony whatsoever; no admissions from

6    an answer or otherwise; no expert testimony, of

7    course, and no expert report.

8          What is the evidence they put in?  They

9    put in a two-page affidavit from the lead plaintiff

10   here that basically says that she's fit to -- that

11   the lead plaintiff is fit to -- she's basically up

12   to the task.  Respectfully, I don't think that is

13   consistent with Rule 23, and I don't think

14   plaintiffs have shown that they have complied with

15   their burden of showing by a preponderance of the

16   evidence that they have satisfied each of the Rule

17   23 elements.

18         Let me just say two words on Comcast, and

19   I realize -- I'm not going to re-tread Mr. Susman's

20   very capable argument.  I think you have to look

21   under Comcast and generally under damages for two

22   things:  Whether the plaintiffs -- again,

23   plaintiff's burden, whether they have shown that a

24   methodology that can -- that damages can be

25   calculated on a class-wide basis, that's one; and

58

1    two, that that methodology is linked to the

2    plaintiff's theory of the case.  Those are the two

3    things they have to show under Comcast.

4            So What's the plaintiff's theory of the

5    case, right?  Well, Mr. Alvarez says, there are

6    misstatements, we have to show there are

7    misstatements.  Well, it's not just that they have

8    to show misstatements.  The theory of the case, if

9    you just look at the very short complaint, is that

10   the offering materials predicted a certain level of

11   oil that would be produced and that it didn't

12   disclose certain information that would -- that

13   undermined that statement.  But critically -- and

14   that plaintiffs were damages thereby.

15           How were they damaged?  Under the theory

16   of the case, as they say, they were damaged when the

17   nonpublic production problems at Jubilee were --

18   that were omitted from the Registration Statement,

19   they were revealed causing delays, expenses, revenue

20   losses, and stock of clients.  That is the theory of

21   the case.

22           Alleged misstatements in the offering

23   materials, that's the allegation, but the revelation

24   of the information that was alleged and not

25   disclosed caused damages.  That's the theory of the

 1   case.  It's the plaintiff's burden, again, to show a
 2   methodology that would allow you to conclude that
 3   damages can be calculated across the class and tied
 4   to the theory of liability.
 5           I'm not going to again re-tread on what
 6   the expert report shows.  I think it's quite clear
 7   that the punchline for the report is the plaintiffs
 8   cannot prove damages here because there is no
 9   negative and statistically significant loss or
10   decline resulting from the negative information that
11   was disclosed.  That's public information.
12           I mean, if you look at the report, there's
13   information disclosed in June and July, relatively
14   shortly after the IPO, that the production levels is
15   not going to be hit by the time that is set forth in
16   the offering materials; direct information about the
17   allegations in the case that, you know, Professor
18   Hubbard looked at and said, there is no loss
19   associated with this, there are no damages
20   associated with this information.
21           So respectfully, the only evidence before
22   you on the core damages question, the core theory of
23   damages here, is that there is no damages.  There is
24   no evidence from the plaintiffs, as is their burden,
25   to show you that they can calculate damages, that

60

```
 1   there's a methodology for calculating class-wide
 2   damages, point one under Comcast, that is, point
 3   two, tied to the theory of the case.
 4           Let me just touch on Section 12(a), which
 5   I will again try to be very brief.  Two points:
 6   Plaintiffs said -- Mr. Alvarez said several times
 7   during his argument, knowledge is an affirmative
 8   defense.
 9           Now, we don't contest that generally under
10   Section 11, but there are two claims here at issue,
11   Section 11 and Section 12(a).  There is no question
12   that that is not correct for the purposes of
13   Section 12(a)(2).  There is no question under the
14   case law that we provided to you that it is
15   plaintiff's burden under Section 12(a)(2) to show a
16   lack of knowledge of the alleged misstatements.
17   That's what they have to prove.  It's their burden
18   to show that.
19           There's no question that's the law.
20   There's no question that the plaintiffs have come
21   forward with zero evidence on that issue at this
22   stage, which, again, it is their burden to show that
23   common issues predominate on this; they have to show
24   you through evidence that they can prove this
25   through common evidence.  There is no evidence in
```

61

 1    the record.

 2           They made no effort to refute the very

 3    recent case law that makes clear that it's both

 4    their burden to prove lack of knowledge under

 5    12(a)(2) and that class cannot be certified when the

 6    plaintiffs have failed to do so.  You can look at

 7    the Lehman decision by Judge Kaplan in the Southern

 8    District; the Rali Harborview, a decision by Judge

 9    Baer, which is affirmed in the Second Circuit.

10    That's our exact point, and the plaintiffs don't

11    respond to that.

