TAB 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| *In re Kosmos Energy Ltd. Securities Litigation* | § | Consolidated Civil Action No. 3:12-cv-373-B |
| | § | |
| | § | **CLASS ACTION** |

## DECLARATION OF ARTHUR R. MILLER IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

I, ARTHUR R. MILLER, declare, pursuant to 28 U.S.C §1746, as follows:

### SUMMARY OPINION

1.      It is my opinion that, in the context of the proposed settlement of this case, the Rule 23 requirements for certification of a class of Kosmos shareholders have been satisfied.

### QUALIFICATIONS

2.      I am currently a University Professor at New York University School of Law and author of dozens of books and treatises, including FEDERAL PRACTICE & PROCEDURE with the late Charles A. Wright (among others).  Previously, I was the Bruce Bromley Professor of Law at Harvard Law School, where I earned my law degree and taught for 36 years.  I graduated from Harvard Law School *magna cum laude* in 1958 and practiced law in New York City until 1962. Since then, I have taught full time, first at the University of Minnesota, then at the University of Michigan, Harvard Law School, and now New York University.  I have taught the basic first-year course in civil procedure for more than 50 years and advanced courses and seminars in complex litigation and copyright in almost all of those years.

3.      I am the author or co-author of almost 50 books and treatises, including FEDERAL PRACTICE AND PROCEDURE, the leading multi-volume treatise on practice in the federal courts, and NEW YORK CIVIL PRACTICE, a leading multi-volume treatise on New York practice.  I am

- 1 -

10

also the author or co-author of at least 30 law review articles and other publications on a range of issues, including United States Constitutional law, federal court litigation, civil procedure, transnational procedure, intellectual property, privacy, and technology issues.

4.      I have served as a member of the Special Advisory Group to the Chief Justice of the United States on Federal Civil Litigation (Chief Justice Burger), as the reporter and then as a member of the Advisory Committee on Civil Rules of the Judicial Conference of the United States (by appointment of Chief Justices Burger and Rehnquist), as a reporter of the Advisory Group on Civil Justice of the United States District Court for the District of Massachusetts, as special consultant to the original Manual for Complex Litigation, as a member of the American Bar Association Special Committee on Complex and Multidistrict Litigation, and as a member of numerous other professional committees and organizations. I also served as a reporter for the American Law Institute's Complex Litigation Project, which led to the adoption and publication by the Institute of *Complex Litigation: Statutory Recommendations and Analysis with Reporter's Study* (1994). More recently, I was one of the advisors to the American Law Institute's Aggregate Litigation Project.

5.      Throughout my years in academia, I have maintained my contacts with the bench and the practicing bar in order to understand the actual operation and function of the civil justice system. Thus, I have participated in countless judicial conferences in the various federal circuits and in educational programs conducted by the Federal Judicial Center and by state judicial organizations and national and state bar associations as a lecturer or a discussion leader on a wide variety of subjects, including many on class actions and complex litigation. In addition, I have appeared as a lawyer or as an expert in numerous class actions and complex cases throughout the country, on behalf of both plaintiffs and defendants, with regard to issues of the

propriety of class certification, the fairness, reasonableness and adequacy of settlements, attorneys' fees, subject matter and personal jurisdiction, discovery, choice of law, preemption, jury trial, and appealability. Those cases have involved a range of substantive contexts, such as mass disasters, product defects, toxic substances, antitrust, securities fraud, copyrights and patents, consumer deception, right of privacy, consumer financing, insurance matters, RICO, mail fraud, and wire fraud. This experience has included oral argument before the United States Supreme Court, all of the United States Courts of Appeal, numerous United States District Courts, and a number of state trial and appellate courts.

6.      My resumé, including lists of all of my significant publications, is attached hereto as Exhibit 1. I am being compensated at my usual hourly rate for my professional services in this litigation.

7.      In rendering the opinions set forth in this Declaration, I have relied on my training, education, and experience. In addition, I have questioned Lead Counsel about various aspects of the case and their efforts to seek civil relief from the defendants, including Kosmos Energy Ltd. ("Kosmos" or the "Company") as well as the settlement ultimately reached. I have been provided with copies of the Order Appointing Lead Plaintiff and Approving Lead Plaintiff's Selection of Counsel dated November 1, 2012; Consolidated Complaint and Certification of Named Plaintiff; the Court's June 24, 2013 Memorandum Opinion and Order granting in part and denying in part defendants' motions to dismiss; the defendants' Answers to the Consolidated Complaint; the Memorandum in Support of Lead Plaintiff's Motion for Class Certification and Declaration of Suzanne Saville filed in support thereof; Defendants' Opposition to the Motion for Class Certification and Declaration of Glenn Hubbard dated November 18, 2013; Lead Plaintiff's Reply in Further Support of the Motion for Class Certification; the

Transcript of Suzanne Saville's Deposition on November 7, 2013; the Nursing Homes and Related Industries Pension Plan's monitoring agreement in effect during the litigation; the Court's March 19, 2014 Memorandum Opinion and Order regarding class certification; Lead Plaintiff's Motion for Reconsideration of the Order regarding class certification filed on April 1, 2014; the Stipulation of Settlement; and the Declarations of James Flynn, Suzanne Saville and George M. Mounger.

## THE RULE 23 REQUIREMENTS HAVE BEEN SATISFIED

8.      Rule 23 permits certification of a class for purposes of settlement only.[1]  To certify a settlement class, all of the Rule 23(a) and one of the Rule 23(b) requirements must be satisfied.[2]

9.      Because the plaintiff generally bears the burden of showing all the prerequisites to Rule 23(a) and (b) have been satisfied, the "safest course for the party initiating the class action, therefore, is to plead the existence of all the factors set forth in Rule 23(a), allege the existence of a class and the representative's membership in it, and demonstrate that the action falls within one or more of the categories enumerated in Rule 23(b)."[3]   Lead Plaintiff followed this recommendation in this case and supplemented the facts alleged in its Complaint with additional facts in support of its Class Certification Motion and in support of the proposed settlement.[4]

---

[1]   *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997).