12           Instead what they say is, they say, well,

13    we shouldn't have to bear this evidentiary burden at

14    the class cert stage, because imposing this burden

15    would make it very difficult for a 12(a)(2) class to

16    be certified.  Again, that's just not true.

17           Plaintiffs have to show that the truth was

18    not available to putative class members.  As

19    Mr. Susman went through in his argument and as shown

20    in Professor Hubbard's report, there was a lot of

21    information available to class members during the

22    putative class period that would make different

23    investors in Kosmos stock aware of information

24    relating to the misstatements.

25           It's plaintiff's burden to show that that

```
 1   information that we have put out there, that we have
 2   put in Professor Hubbard's report, would not provide
 3   the relevant knowledge to investigate.  It's their
 4   burden to do so; they haven't done it.
 5          Just because it's hard to do something,
 6   just because it's hard to show something on class
 7   certification or through evidence doesn't mean they
 8   are excused from doing so.
 9          We respectfully submit that under Lehman
10   and under Rali Harborview, the class cannot be
11   certified, a 12(b)(2) class cannot be certified.
12   It's their burden, and they haven't come forward
13   with the evidence.
14          And I will just make one very quick last
15   point.  Another element of 12(a)(2) is that the
16   plaintiffs must purchase the shares, Kosmos shares,
17   directly from what's called a statutory seller.
18   There is nobody who is actually selling the shares
19   pursuant to the prospectus that's at issue.
20          Again, there is no evidence in the record,
21   whatsoever, that this is a common question.  And,
22   indeed, when you think about it, just, in
23   particular, this is an individualized inquiry as to
24   what did each plaintiff, did each member of the
25   putative class, which appears to be a moving target
```

63

```
 1    as of today, but did each member of the putative
 2    class in fact purchase directly from what's called a
 3    statutory seller.
 4            Again, we respectfully submit zero
 5    evidence on that and cannot certify a
 6    Section 12(a)(2) class on that basis.
 7            THE COURT:  Mr. Alvarez, I will give you a
 8    little bit of time.  You all have covered so much in
 9    your briefing, but I know you want to get up here
10    and say a few things.  So go ahead.
11            MR. ALVAREZ:  I will take as much time as
12    you give me, Your Honor.
13            Let's talk just briefly about the 12(a)(2)
14    claims of the underwriters.  So Mr. Lutz is saying,
15    well, we have -- there's no doubt, yes, that
16    knowledge is an element that we have to prove, but
17    it's an element.  It's something that, yes, we have
18    to prove, and we are going to prove it up summary
19    judgment or --
20            THE COURT:  Under the 12 claims.
21            MR. ALVAREZ:  Under the 12(a)(2)), that's
22    right, but we are going to prove it up.  It's the
23    same thing.  How are we going to prove it up?  I
24    want to just make it clear, they keep coming up here
25    and saying, there's no documents, there's no
```

```
 1   deposition testimony, there's no this or that.  We

 2   just started discovery.  There has been one

 3   deposition.  They have produced, I don't know how

 4   many documents.  You can tell the Court how many

 5   documents you produced.  It's at the early stage.

 6   We're not having any of that.  But all I can tell

 7   you is we are going to prove up our theory of

 8   liability, our case, in the common fashion, using

 9   the same things, because it only applies to those

10   misrepresentations.

11            With respect to the 12(a)(2) claim, it

12   doesn't change at all.  At trial we're going to

13   prove up that the defendants concealed this

14   information from those people who bought from the

15   underwriters at the IPO.

16            If we cannot prove that up, if we cannot,

17   Your Honor can kick the case at summary judgment,

18   the jury can kick case at trial, but it's common.

19            You talked about conflating issues.  They

20   all got up here -- they all conflate the issues.

21   They are conflating the class certification

22   requirements with summary judgment, with trial.

23   That's their best defense in this case.

24            They talk about, oh, we don't -- there's

25   no evidence about damages being class-wide.  This --
```

```
 1   the statute is the evidence about how to calculate
 2   the damages.  It says there, Congress wrote this --
 3   this is how you calculate the damages.  It's for
 4   everybody.  This is the evidence.
 5            Mr. Oxford gets up here and says, oh, you
 6   know, Mr. Alvarez is wrong about that.
 7            The rigorous requirements of class
 8   certification.  Well, let's just read the whole
 9   thing.  Okay?  Amgen, Supreme Court.  I'm going to
10   read verbatim without the cites in it:  Although we
11   have cautioned that a court's class certification
12   analysis must be rigorous and may entail some
13   overlap with the merits of the plaintiff's
14   underlying claim -- citing Walmart -- Rule 23 grants
15   courts no license to engage in free-ranging merits
16   inquiries at the class certification stage.
17            That's what they want you to do here.  You
18   can't do that.  That's what the law says.
19            THE COURT:  So how do you answer the
20   question about the preponderance of the evidence?
21            MR. ALVAREZ:  It's -- Your Honor,
22   that's -- that's what I'm -- I don't want to --
23            THE COURT:  You keep saying it's in the
24   statute, but there's got -- is that your answer?
25   What is your answer to --
```