[2]   *Id.*

[3]   7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE: CIVIL §1759 (3d ed. 2005).

[4]   Complaint ¶¶47-52; Class Certification Motion and Exhibits; Class Certification Reply and Exhibits; Declarations of James Flynn, Suzanne Saville and George M. Mounger.

**Rule 23(a): Numerosity, Commonality, Typicality and Adequacy**

10.     My review of the record in this case and general familiarity with the applicable case law indicates that numerosity, commonality, typicality and adequacy have been satisfied.[5]

(a)     Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."[6]  According to the Consolidated Complaint, on May 10, 2011, the SEC declared the Registration Statement effective and defendants sold approximately 33 million shares of Kosmos Energy, Ltd. ("Kosmos" or the "Company") common stock to the class at $18 per share.[7]  The Complaint further asserts that the proposed class consists of hundreds of members.[8]  The Fifth Circuit has recognized the impracticability of joining classes comprised of at least one hundred members.[9]  Numerosity is satisfied.

(b)     Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Consolidated Complaint identifies three common questions shared by all class members: (1) whether the Registration Statement was false or misleading; (2) whether the Securities Act of 1933 was violated by defendants' acts as alleged in the Complaint; and (3) to what extent the members of the class have sustained damages and the proper measure of those damages.[10]  The Class Certification Motion identifies at least seven common questions.[11]  The only claims alleged in the case are violations of the Securities Act of

---

[5]     Defendants conceded that numerosity, commonality and typicality were satisfied.  *See* Opposition to Class Certification Motion.

[6]     Fed. R. Civ. P. 23(a)(1).

[7]     Complaint ¶1, ¶33; Answer to Consolidated Amended Complaint filed by Kosmos Defendants ¶1, ¶33; Class Certification Motion at 6-7.

[8]     Complaint ¶48.

[9]     *See* 7A Federal Practice & Procedure: Civil §1762 at 198 n.42 (citing *Sagers v. Yellow Freight System, Inc.*, 529 F.2d 721, 734 (5th Cir. 1976)).

[10]     Complaint ¶51(a)-(c).

[11]     Class Certification Motion at 8-9.

- 5 -

14

1933, which, by their nature, share a common contention – the issuance of an allegedly materially false or misleading Registration Statement and Prospectus – which is certainly capable of classwide resolution.[12]   The Registration Statement and Prospectus either did or did not contain materially false or misleading statements.[13]   The class either did or did not suffer statutory damages.[14]   The answers to these common questions could be proved with common facts and evidence and would be resolved "in one stroke."[15]   Commonality is satisfied.

        (c)    Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."[16]   The Consolidated Complaint sets forth the Lead Plaintiff's claims and shows they are identical to the class it seeks to represent.[17] Defendants' Answers do not identify any defenses unique to Lead Plaintiff that are not otherwise shared by the class.[18]   Typicality is satisfied.[19]

        (d)    Rule 23(a)(4) requires that a representative party "will fairly and adequately protect the interests of the class."[20]   What constitutes adequate representation is a

---

[12]   *See* 15 U.S.C.§77k (setting forth the elements and requirements of a §11 claim); *Wal-Mart Stores Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011).

[13]   *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184 (2013) (materiality is always a common question).

[14]   15 U.S.C. §77k(e).

[15]   *Wal-Mart*, 131 S. Ct. at 2551; *see also* 7A FEDERAL PRACTICE & PROCEDURE: CIVIL §1763 at 234 n.21 (citing securities cases satisfying commonality requirement) and page 59 n.21 (2013 supplement) (same).

[16]   Fed. R. Civ. P. 23(a)(3).

[17]   Complaint ¶¶47-71.

[18]   Kosmos Defendants' Answer at 11-14; Underwriter Defendants' Answer at 12-18.

[19]   7A FEDERAL PRACTICE & PROCEDURE: CIVIL §1764 at 282 n.20 (citing securities cases satisfying typicality requirement) and page 83 n. 20 (2013 supplement) (same).

[20]   Fed. R. Civ. P. 23(a)(4).

question of fact that depends on the circumstances of each case, and the plaintiff has the burden of showing that the absent class members will be adequately protected.[21]

(i)     The "'long-established standard' for the adequacy determination on which [the Fifth Circuit] principally relied in *Berger I* requires 'an inquiry into [1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees[.]'"[22]   In addition, the class representative should "possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation."[23]

(ii)     As discussed above, the Lead Plaintiff in this case shared common interests with the unnamed members of the class.  *See supra* ¶10(b).  In addition, the Lead Plaintiff appears to have vigorously prosecuted the class claims by successfully defeating defendants' motion to dismiss (which is not easily done in this Circuit in a securities case) and achieving a $10.2 million recovery.

(iii)     Given that this is a securities case, it is relevant that Congress enacted the Private Securities Litigation Reform Act of 1995 with the belief "that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts."[24]   The Lead Plaintiff in this case is a pension fund, to which a recent Cornerstone Research report on Securities Class Action Settlements generally ascribes higher settlement

---

[21]   *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001), *rehearing and rehearing en banc denied* 279 F.3d 313 (5th Cir. 2002).

[22]   *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-30 (5th Cir. 2005) (internal quotations omitted) (quoting *Berger*, 257 F.3d 457); *Berger v. Compaq Computer Corp.*, 279 F.3d 313, 313-14 (5th Cir. 2002); *see also Gonzales*, 474 F.2d at 72 (decision should be based on two criteria: "(1) the representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel.").

[23]   *Berger*, 257 F.3d at 482-83; *Feder*, 429 F.3d at 129-30.