66

```
 1              MR. ALVAREZ:  With respect to damages?
 2   Yes.
 3              THE COURT:  With regard to the
 4   preponderance of the evidence on the factors that
 5   the Court needs to consider in deciding class cert.
 6              MR. ALVAREZ:  Right.  We've gone through
 7   that.  But with respect --
 8              THE COURT:  I didn't know if you had a
 9   different -- anything else --
10              MR. ALVAREZ:  No.  The only issues here
11   for you to decide -- because really it's the main
12   issues, and you have heard them over and over
13   again -- are the accuracy of the plan to represent
14   the absent class members and predominance issues.
15              And there's only two subcategories under
16   that:  Knowledge, that they're saying that we have
17   -- that Section 11 -- we have to prove up knowledge.
18   But that's -- you can read all of the cases we have
19   cited.
20              The IPO case that the defendants cite,
21   that case says that the plaintiffs have the burden
22   to prove knowledge with respect to Section 11.  And
23   that's -- look at all of the other cases.  That's
24   the only case I've ever seen where it's an
25   affirmative element.  It is a defense.  Like they
```

67

```
 1    said, it is a defense.  So if that's what they are
 2    relying on -- look at that case.  Read it carefully.
 3    But that has -- it's very particular, it's very
 4    specific.  There was evidence about knowledge.
 5    Okay?
 6              So -- and I don't want to get off track.
 7    But with respect for Mr. Oxford, he's talking about
 8    the adequacy of the client.  So the document, this
 9    Registration -- if I may borrow it, this
10    Registration Statement.  Yeah, so if that's what he
11    wants you to do, he wants you to rely on this, hey,
12    if the plan representative, Ms. Saville -- you know,
13    it says -- it says what it says.  But look, a
14    200-page document.  What they do is they show it to
15    her.  They conceded.  She doesn't have to have read
16    this.  She doesn't have to have relied on it.  But,
17    oh, point to me where the misrepresentations are in
18    this 200-page document.  If that's all they got, I
19    will take that.
20              And then -- but here's the telling thing.
21    And then he says, oh, well, you know what?  I find
22    it hard to believe that she said that she has read
23    the complaint and has provided input, but she can't
24    point out anything in this operative document.
25              So he says, I submit never -- she's never
```

1    seen the complaint, then.  What are we going to do,

2    believe Mr. Oxford?  Are we going to put him under

3    oath?  Who is under oath?  The only person under

4    oath was the lead plaintiff.  She testified she read

5    the complaint and that she had input in it.  That's

6    the evidence.  It's not Mr. Oxford's, oh, Judge,

7    take Mr. Oxford's word for it.

8            THE COURT:  Let's do this.  Let's not talk

9    any more about what the defense said.  I want you to

10   say, in bullet points, what it is that you have to

11   establish the elements that are at issue under Rule

12   23(a) and (b), why they are there in your view,

13   because it is your burden.

14           MR. ALVAREZ:  Correct.

15           THE COURT:  What you got?

16           MR. ALVAREZ:  So what we got -- so

17   numerosity, commonality; stipulated.  Okay?

18   Adequacy; it's laid out.  I have already said she

19   knows what it means to be a lead plaintiff.  It's

20   unrebutted in her declaration.  She gets these

21   reports, she provides input, she read the complaint,

22   provided input, talked to us about whether she

23   wanted to amend the complaint with respect to

24   Blackstone and Warburg Pincus.  She knows how much

25   the plaintiff has been damaged.  She's supervised

69

```
 1    discovery.  She has -- she receives all the papers
 2    that are filed.  I can go on and on.
 3              Look at the cases that they cite.  Look at
 4    the Ogden case that they cited.  That's a laundry
 5    list of the defense, that the plaintiff doesn't know
 6    anything.
 7              THE COURT:  Let's get to the other
 8    elements, predominance and superiority, what have
 9    you shown me?
10              MR. ALVAREZ:  Okay.  Predominance.
11    That -- in this case, it's laid out in our papers.
12    But to rebut what they have said, knowledge is not
13    an element for Section 11.  Okay?  So forget about
14    that.  It is an affirmative defense.  It's for them
15    to prove at a different stage; not here, not now.
16    Okay?
17              Then with respect to -- okay.  It's going
18    to take a little bit of time, but with respect to
19    like Mr. Susman and Mr. Hubbard, so they are
20    saying -- and the one thing that has come up,
21    Mr. Susman wants to have a mini-trial.  You can't
22    have a mini-trial on class certification.
23              THE COURT:  I am still looking at your
24    bullet points here, not Mr. Susman.
25              MR. ALVAREZ:  Okay.  My bullet points are,
```

1    we don't, for a Section 11 case, have to prove up

2    any knowledge.  Okay?  It's a burden for them.