[24]   S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690.

amounts.[25]  In addition, the Cornerstone Research report indicates that the settlement reached in this case, if approved, will exceed the median settlements in cases asserting §11 and §12(a)(2) claims, since the proposed settlement represents an amount equal to approximately 300% of the median Securities Act settlement and an amount equal to approximately 200% of the median for securities class action settlements in the Fifth Circuit.[26]

> (iv)     There is evidence in the record of the Lead Plaintiff's willingness and ability to take an active role in and control the litigation and to protect the interests of absentee class members.  Not only has the Lead Plaintiff attested that it has continued to direct counsel throughout the mediation and settlement process, but the Lead Plaintiff also confirmed at earlier stages of the litigation that it was "willing to serve as a representative party on behalf of the class, including providing testimony" at deposition or trial.[27]  And, it did.  The evidence in the record further indicates that the Pension Plan also "preserved materials for potential discovery" and "received and reviewed periodic updates and other correspondence from plaintiffs' counsel" and "reviewed pleadings and other documents in the case."[28]  It "consulted with its lawyers regarding significant developments and strategic decisions in this litigation."[29]  For example, after the Court issued its Memorandum Opinion and Order granting in part and denying in part defendants' motions to dismiss the Consolidated Complaint, the Pension "Plan consulted with its lawyers to consider amending the Consolidated Complaint."[30]  "After

---

[25]   Cornerstone Research, Securities Class Action Settlements, 2013 Review and Analysis at 15, available at http://www.cornerstone.com/getattachment/e1800abc-dc50-4df3-b7a9-cf8ee3fea116          /Securities-Class-Action-Settlements%E2%80%942013-Review-an.aspx.

[26]   *Id.* at 12 and 22.

[27]   Certification of Named Plaintiff.

[28]   Declaration of Suzanne Saville in Support of Lead Plaintiff's Motion for Class Certification, ¶5.

[29]   *Id.*

[30]   *Id.*

considering the risks, costs and benefits of amendment, the Plan elected to forego amendment and press forward with the remaining claims."[31] "This decision was made by the Plan for the purpose of maximizing the Class's recovery in an efficient manner."[32] Lead Plaintiff also participated in the parties' mediation with Judge Layn R. Phillips (Ret.). These actions are all consistent with findings of adequacy.[33]

      (v)      The Deposition of Ms. Saville further illustrates adequacy.[34] In particular Ms. Saville: was knowledgeable about the Pension Plan's counsel and its role as lead plaintiff; diligently prepared for the deposition by reviewing numerous documents and meeting with both the Pension Plan's general counsel as well as Lead Counsel; knew specifically how much money the Pension Plan lost in connection with defendants' alleged wrongdoing; knew one of the underwriter's name and role in the alleged wrongdoing; confirmed that the Pension Plan receives regular updates on the case, reviews documents and recommends changes, and

---

[31]   *Id.*

[32]   *Id.*

[33]   *In re Deepwater* Horizon, 739 F.3d 790, 813 (5th Cir. 2014) (approving district court's determination that named plaintiffs were "clearly adequate" based upon the "declarations by each of the named plaintiffs" whereby each attested to having "participated in the settlement negotiations" and taken "an active role in the prosecution of this class action"); *Berger*, 257 F.3d at 482-83; *Berger*, 279 F.3d 313-14; *Feder*, 429 F.3d at 129-30; *Buettgen v. Harless*, 2011 U.S. Dist. LEXIS 53888, at *14 (N.D. Tex. May 19, 2011) (finding adequacy satisfied when plaintiff "moved this Court to appoint it lead plaintiff, has designated a representative for depositions, and is producing documents pursuant to discovery requests"); *In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 734 (S.D. Tex. 2006) (pointing to plaintiff's certifications and statements therein as indicia of their adequacy); *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 278 (S.D. Tex. 2004) (identifying certification and declaration as indicia of adequacy and rejecting argument that plaintiff "failed to put forward any evidence demonstrating its direction, control, knowledge, or understanding of this lawsuit"); *see also* 7A FEDERAL PRACTICE & PROCEDURE: CIVIL §1766 at 354 n.10 (citing cases) and page 96 n.10 (2013 supplement) (citing cases).

[34]   I am aware that the Order reached a different conclusion. This result appears to have been based, in part, on the perception that plaintiff did not carry its burden to adduce evidence in support of adequacy because plaintiff did not submit the deposition transcript in support of its motion. Order at 26, 28. It appears defendants did not take the deposition until a month after the motion was filed. Thus, it did not exist to support the motion. It was also procedurally proper for plaintiff to rely on the deposition in their reply to refute defendants' adequacy challenges in their opposition.

directs counsel; and actively participated in discovery and production of documents.[35]  Despite Ms. Saville's inability to recall the names of two individual defendants, she did not "display[] a lack of credibility regarding the allegations being made or a lack of knowledge or understanding concerning what the suit is about."[36]

(vi)     The Pension Plan had the largest financial interest amongst numerous other lead plaintiff candidates at the lead plaintiff stage.[37]  That the Lead Plaintiff possessed a sizeable financial interest in the litigation – approximately $280,000 in losses, according to Ms. Saville's testimony – also tends to ensure vigorous advocacy.[38]

(vii)     There is no indicia of antagonism between the Lead Plaintiff and other class members and Lead Plaintiff moved for class certification in a timely fashion.  These are additional indicia of adequacy.[39]

(viii)     There is also no indicia of a "fundamental conflict" that goes to the very subject matter of the litigation.[40]  Although the Court expressed concern that the nature of the Lead Plaintiff's preexisting relationship with Lead Counsel might create a conflict, I have reviewed a copy of the Pension Plan's monitoring agreement – which was not available to the Court – and have confirmed that it expressly provides that the Pension Plan is not obligated to

---

[35]  I am informed that §11 does not require any investor or class member to have ever seen or read the Registration Statement to prevail on its claim.  Assuming this statement of the law is accurate (and I have no reason to believe it is not), the fact that the Lead Plaintiff also did not see or read the Registration Statement does not detract from its typicality and adequacy.  Quite the opposite: if the Lead Plaintiff had seen or read the Registration Statement, defendants might have raised a credible argument as to divergent or antagonistic interests between the representative and the remainder of the class.