3            The way that they are using Mr. Hubbard in

4    this -- they are just trying to make it more

5    complicated than what it is, Your Honor.  Because,

6    as is quite clear and as we have discussed verbatim,

7    the Supreme Court, the 5th Circuit and other courts,

8    have held that loss causation are common questions

9    that may not be adjudicated before a class is

10   certified, Amgen, Halliburton, and Dynegy.  The

11   defendants have not cited, and the Court has not

12   found any case that has relied upon a negative

13   causation defense to limit a putative class at the

14   class certification stage.  Constar.  Okay?

15           If you look at this -- and they're saying,

16   well, you know, plaintiffs didn't -- they had

17   Mr. Hubbard's report.  They didn't respond to it.

18   But his assignment, examine relevant issues related

19   to loss causation and damages subject to plaintiff's

20   claims.  In order to calculate these damages, I have

21   done an event study.  What he's doing is an event

22   study.  He's looking at those 14 disclosures or what

23   they were talking about.

24           But, see, this is a loss causation

25   argument, not for class cert.  The Supreme Court

```
 1  says, you can't do this.  That's why they are

 2  conflating the two things.  Yeah, they have a good

 3  point, maybe, at summary judgment.  And if Your

 4  Honor finds that we didn't prove -- or they prove up

 5  their negative loss causation and we can't rebut

 6  that, or he says, oh -- or Your Honor wants -- or if

 7  the proof later on comes out that we can't prove

 8  that up and you want to decertify the class on their

 9  motion, that's fine.

10          They are doing what the Supreme Court says

11  not to do.  There is no evidence that any of the

12  class members read any of these 14 announcements.

13  It's fair game, like I said, for a motion for

14  summary judgment or to decertify the class, but not

15  here.

16          The Supreme Court said we didn't -- we

17  didn't bring an expert.  It's not a 10(b)(5) case.

18  We don't need to show loss causation.  And that's

19  all that is, and that's why they are conflating

20  those two issues.

21          THE COURT:  Go ahead and just wrap it up,

22  if you will.

23          MR. ALVAREZ:  I mean, other than -- I

24  would just submit that -- and I know Your Honor is

25  going to do this.  But when you look at the cases
```

72

```
 1   that are cited by both parties, there's a big
 2   distinction between the Section 11 cases, because
 3   there's a lot of things that we don't have to prove
 4   up.  And the 10(b)(5) cases, if this was a 10(b)(5)
 5   case, then, yes, maybe some of the issues they are
 6   talking about would come into play, but they don't.
 7            And the statute speaks of the damages on a
 8   class-wide basis, and it's tied to one -- one theory
 9   of liability.  They made these misstatements, and
10   people, you know, bought the stock based on those
11   misstatements.
12            And with respect to -- the last thing is
13   that if you -- we would submit -- I mean, we don't
14   have to make an amendment of what the class is.
15   We're asking, now, in your order, to certify a
16   class, same language, but starting on the day of the
17   IPO, which is the same date, ending, like they said,
18   on the date that their expert said of when the first
19   complaint was filed, January 10th, 2012.  So your
20   order could just say that, and that's it.
21            Thank you, Your Honor.
22            THE COURT:  Thank you all very much.  We
23   will adjourn.  I will get this read inside and out,
24   all the new cases, all the other cases, and we will
25   get it figured out hopefully as soon as possible.
```

1               Thanks for the argument.  Nice to see you

2       all.  Court will be in recess.

3               (Court in recess at 12 noon.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER – 214.753.2747**

74

1                    C E R T I F I C A T E

2              I, Shawnie Archuleta, CCR/CRR, certify

3     that the foregoing is a transcript from the record

4     of the proceedings in the foregoing entitled matter.

5              I further certify that the transcript fees

6     format comply with those prescribed by the Court and

7     the Judicial Conference of the United States.

8              This 20th day of December 2013.

9

10

11                         s/Shawnie Archuleta
                           Shawnie Archuleta CCR No. 7533
12                         Official Court Reporter
                           The Northern District of Texas
13                         Dallas Division

14

15

16    My CSR license expires:  December 31, 2013

17    Business address:  1100 Commerce Street
                         Dallas, TX  75242
18    Telephone Number:  214.753.2747

19

20

21

22

23

24

25

---

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER — 214.753.2747**