[36]  7A FEDERAL PRACTICE & PROCEDURE: CIVIL §1766 at 362 n.12-14 (citing cases) and 99 n.12-14 (2013 supplement) (citing cases).

[37]  Order Appointing Lead Plaintiff and Approving Lead Plaintiff's Selection of Counsel dated November 1, 2012.

[38]  S. Rep. No. 104-98, at 11 (1995); 15 U.S.C. §78u-4(a)(3)(B); see also 7A FEDERAL PRACTICE & PROCEDURE: CIVIL §1766 at 372; §1767.

[39]  Deepwater Horizon, 739 F.3d at 813; see also 7A FEDERAL PRACTICE & PROCEDURE: CIVIL §1766 at 372-73 n.19-20; §1768.

[40]  Deepwater Horizon, 739 F.3d at 814; see also 7A FEDERAL PRACTICE & PROCEDURE: CIVIL §1767 at 390 n.2.

ever file a lawsuit and that even if the Pension Plan decides to file a lawsuit, it is not obligated to consider or select Robbins Geller Rudman & Dowd LLP as counsel. The New York State Bar Association has issued an ethics opinion on this specific type of agreement and determined that no conflict of interest is present because "[i]t is inherent in the attorney-client relationship that a lawyer may benefit from a recommendation that legal services are needed with respect to a particular problem."[41] The ethics committee concluded that "[a] lawyer may accept retention by a client, without compensation, to review the client's investment portfolio in order to identify any potential securities fraud claims that the client may have, under the circumstances described above, even though the client may retain the lawyer, on a paying basis, to handle any resulting litigation."[42] Beyond my review of the agreement and the NYSBA ethics opinion, I find it significant that defendants did not challenge Lead Plaintiff's adequacy based upon the existence of the monitoring agreement in this case. My review of the authorities cited in Lead Plaintiff's motion for reconsideration rejecting this contention further supports my conclusion that the monitoring arrangement does not detract from Lead Plaintiff's adequacy in this case.[43]

(ix)    Lead Counsel's zeal and competence is evident in both its (understandably biased) firm resume and the (unbiased) commentary from the Judges of this Court and in this Circuit.[44] I find it notable that Defendants did not challenge the qualifications of Robbins Geller Rudman & Dowd LLP.

---

[41] NYSBA Ethics Opinion 824 (dated July 2, 2008).

[42] *Id.* At my request, Lead Counsel confirmed that it is not aware of any class certification decisions disqualifying a class representative based upon a finding that a monitoring agreement negatively impacts adequacy. Neither am I. Entry into an agreement of this type is a logical – indeed, desirable – precaution for an institutional investor. It supports the type of vigilance one would want in a class representative.

[43] One could argue that the Pension Plan's adoption of the monitoring agreement ensured that, as an institutional investor, it was made aware of the case and its ability to serve as lead plaintiff – both of which are stated goals underlying the enactment of the Private Securities Litigation Reform Act of 1995.

[44] Robbins Geller Rudman & Dowd LLP firm resume; *Buettgen v. Harless*, 2011 U.S. Dist. LEXIS 53888, at *27 (N.D. Tex. May 19, 2011) (Kinkeade, J.) ("Robbins Geller is competent and will adequately represent the class.");

**Rule 23(b)(3): Predominance and Superiority**

11.     In addition to the Rule 23(a) requirements, the Court also must find that Rule 23(b) is satisfied, in particular, that "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[45]

12.     My review of the record in this case and general familiarity with the applicable case law indicates that predominance and superiority have been satisfied.[46]

**Predominance**

13.     "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[47]   When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters [may] have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members," a situation that "typically arises in antitrust or securities-fraud cases."[48]   As long as "defendant's activities present a 'common course of conduct' so that the issue of statutory liability is common to the class, the fact that damages or, in some securities cases, reliance may vary for each party does not require that the class action be terminated as being beyond the scope

---

*In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 789 (S.D. Tex. 2008) (Harmon, J.) (commenting that "the skills, expertise, commitment, and tenacity of Lead Counsel in this litigation cannot be overstated," particularly in light of "the unparalleled results, \$7.2 billion in settlement funds, which demonstrate counsel's clearly superlative litigating and negotiating skills").

[45]    Fed. R. Civ. P. 23(b)(3); 7AA FEDERAL PRACTICE & PROCEDURE: CIVIL §1777 at 114.

[46]    Defendants conceded that superiority was satisfied. *See* Opposition to Class Certification Motion.

[47]    *Amchem*, 521 U.S. at 623 (citing 7A Wright, Miller & Kane 518-19).

[48]    7AA FEDERAL PRACTICE & PROCEDURE: CIVIL §1778 at 124 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) (holding that common questions of law and fact predominated over individual questions when liability would be tried separately from issues of causation, damages and contributory negligence, all of which would be tried individually)); *Amchem*, 521 U.S. at 625 (noting that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud").

- 12 -

21

of Rule 23(b)(3)."[49]   Rule 23(c)(4) contemplates this scenario by providing for the maintenance of a "class action with respect to particular issues."[50]

14.   Particularly in a securities case like this one, assessing whether questions of law or fact common to class members predominate "begins, of course, with the elements of the underlying cause of action."[51]   However, Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.'"[52] Rather, the rule requires "that common questions 'predominate over any questions affecting only individual [class] members.'"[53]   In addition, the Fifth Circuit Court of Appeals recently reiterated that "[a]t the Rule 23 stage," "'a federal court must assume arguendo the merits of [each named plaintiff's] legal claim.'"[54]

15.   In the context of a securities class action, the Supreme Court has explained that when the nature of a claim or defense is such that "[i]t will prevail or fail in unison," the "class is entirely cohesive" because in "no event will the individual circumstances of particular class members bear on the inquiry."[55]   Following this holding, the Fifth Circuit has now recognized that there are "two crucial questions" courts must ask when conducting the predominance inquiry in a securities case: (1) does the question call for "an objective inquiry that could 'be proved

---

[49]   7AA FEDERAL PRACTICE & PROCEDURE: CIVIL §1778 at 124-25.

[50]   Fed. R. Civ. P. 23(c)(4). *See Butler v. Sears Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014).

[51]   *Erica P. John Fund, Inc. v. Halliburton Co.*, __ U.S. __, 131 S. Ct. 2179, 2184 (2011) (assessing predominance of common questions involving element of securities claim at class certification stage).

[52]   *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184 (2013) (assessing predominance of common questions involving element of securities claim at class certification stage).

[53]   *Id.*; *Deepwater Horizon*, 739 F.3d at 817.

[54]   *Id.* at 803.

[55]   133 S. Ct. at 1191 ("the plaintiff class's inability to prove materiality would not result in individual questions predominating" because "failure of proof on the issue of materiality would end the case").

through evidence common to the class;'" and (2) is there "a risk that a failure of proof on the question . . . would 'result in individual questions predominating.'"[56]

16.    The elements of a §11 claim are set forth in the statute.  A plaintiff must allege that the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."[57]  Thus, there are two questions facing Lead Plaintiff and the class in this case: (a) did the registration statement and prospectus issued by Kosmos in connection with the IPO contain untrue statements or omissions; and (b) were the untrue statements or omissions material?[58]  Not only are these common questions, they will be answered uniformly for every investor either in the affirmative or in the negative.[59]  Stated differently, there cannot be individualized answers to either of these questions.

17.    As the Supreme Court has held in a securities case at the class certification stage, "the falsity or misleading nature of the defendant's alleged statements or omissions are common questions that need not be adjudicated before a class is certified" and "materiality is a 'common questio[n]' for purposes of Rule 23(b)(3)."[60]  Because the elements of Lead Plaintiff's and the class' claim only involve common questions (falsity and materiality), those questions obviously predominate over non-existent individual ones.

18.    Assuming the Court accepts the parties' joint settlement proposal, defendants' potential affirmative defenses will be moot and are less relevant to the predominance analysis in

---

[56]    *Erica P. John Fund*, 718 F.3d at 431.

[57]    15 U.S.C. §77k(a); *Krim v. BancTexas Group*, 989 F.2d 1435, 1445 (5th Cir. 1993).

[58]    Complaint ¶51; Class Certification Motion at 8-9.

[59]    *Deepwater Horizon*, 739 F.3d at 818; *see also* 7AA FEDERAL PRACTICE & PROCEDURE: CIVIL §1781.1 at 272-73 n.13 ("The general rule in actions alleging fraudulent representations is that if they were made in written form, the material facts pertinent to proving defendants' liability for the statements are common to all purchasers who received the written communication and the predominance question is satisfied.").

[60]    *Amgen*, 133 S. Ct. at 1196, 1200 (alteration in original).

the context of certifying a settlement class than they otherwise might be in certifying a litigation class.[61]  In the interest of thoroughness, however, I am aware that among other affirmative defenses if the action went forward, defendants might attempt to negate liability pursuant to §11 by introducing evidence at trial that an investor "knew of such untruth or omission."[62]  The defendants have stated their intent to assert this defense against Lead Plaintiff and the entire class.[63]  On its face, the defense asks an objective and common question.  Defendants' expert report in opposition to class certification confirmed that common proof would be used to establish that publicly available articles transmitted the truth to Lead Plaintiff and the class.[64]  This defense therefore asks a common question that can be answered by common proof.  And, if defendants were to prevail in proving their defense at trial, no investor who purchased stock after the date the truth entered the market would be able to maintain a §11 claim.[65]  This defense also presents a classic common question that supports a finding of predominance.[66]

19.     Even if there was a remote possibility that defendants' affirmative defense could require individual answers, the Fifth Circuit has recognized that the presence of "individual questions" "is not fatal to class certification."[67]  I note that although the Order concluded otherwise, the Court apparently was not made aware of the Fifth Circuit's recent decision in *In re Deepwater Horizon*[68] which expressly condones this approach in a far more incongruous and

---

[61]  *Amchem*, 521 U.S. at 620 (noting that certain factors can be less relevant in the settlement context because "the proposal is that there be no trial").

[62]  15 U.S.C. §77k(a).

[63]  Kosmos and Individual Defendants' Answer at 10-14; Underwriter Defendants' Answer at 12-18.

[64]  Declaration of Glenn Hubbard, ¶¶26-30.

[65]  15 U.S.C. §77k(a); *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 n.1 (2d Cir. 2007).

[66]  7AA FEDERAL PRACTICE & PROCEDURE: CIVIL §1778 at 124-25; §1781.1 at 268 n.11.

[67]  *Deepwater Horizon*, 739 F.3d at 815-16; 7AA FEDERAL PRACTICE & PROCEDURE: CIVIL §1778 at 124.

[68]  739 F.3d 790 (5th Cir. 2014).

- 15 -

24

expansive factual scenario than the one presented in this case involving a homogenous class of Kosmos shareholders purportedly harmed by the alleged misstatements and omissions contained in the offering documents used to effectuate the IPO.[69]   The Fifth Circuit held in that case that "[e]ven after *Comcast*, the predominance inquiry can still be satisfied under Rule 23(b)(3) if the proceedings are structured to establish 'liability on a class-wide basis, with separate hearings to determine – if liability is established – the damages of individual class members.'"[70]   Rule 23(c)(4) permits courts to maintain a "class action with respect to particular issues."[71]   Thus, it would be entirely appropriate to certify the class for purposes of establishing defendants' liability and holding separate trials for individualized issues.[72]

20.   Finally, I note that §11 damages are calculated pursuant to a mandatory statutory formula for every damaged investor.[73]   Because of this statutory methodology, the question of whether there are damages and how those damages will be calculated is always a common question shared by all class members.[74]

21.   In sum, the common questions of liability and damages predominate over any possible individual inquiries related to one of defendants' many defenses (assuming the case does not settle and proceeds to trial).

---

[69]   *Id.* at 816-17.  The class certified in *Deepwater Horizon* was comprised of "'tens of thousands of individuals and businesses that have been economically damages by the spill.'"  *Id.* at 804.  It is notable that, despite the obvious plethora of individual questions that likely existed in such a class, the Fifth Circuit nonetheless upheld the district court's decision to certify the class and approve the settlement in that case.

[70]   *Deepwater Horizon*, 739 F.3d at 817.

[71]   Fed. R. Civ. P. 23(c)(4); *Deepwater Horizon*, 739 F.3d at 816-17.

[72]   *Id.*; *Mullen*, 186 F.3d 620 (holding that common questions of law and fact predominated over individual questions when liability would be tried separately from issues of causation, damages and contributory negligence, all of which would be tried individually); *see also* 7AA FEDERAL PRACTICE & PROCEDURE: CIVIL §1778 at 124; §1781.1 at 264.

[73]   15 U.S.C. §77k(e) ("Measure of damages").

[74]   *Deepwater Horizon*, 739 F.3d at 815-19; 7AA FEDERAL PRACTICE & PROCEDURE: CIVIL §1781.1 at 265 (differences in the amount of damages being claimed by each member will not cause the class action to fail).

**Superiority**

22.     Rule 23(b)(3) sets forth four "matters pertinent to" whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy:" "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."[75]   In the context of a certification of a settlement class, the Supreme Court has held that "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."[76]

23.     This requirement has not posed any great difficulties to class certification in the securities-fraud area.[77]   When large numbers of class members are involved and most of them have not been injured enough to bring individual suits or may not even be aware of the possibility of instituting an action, then a Rule 23(b)(3) action clearly is superior to any other means of resolving the dispute and making the investors whole.[78]   Stated simply, if the interested parties are so numerous that their joinder or intervention would burden the court or the number of individual actions would be quite large, a Rule 23(b)(3) action should be allowed.[79]

24.     As discussed in the numerosity section of this declaration, there likely are hundreds of shareholders who purchased the 33 million shares of Kosmos stock issued in connection with the IPO. ¶10(a), *supra*.  Requiring hundreds of shareholders to either intervene

---

[75]   Fed. R. Civ. P. 23(b)(3).

[76]   *Amchem*, 521 U.S. at 620 (internal citation omitted) (citing Fed. R. Civ. P. 23(b)(3)(D)).

[77]   7AA FEDERAL PRACTICE & PROCEDURE: CIVIL §1781.1 at 294 n.37.

[78]   *Id.* at 296.

[79]   7AA FEDERAL PRACTICE & PROCEDURE: CIVIL §1779 at 163.

or file their own cases is not practicable and seems unlikely given that some class members have relatively modest claims. In fact, it does not appear than any class member has expressed an interest in doing so since the original complaints were consolidated in 2012. Individual litigation is bound to yield unequal treatment of class members, at best.

25.     As a practical matter, by the time of the fairness hearing on the proposed settlement, the Court will know precisely how many class members have expressed an interest in filing their own cases by opting-out of the settlement.[80] Unless a significant percentage of class members object or opt-out of the proposed settlement, which seems unlikely, the Court can easily conclude superiority has been satisfied.

## CONCLUSION

26.     In my opinion, based upon a preponderance of the evidence in the record that I have reviewed, the Rule 23 requirements have been satisfied and pose no obstacle to this proposed settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this day of April 2014 at New York, New York.

ARTHUR R. MILLER

---

[80]   Fed. R. Civ. P. 23(e)(4)-(5).

- 18 -

27

# EXHIBIT 1

**RÉSUMÉ OF ARTHUR R. MILLER CBE**
University Professor
New York University


Office Address:  New York University School of Law
                   40 Washington Square South
                   Vanderbilt Hall 409D
                   New York, NY  10012

    Telephone:    212/ 992-8147 / fax 212/995-4238
    Secretary:    212/998-6403
    E-mail :       arthur.r.miller@nyu.edu

College Education:  University of Rochester
                    A.B. 1955, with high honors
                    Phi Beta Kappa

Professional Education:  Harvard Law School
                        LL.B. 1958, magna cum laude
                        Articles Editor, Harvard Law Review

**Employment (Academic)**

    2007 – *Present* Chairman, NYU Sports & Society Program

    2007 – *Present* University Professor, New York University

    2001-2002, 2006-2007 Visiting Professor of Law, New York University School of Law

    1987-2007, Bruce Bromley Professor of Law, Harvard Law School

    1972-2007, Professor, Harvard Law School

    1971-1972, Visiting Professor, Harvard Law School

    1965-1972, Professor, University of Michigan Law School

    1962-1965, Associate Professor, University of Minnesota Law School

    1961-1962, Lecturer, Columbia Law School

    1961-1962, Associate Director, Columbia Law School Project on International Procedure

**Employment (Firm-Related)**

2013– *Present* Of Counsel, The Lanier Law Firm, LLP, New York, New York

1989-1991, affiliated with Mayer, Brown & Platt, Chicago, Illinois

1958-1961, associated with Cleary, Gottlieb, Steen & Hamilton, New York, New York


Home Address:  350 West 22nd Street
                          New York, NY  10011-2604

Telephone:   212/367-7017   fax 212/367-7015

Born: June 22, 1934, Brooklyn, New York

**Publications relating to Civil Procedure, Copyright, and Other
Legal Topics**

Books

*Cases and Materials on Equitable Remedies*, 532 pages (mimeographed)

*Civil Procedure: Cases and Materials*, 1,389 pages, with J.J. Cound, J.H. Friedenthal,
   and J. Sexton (ten editions and one revised edition)

*Civil Procedure* (Hornbook), 880 pages, with J.H. Friedenthal and M K. Kane (four editions)

*Civil Procedure Supplement*, 513 pages, with J.J. Cound and J.H. Friedenthal (twenty-five
   editions)

*Federal Practice and Procedure*, more than forty-five volumes, with C.A. Wright,
   some with E.H. Cooper, M.K. Kane, and R. Marcus

*Intellectual Property: Patents,Trademarks and Copyright in a Nutshell*, 437 pages,
   with M.H. Davis (four editions)

*Manual -- CPLR*, 1,050 pages, with J.B. Weinstein and H.L. Korn

*Miller's Court*, 302 pages, Houghton Mifflin; paperback, New American Library (Plume)

*New York Civil Practice*, eight volumes, with J.B. Weinstein and H.L. Korn

*Pleading, Joinder and Discovery -- Cases and Materials*, 643 pages, with J.J. Cound

and J.H. Friedenthal

Sum and Substance of Civil Procedure, 417 pages, with J.H. Friedenthal (four editions)

Articles

"*From* Conley *to* Twombly *to* Iqbal: *A Double Play on the Federal Rules of Civil Procedure*," 60 Duke Law Journal 1 (2010).

"Reliving and Reflecting on *Shutts,*" 74 University of Missouri at Kansas City Law Review (2006).

"Common Law Protection for Products of the Mind; An 'Idea" Whose Time Has Come," 119 Harvard Law Review 703 (2006)

"Copyright Term Extension: Boon for American Creators and the American Economy," 45 *Journal of the Copyright Society of the USA* 319 (1998)

"Artful Pleading: A Doctrine in Search of Definition," 76 *Texas Law Review* 1781 (1998)

"Copyright Protection for Computer Programs, Databases, and Computer-Generated Works: Is Anything New Since CONTU?," 106 *Harvard Law Review* 1977 (1993)

"Confidentiality, Protective Orders, and Public Access to the Courts," 105 *Harvard Law Review* 428 (1991)

"Private Lives or Public Access: The Debate over Courthouse Confidentiality," *ABA Journal*, August 1991.

"Resolving the Asbestos Personal-Injury Litigation Crisis," 10 *Review of Litigation* 419 (1991), with P. Ainsworth

"The New Certification Standard Under Rule 11," 130 *Federal Rules Decisions* 479 (1990)

"Jurisdiction and Choice of Law in Multistate Class Actions After Phillips Petroleum Co. v. Shutts," 96 *Yale Law Journal* 1 (November 1986), with D. Crump

"Ancillary and Pendent Jurisdiction," 26 *South Texas Law Journal* 1 (Spring 1985)

"The Adversary System: Dinosaur or Phoenix," 69 *Minnesota Law Review* 1-37 (October 1984) (Lockhart Lecture)

"Of Frankenstein Monsters and Shining Knights: Myth, Reality and the 'Class Action Problem,'" 92 *Harvard Law Review* 664-94 (1979)

"Problems of Giving Notice in Class Actions," 58 Federal Rules Decisions 313-34 (1973)

"Problems in Administering Judicial Relief in Class Actions under Federal Rule 23(b)(3)," 54 *Federal Rules Decisions* 501-13 (1972)

"Service of Process Under Rule 4 -- Some Unfinished Business for the Rulemakers," 46 *Federal Rules Decisions* 101-40 (1969)

"Computers, Copyrights, and Medicine," *Visual Medicine*, June/July 1967, 32-36

"Computers and Copyright Law," 46 *Michigan State Bar* Journal 11-18 (April 1967)
"Federal Rule 44.1 and the 'Fact' Approach to Determining Foreign Law: Death Knell for a Die-Hard Doctrine," 65 *Michigan Law Review* 613-750 (February 1967)

"International Cooperation in Litigation Between the United States and Switzerland: Unilateral Procedural Accommodation in a Test Tube," 49 *Minnesota Law Review* 1069-1132 (May 1965)

Monographs and Chapters

"The August 1983 Amendments to the Federal Rules of Civil Procedure -- Promoting Effective Case Management and Lawyer Responsibility," Federal Judicial Center, 41pages (1984)

"The Class Action -- American Style," Chapter 17, 192-205, *The Cambridge Lectures* (1983)

"Attorneys' Fees in Class Actions," Federal Judicial Center, 430 paqes (1980)

"An Overview of Federal Class Actions: Past, Present and Future," Federal Judicial Center, 68 pages (1977)

"International Co-operation in Litigation: Switzerland," in *International Co-operation in Litigation: Europe* 358-81(1965), with M. Guldener

"International Co-operation in Litigation: Belgium," in *International Co-operation in Litigation: Europe* 30-51(1965) with F. Rigaux

"International Co-operation in Civil Litigation -- A Report on Practices and Procedures Prevailing in the United States." 103 pages (1961), with H. Smit

"Problems in the Transfer of Interest in a Copyright," in *Copyright Law Symposium*, Number 10, 131-193 (1959)

**Publications relating to Privacy, Information, and Computer Technology**

4

"The Assault on Privacy: Computers, Data Banks and Dossiers," 320 pages, University of Michigan Press (1971); paperback edition, New American Library (Signet) (1972)

"Computers, Data Banks and Individual Privacy: An Overview," *Columbia Human Law Review* Volume 4, Number 1, Winter 1972, pp. 1-12

"The Credit Networks: Detour to 1984," *Nation*, June 1, 1970, pp. 648-51, 669

"The Dossier Society," *University of Illinois Law Forum*, Volume 1971, Number 2, pp. 154-67

"The National Data Center and Personal Privacy," *Atlantic*, November 1967, p. 557

"On Proposals and Requirements for Solutions, Symposium: Computers, Data Banks, and Individual Privacy," 53 *Minnesota Law Review* 224-41 (December 1968)

"Personal Privacy in the Computer Age: The Challenge of a New Technology in an Information-Oriented Society," 67 *Michigan Law Review* 1089-1246 (April 1969)

"The Privacy Implications of Instructional Technology," paper prepared for the Commission on Instructional Technology (March 1969)

"The Privacy Revolution: A Report from the Barricades," 19 *Washburn Law Journal* 1-22 (Fall 1979)

"Psychological Testing and Privacy," *Think*, May-June 1969.

"The Right of Privacy -- A Look Through the Kaleidoscope," *SMU Law Review*, Volume 46, Number 1, Summer 1992.

## Professional Memberships

Life Member, American Law Institute

Member, Massachusetts and New York State Bars

Member, United States Supreme Court Bar, the Bars of all of the United States Courts of Appeal, various District Court Bars and the Bar of the United States Tax Court

## Board Memberships

Board of Directors, Fred Friendly Seminars

Strategic Advisory Board, H5 Technologies

National Policy Board, Infilaw Corp.

**Other Professional Activities**

Has argued cases in the United States Courts of Appeal in all thirteen Circuits and several cases before theUnited States Supreme Court.

Adviser to the American Law Institute's current project on Principles of the Law of Aggregate Litigation

Former member, Advisory Committee on Civil Rules of the Judicial Conference of the United States (by appointment of Chief Justices Burger and Rehnquist)

Former reporter, Advisory Committee on Civil Rules of the Judicial Conference of the United States (by appointment of Chief Justices Burger and Rehnquist)

Reporter, Task Force to Study Court Awarded Attorneys' Fees, U. S. Court of Appeals for the Third Circuit

Reporter, Study on Complex Litigation, American Law Institute

Reporter, Complex Litigation Project, American Law Institute

Member, Special Advisory Committee on Aggregation in Litigation, American Law Institute

Reporter, Civil Justice Advisory Group, U.S. District Court, District of Massachusetts

Member, Special Advisory Group to the Chief Justice of the United States Supreme Court on Federal Civil Litigation

Member, American Bar Association Special Committee on Complex and Multidistrict Litigation

Special Advisor, Board of Editors, Manual on Complex Litigation

Faculty, Federal Judicial Center

Member, American Bar Association Committee on Scientific and Economic Proof

Draftsman, Uniform Interstate and International Procedure Act

Rapporteur, Study on Taking Evidence Abroad, Secretary of State's Advisory Committee on Private International Law

Member of Council, ABA Section on Science and Technology

Member, Institute of Judicial Administration

Listed in *Who's Who in America*

**Public and Professional Activities relating to Privacy, Information, and Computer Technology**

Chairman, Massachusetts Security and Privacy Council

Member, National Commission on New Technological Uses of Copyrighted Works (CONTU)(by appointment of President Ford)

Member, Special Committee on Automated Personal Data Systems, U.S. Department of Health, Education and Welfare

Member, Special Legislative Commission on Privacy (Commonwealth of Massachusetts)

Member, Governor's Special Commission on Privacy and Personal Data (Commonwealth of Massachusetts)

Member, Panel on Legal Aspects of Information Systems, Committee on Scientific and Technical Information, Federal Council for Science and Technology

Member, Special Decennial Census Review Committee, U.S. Department of Commerce

Member, National Advisory Panel of the Project on Computer Data Banks, National Academy of Sciences

Chairman, Panel on External Affairs, Interuniversity Communications Council (EDUCOM)

Advisor, Special Committee on Computer Research, State Bar of Michigan

Director, American Association of Law Schools Projects on Computer-Assisted Instruction

Member, American Bar Association Committee on Scientific and Economic Proof

Numerous speaking and radio and television appearances on subjects including individual privacy, the census, computer technology, the National Data Center, and computers and the law

**Senate Testimony relating to Privacy, Information, and Computer Technology (in each case at the request of the Subcommittee involved)**

United States Senate Subcommittee on Technology and the Law, August 1, 1990 (caller ID)

United States Senate Subcommittee on Banking, Housing, and Urban Affairs, October 4, 1973 (consumer credit)

United States Senate Subcommittee on Financial Institutions, August 14, 1972 (amendments to Bank Secrecy Act)

United States Senate Subcommittee on Constitutional Rights, February, 1971 (governmental data banks)

United States Senate Subcommittee on Antitrust and Monopoly, December 11, 1968 (credit bureaus)

United States Senate Subcommittee on Administrative Practice and Procedure (the computer and individual privacy)

**Media Activities**

Former Legal Editor, WCVB-TV Channel 5, Boston

Former Legal Editor, "Good Morning America," ABC-TV

Former Host, "Miller's Law" and "In Context", Courtroom Television Network (Court TV)

Former Host, "Miller's Court," WCVB-TV Channel 5, Boston

Former Host, "Headlines on Trial," WRC-TV Channel 4, Washington, DC, New York, NY

Moderator, numerous public television programs

Commentator, "The Justice Files," Discovery Network

Occasional Columnist, Boston *Globe*, *USA Today*, *ABA Journal*, Los Angeles *Times*

**Honors and Awards**

Honorary Degree, Doctor of Laws, University of Rochester

Honorary Degree, Doctor of Education, Merrimack College

Honorary Degree, Doctor of Laws, Fitchburg State College

Honorary Degree, Doctor of Laws, Framingham State College

Honorary Degree, Doctor of Laws, University of the Pacific

Honorary Degree, Doctor of Laws, Thomas M. Cooley Law School

Honorary Degree, Doctor of Laws, Concord Law School

Honorary Degree, Doctor of Laws, Western State University College of Law

Hutchinson Medal for Distinguished Public Service, University of Rochester

National Academy of Television Arts and Sciences Award (Emmy) for hosting
  "The Constitution: That Delicate Balance"

Six New England Regional Academy of Television Arts and Sciences Awards
  for "Miller's Court," hosting, and "The Law Works"

Three American Bar Association Gavel Awards for promoting public understanding
  of the law

Special Recognition Gavel from the American Bar Association for twenty years service
  in promoting public understanding of the law

Award for Patient Advocacy, American Psychiatric Association

Iris Award for outstanding television

Charles Dickens Society Award for the Preservation of Literacy from the National
  Court Reporters Association

Lifetime Achievement Award, Appleseed Foundation for Justice

Chevalier-Sabreur

Dedicatee, New York University Annual Survey of American Law, Volume 67

Albert Podell Distinguished Teaching Award (May, 2010)

Commander of the Order of the British Empire (CBE), (2011)

Presidential Medal from the University of Oregon for distinguished public service.