UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| In re KOSMOS ENERGY LTD SECURITIES LITIGATION | § § § | Consolidated Civil Action No. 3:12-cv-373-B |
| | § | CLASS ACTION |
| This Document Relates To: | § § | |
| ALL ACTIONS. | § § § | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  BACKGROUND AND SUMMARY OF THE LITIGATION ...........................................2

III.  STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT ...........5

IV.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT...........5

    A.  The Settlement Was Obtained Without Fraud or Collusion ...................................6

    B.  The Complexity, Expense and Likely Duration of the Litigation Support
Final Approval of the Settlement ............................................................................7

    C.  The Stage of the Litigation Supports Approval of the Settlement..........................9

    D.  The Probability of Plaintiffs' Prevailing on the Merits Supports Final
Approval ................................................................................................................10

    E.  The Range of Possible Recovery and Certainty of Damages Supports Final
Approval ................................................................................................................13

    F.  The Opinions of Lead Counsel and Plaintiffs Support Final Approval.................14

V.  THE PLAN FOR ALLOCATING THE SETTLEMENT PROCEEDS IS FAIR,
REASONABLE AND ADEQUATE................................................................................15

VI.  CONCLUSION...............................................................................................................17

950503_2.

## CASES

*Cotton v. Hinton,*
　　559 F.2d 1326 (5th Cir. 1977) ...............................................................5, 7, 14

*Fla. Trailer & Equip. Co. v. Deal,*
　　284 F.2d 567 (5th Cir. 1960) ...............................................................8

*In re Apollo Grp., Inc. Sec. Litig.,*
　　No. 08-16971, 2010 U.S. App. LEXIS 14478
　　(9th Cir. June 23, 2010) ...............................................................12

*In re Apollo Grp., Inc. Sec. Litig.,*
　　No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
　　(D. Ariz. Aug. 4, 2008) ...............................................................12

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,*
　　No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057
　　(S.D. Fla. Apr. 25, 2011),
　　*aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.,*
　　688 F.3d 713 (11th Cir. 2012) ...............................................................12

*In re Dell Inc., Sec. Litig.,*
　　No. A-06-CA-726-SS, 2010 U.S. Dist. LEXIS 58281
　　(W.D. Tex. June 11, 2010),
　　*aff'd sub nom. Union Asset Mgmt. Holding A.G. v. Dell Inc.,*
　　669 F.3d 632 (5th Cir.), *cert. denied*, ___ U.S. ___,
　　133 S. Ct. 317 (2012) ...............................................................15, 16

*In re Enron Corp. Sec.,*
　　228 F.R.D. 541 (S.D. Tex. 2005) ...............................................................13

*In re OCA, Inc.,*
　　No. 05-2165, 2008 U.S. Dist. LEXIS 84869
　　(E.D. La. Oct. 17, 2008) ...............................................................7, 9, 11, 14

*In re OCA, Inc. Sec. & Derivative Litig.,*
　　No. 05-2165 SECTION R(3), 2009 U.S. Dist. LEXIS 19210
　　(E.D. La. Mar. 2, 2009) ...............................................................9

*In re PaineWebber Ltd. P'ships Litig.,*
　　171 F.R.D. 104 (S.D.N.Y. 1997),
　　*aff'd*, 117 F.3d 721 (2d Cir. 1997) ...............................................................5

*Klein v. O'Neal, Inc.,*
　　705 F. Supp. 2d 632 (N.D. Tex. 2010) ...............................................................14

*Maher v. Zapata Corp.,*
　　714 F.2d 436 (5th Cir. 1983) ...............................................................13

- ii -

**Page**

*McNamara v. Bre-X Minerals Ltd.*,
   214 F.R.D. 424 (E.D. Tex. 2002)........................................................................7

*McNeely v. Nat'l Mobile Health Care, LLC*,
   No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741
   (W.D. Okla. Oct. 27, 2008)................................................................................9

*Miller v. Republic Nat'l Life Ins. Co.*,
   559 F.2d 426 (5th Cir. 1977) .............................................................................5

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) ......................................................................5, 6, 7

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) .........................................................................13

*Pettway v. Am. Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) .....................................................................6, 14

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) .............................................................................6

*Salinas v. Roadway Express, Inc.*,
   802 F.2d 787 (5th Cir. 1986) ...........................................................................12

*Schwartz v. TXU Corp.*,
   No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077
   (N.D. Tex. Nov. 8, 2005)............................................................................10, 14

*Streber v. Hunter*,
   221 F.3d 701 (5th Cir. 2000) ...........................................................................11

*United States v. Tex. Educ. Agency*,
   679 F.2d 1104 (5th Cir. 1982) ........................................................................5, 9

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910)...........................................................................................5

*Young v. Katz*,
   447 F.2d 431 (5th Cir. 1971) .............................................................................9

- iii -

Page

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §77k...........................................................................................................................13, 15, 16
    §77l(a)(2) .........................................................................................................................13
    §77z-1(a)(3)(B) ...................................................................................................................3

Federal Rules of Civil Procedure
    Rule 23(e)(2)......................................................................................................................5

950503_2.

## I.     INTRODUCTION

The proposed Settlement of this Litigation provides for the payment of $10,200,000 in cash, which amount has been fully funded, in exchange for the dismissal of all claims brought against the Defendants.[1]  The proposed Settlement provides the Settlement Class with a substantial recovery, representing almost 30% of Lead Plaintiff's expert's estimate of the Settlement Class' maximum viable damages (and $10.2 million more than Defendants' estimate of damages, which was $0).[2]

In addition to recovering a significant portion of the Settlement Class' damages, the proposed Settlement avoids the hurdles Plaintiffs would have to clear with respect to Defendants' defenses and avoids the significant costs associated with proceeding to trial in this complex securities action.  The Settlement also avoids the real risk of obtaining less, or nothing at all, from Defendants after an unsuccessful trial and/or appeal.

Lead Counsel are experienced in prosecuting securities class actions and have concluded that the Settlement is a favorable result and is in the best interest of the Settlement Class.  This conclusion is based on the circumstances present here, including the substantial risks, expense and uncertainties in continuing this Litigation through the pre-trial proceedings, the completion of discovery, summary judgment and *Daubert* motions, trial and any potential appeal(s), the relative strengths and weaknesses of the claims and defenses asserted, a complete analysis of the legal and factual issues presented, past experience in litigating and taking similar complex actions to trial, the

---

[1]     All capitalized terms used herein have the same meanings as in the Stipulation of Settlement, dated as of April 28, 2014 ("Stipulation").  Dkt. No. 149.  All exhibits referenced herein are compiled in the Appendix in Support of Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and an Award of Attorneys' Fees and Expenses ("Appendix"), filed concurrently herewith.  In addition, all emphasis is added and all citations are omitted unless otherwise indicated.

[2]     *See* Declaration of X. Jay Alvarez in Support of Final Approval of Class Action Settlement, Plan of Allocation of Settlement Proceeds, and an Award of Attorneys' Fees and Expenses ("Alvarez Decl."), ¶¶8, 62, 95, 98.  Appendix at 7, 26, 32, 33.

- 1 -

serious disputes between the parties concerning the merits and damages, as well as the practical obstacles in obtaining a better result for the Settlement Class.  In light of the foregoing, an extensive analysis of the evidence, the relative strengths and weaknesses of the claims and defenses asserted, the serious issues and disputes remaining among the parties, and the time and expense of trial, Plaintiffs and Lead Counsel have concluded that the Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class.[3]

For all the reasons discussed herein and in the accompanying Alvarez Declaration, Plaintiffs respectfully request that the Court enter an order determining that the Settlement is fair, reasonable, and adequate to the Settlement Class, and granting final approval of the Settlement and entering the Judgment as provided in ¶1.11 of the Stipulation.  Moreover, the plan for allocating the settlement proceeds will fairly and equitably distribute the Net Settlement Fund among the Authorized Claimants and also warrants the Court's final approval.

## II.    BACKGROUND AND SUMMARY OF THE LITIGATION[4]

On January 10, 2012, a class action complaint alleging violations of the Securities Act of 1933 on behalf of purchasers of Kosmos common stock pursuant and/or traceable to the May 2011 initial public offering of Kosmos common stock (the "IPO") was filed.  On February 6, 2012, the action was removed to the United States District Court for the Northern District of Texas.  On July 17, 2012, George M. Mounger filed a similar class action complaint in this Court.  The complaints filed in this action, including the complaint filed by Mounger, were ordered consolidated by the Court.

---

[3]    *See* Declaration of James Flynn; Declaration of Suzanne Saville; Declaration of George M. Mounger.  Appendix at 151-164.

[4]    A detailed recitation of the history of the Litigation is contained in the Alvarez Declaration.

950503_2.

On November 1, 2012, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §77z-1(a)(3)(B), the Court appointed the Nursing Homes and Related Industries Pension Plan as Lead Plaintiff and approved its selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel.  On December 10, 2012, Lead Plaintiff filed the Consolidated Complaint.

Thereafter, on January 22, 2013, Defendants filed their motions to dismiss the Consolidated Complaint.  Lead Plaintiff filed its oppositions to the motions to dismiss on February 21, 2013 and Defendants filed their replies on March 13, 2013.  On June 24, 2013, the Court issued an order granting, in part, and denying, in part, Defendants' motions to dismiss and dismissing from the case certain other parties named as defendants in the Litigation.

On July 24, 2013, the Court entered a Scheduling Order providing deadlines for the prosecution of the Litigation, including, among other things, the hearing on class certification (December 11, 2013) and trial (February 9, 2015).  On August 1, 2013, Defendants filed their answers to the Consolidated Complaint.

On August 23, 2013, Lead Plaintiff served its First Request for Production of Documents on Defendant Kosmos and the Individual Defendants.  On August 30, 2013, Lead Plaintiff served its First Request for Production of Documents on the Underwriter Defendants.  On September 19, 2013, Defendants served their First Request for Production of Documents on Lead Plaintiff.  Thereafter, following negotiations concerning the scope of discovery, Kosmos, the Individual Defendants, the Underwriter Defendants and Lead Plaintiff produced significant discovery.

On September 11, 2013, the Court appointed former U.S. District Judge Layn Phillips as the mediator for the Litigation.

On October 3, 2013, Lead Plaintiff filed its motion for class certification, seeking to certify a class consisting of:

- 3 -

All persons and entities who purchased or otherwise acquired Kosmos Energy Ltd. common stock issued pursuant to or traceable to Kosmos's initial public offering ("IPO") Registration Statement and Prospectus that became effective on May 10, 2011 and who were damaged thereby (the "Class"). Excluded from the Class are Kosmos, the Individual Defendants and the Underwriter Defendants, such entities' successors and assigns, the directors and officers of such entities at all relevant times, as well as the members of such persons' immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any excluded party has or had a controlling interest.

Dkt. No. 119 at 1 (footnote omitted).

On November 18, 2013, Defendants filed their opposition to the motion for class certification. Lead Plaintiff filed its reply in further support of its motion for class certification on November 27, 2013. On December 11, 2013, the Court held a hearing on the motion for class certification.

On January 27, 2014, Lead Plaintiff served its First Set of Interrogatories to the Underwriter Defendants. On February 26, 2014, the Underwriter Defendants served their Responses and Objections to Plaintiff's First Set of Interrogatories to the Underwriter Defendants.

On February 27, 2014, the parties participated in a mediation session with the Court-appointed mediator. Thereafter, the parties continued settlement discussions. On March 10, 2014, the mediator informed the Court that he believed the case could be resolved through mediation. On March 19, 2014, the Court issued a Memorandum Opinion and Order denying Lead Plaintiff's motion for class certification. On April 1, 2014, Lead Plaintiff filed a motion for reconsideration of that Order.

Thereafter, as reflected in the Stipulation, the Settling Parties reached an agreement to settle the Litigation, and Plaintiffs filed their motion for preliminary approval of the Settlement. Dkt. No. 149. On May 5, 2014, this Court entered an Order Preliminarily Approving Settlement and Providing for Notice. Dkt. No. 151.

## III.     STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Rule 23(e)(2), a class action settlement must be "fair, reasonable, and adequate."

Fed. R. Civ. P. 23(e)(2).  In the Fifth Circuit, the following factors are analyzed in determining

whether this standard is met:

> (1) evidence that the settlement was obtained by fraud or collusion; (2) the
> complexity, expense, and likely duration of the litigation; (3) the stage of the
> litigation and available discovery; (4) the probability of plaintiffs' prevailing on the
> merits; (5) the range of possible recovery and certainty of damages; and (6) the
> opinions of class counsel, class representatives, and absent class members.

*Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (affirming district court's approval of

partial settlement).  As set forth herein and detailed in the Alvarez Declaration, the Settlement is a

favorable result for the Settlement Class and satisfies the factors employed by the Fifth Circuit in

evaluating whether a settlement is fair, reasonable and adequate.

## IV.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

"Compromises of disputed claims are favored by the courts . . . ."  *Williams v. First Nat'l*

*Bank*, 216 U.S. 582, 595 (1910).  Indeed, "litigants should be encouraged to determine their

respective rights between themselves."  *Cotton v. Hinton*, 559 F.2d 1326, 1330-31 (5th Cir. 1977).

"Particularly in class action suits, there is an overriding public interest in favor of settlement."  *Id.* at

1331.  Settlements "'will be upheld whenever possible because they are a means of amicably

resolving doubts and preventing lawsuits.'"  *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428

(5th Cir. 1977).

In addition, courts have found a strong initial presumption of fairness attaches to a proposed

settlement if the settlement is reached by experienced counsel after arm's-length negotiations.  *See*

*United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982); *see also In re*

*PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of

the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches

to the proposed settlement . . . ."), *aff'd*, 117 F.3d 721 (2d Cir. 1997). To a large degree, in determining the fairness and reasonableness of a proposed settlement, courts must rely on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."). Thus, if experienced counsel determine that a settlement is in the class' best interests, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

Here, the Settlement was reached by experienced, fully-informed counsel after extensive investigation and substantial formal discovery was conducted, after motions to dismiss and a motion for class certification were briefed and argued, and hard-fought settlement negotiations under the auspices of an experienced mediator occurred. Thus, this Settlement is entitled to the presumption of fairness dictated by Fifth Circuit law.

## A.     The Settlement Was Obtained Without Fraud or Collusion

One factor courts in this Circuit consider when deciding to grant approval to a settlement is whether "the settlement was obtained by fraud or collusion." *Newby*, 394 F.3d at 301. Here, there are multiple indicia that the settlement negotiations in this case have been fair, honest and at arm's length.

As detailed in the Alvarez Declaration, the parties engaged in hard-fought arm's-length negotiations, which included numerous telephone conferences and a full-day formal mediation with the assistance of an experienced mediator followed by two months of negotiating the terms of the Settlement and related documents. Alvarez Decl., ¶¶4, 67-75. Appendix at 5-6, 27-29. At all times during the settlement negotiations, both sides zealously advocated their respective positions. Indeed, the mediator has confirmed that the settlement "negotiations that led to the proposed settlement

currently before this Court were hard fought on all sides" and "were conducted at arm's length, carefully, and in good faith by all parties."[5]  Furthermore, the "mediation process involved extensive analysis of the parties' positions, including the merits of the Plan's claims, this Court's orders on defendants' motions to dismiss, and defendants' potential defenses."  Preliminary Approval Appendix Tab 1 at 8.  In addition, the mediator has opined that the "parties' lawyers were current and well-informed on the law," that "both counsel and the parties had done considerable work to prepare this case for mediation," and "that defendants had produced substantial confidential information which enabled the Plan and its counsel to assess the case."  *Id.*; *see also McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430-31 (E.D. Tex. 2002) (granting approval where "[s]ettlement was reached by knowledgeable counsel, and it was arrived at after much negotiation as is evidenced by the time it took the parties to reach an agreement").

Where, as here, the settlement resulted from arm's-length negotiations between experienced counsel after significant document production had occurred, there is "no obvious deficiency that would preclude a finding that the settlement is fair."  *In re OCA, Inc.*, No. 05-2165, 2008 U.S. Dist. LEXIS 84869, at *38 (E.D. La. Oct. 17, 2008); *Cotton*, 559 F.2d at 1330 ("Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.").

This factor supports final approval of the Settlement.

### B.  The Complexity, Expense and Likely Duration of the Litigation Support Final Approval of the Settlement

Another factor courts consider when approving of a settlement is the "complexity, expense, and likely duration of the litigation."  *Newby*, 394 F.3d at 301.  As the Fifth Circuit has recognized,

---

[5]   *See* Declaration of the Honorable Layn R. Phillips attached as Tab 1 to the Appendix of Declarations in Support of Plaintiffs' Memorandum of Law in Support of Joint Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Appendix") at 7-8 (Dkt. No. 148).

"it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly it might be considerably less (or more) than were the case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960). Settlement avoids the risks and burdens of potentially protracted litigation, avoids further costs of litigation and provides relief for the class sooner than further litigation would.

Here, several factors exist which make it more likely that, without the proposed Settlement, this case would require additional large expenditures of time and money and there would be a significant risk that the Settlement Class would obtain a result far less beneficial than the one provided by the Settlement. The factors include the following:

(a) Defendants are represented by some of the most accomplished counsel in the country who are well versed in complex securities class actions such as this;

(b) Defendants have consistently and vigorously denied liability and asserted facially reasonable explanations in response to Plaintiffs' allegations;

(c) When the parties reached an agreement to settle the Litigation, Lead Plaintiff's motion for reconsideration of the class certification order was pending. Without the proposed Settlement, Lead Plaintiff or Defendants would likely have pursued all available challenges to the order regardless of the outcome of the reconsideration motion, including an appeal to the Fifth Circuit, which would have assuredly led to delay and increased the time and expense of the Litigation (*see* Preliminary Approval Appendix Tab 1 at 8-9);

(d) Pre-trial litigation would have likely necessitated substantial contested discovery motion practice as well as summary judgment and evidentiary motions (including *Daubert* motions) involving the significant expenditure of time and expense;

(e) A trial would necessarily involve hundreds of exhibits and testimony regarding complex factual issues resulting in a foreseeable battle of the experts on dry petroleum

- 8 -

exploration, engineering and production issues and resulting financial matters, the outcome of which is by no means certain; and

(f)     Post-trial appeals involving lengthy and detailed analysis of nuanced legal and factual issues that, depending on the outcome of the appeals, could require remand to the district court for re-trial on any number of issues. *See* Alvarez Decl., ¶¶86-88. Appendix at 32-33.

The "very purpose of the compromise is to avoid the delay and expense of such a trial." *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971). As such, this factor supports final approval of the Settlement.

## C.     The Stage of the Litigation Supports Approval of the Settlement

"[N]ormally a settlement is 'a process of compromise in which, "in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation."'" *Tex. Educ. Agency*, 679 F.2d at 1108. Here, even though the Court largely denied Defendants' motions to dismiss, "that ruling provides no guarantee that [plaintiffs] will ultimately prevail on the merits." *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741, at *36 (W.D. Okla. Oct. 27, 2008). Indeed, despite that initial ruling, Defendants have strenuously and vigorously argued throughout the Litigation that the Settlement Class' claims lacked merit and the Settlement Class did not suffer any damages tethered to Defendants' alleged misconduct. *See, e.g.*, Dkt. Nos. 113, 114, 123, 124.

There can be no question that at the time the Settlement was reached, Lead Counsel had an advanced knowledge and understanding of the merits of the claims alleged in the Litigation and the defenses that would be asserted by Defendants to determine that the Settlement is fair, reasonable and adequate. *See In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165 SECTION R(3), 2009 U.S. Dist. LEXIS 19210, at *39-*40 (E.D. La. Mar. 2, 2009) ("The question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient

information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it."); *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *67-*68 (N.D. Tex. Nov. 8, 2005) (Kinkeade, J.).

Lead Counsel obtained their knowledge through, among other things, investigating the facts underlying Kosmos' complex operations and its financial position; conducting or overseeing detailed investigative interviews of several witnesses, including former Kosmos employees; successfully opposing, in substantial part, Defendants' motions to dismiss the Consolidated Complaint; conducting fact discovery, including the review and analysis of more than 480,000 pages of documents produced by Defendants; responding to discovery requests propounded by Defendants; litigating Lead Plaintiff's motion for class certification; consulting with experts in petroleum exploration, engineering and production and the damages suffered by the Settlement Class; and engaging in a lengthy mediation and negotiation process, assisted by Judge Phillips.  Alvarez Decl., ¶89.  Appendix at 33.

The knowledge and insight gained by Lead Counsel over the course of this Litigation provided them with sufficient information to evaluate the strengths and weaknesses of the Settlement Class' claims and Defendants' defenses, as well as the likelihood of obtaining a larger recovery from Defendants had the Litigation continued to trial, and guided Lead Counsel in their recommendation of the Settlement to Plaintiffs.  *Id.*

Accordingly, this factor also supports final approval.

**D.    The Probability of Plaintiffs' Prevailing on the Merits Supports Final Approval**

While Lead Counsel believes the Settlement Class' claims are sufficiently strong enough to prevail on the merits at trial, Lead Counsel and Plaintiffs recognize that, if the Litigation continued, there is a real risk that Plaintiffs might fail to convince the jury of the merits of its case, the

950503_2.

Defendants could obtain judgment in their favor, and the Settlement Class could recover nothing. *See generally* Preliminary Approval Appendix Tab 1 at 8 (stating that "the Plan would face a substantial risk that a jury would award less in damages as detailed in the Hubbard Report, if the jury made an award to the Plan at all").

Defendants argued that any misstatement concerning Kosmos' Jubilee oil production was immaterial when compared to Kosmos' overall business and other assets, Alvarez Decl., ¶93 (Appendix at 35), or that even if any of the alleged misstatements were inaccurate, the extent of such inaccuracy was immaterial. *Id*. Should any of these arguments have succeeded, Plaintiffs would have been unable to prove a required element of their claim, dooming the case.

Even if Plaintiffs succeeded in overcoming each and every defense Defendants could raise with respect to liability, Plaintiffs also would be required to make certain showings concerning causation and damages. Although Plaintiffs would present expert testimony on these issues, one cannot predict how a jury will weigh competitive experts' testimony, and the crucial element of damages would likely be reduced at trial to a "battle of the experts." Lead Counsel have sufficient experience to recognize that in such a battle there exists the substantial possibility that a trier of fact could be swayed by Defendants' experts, who would seek to minimize or eliminate the amount of Plaintiffs' losses by showing that any losses were attributable to factors other than the alleged misstatements or omissions. *See Streber v. Hunter*, 221 F.3d 701, 726 (5th Cir. 2000) (stating jury can believe whichever expert it finds more credible); *OCA*, 2009 U.S. Dist. LEXIS 19210, at *47-*48 ("Because the jury would have been faced with competing expert opinions, the resulting damage award would have been highly unpredictable.").

Even if the Settlement Class recovered a judgment after trial that was larger than the amount of the Settlement, given the time value of money, any such future recovery might not be more beneficial than receiving the benefits of the proposed Settlement now. Preliminary Approval

Appendix Tab 1 at 8-9 (stating that "the settlement, if approved, allows the settlement class to receive certain money without being exposed to the risks, costs, or delays of trial and appeal"). Moreover, any judgment after trial would still be subject to the continuing risks and vicissitudes of litigation through likely appeals. Experience shows that even very large judgments, recovered after lengthy litigation and trial, can be completely lost on appeal.[6]

And, even if the verdict was in Lead Plaintiff's favor, and was not overturned, post-trial collection efforts could take many more years of litigation. For example, in *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-C-5893 (N.D. Ill.), on May 7, 2009, the jury returned a verdict in plaintiff's favor on liability after seven years of hard-fought litigation. Five years later, the parties are *still* litigating the judgment in the Seventh Circuit Court of Appeals. Over a decade after the complaint was originally filed, and despite Robbins Geller obtaining a favorable jury verdict on liability and having judgment entered, not a single class member has received a penny. In short, the ultimate resolution of this action on the merits (and in turn, compensation to injured Settlement Class Members) via trial and appeal is indefinite at best.

Accordingly, the "tenuous legal and factual posture weighs heavily in favor of approving the present settlement." *Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 790 (5th Cir. 1986).

---

[6]     Indeed, a district court in a securities class action case overturned a jury verdict in plaintiffs' favor on loss causation grounds. *See In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008). While the plaintiffs ultimately prevailed on appeal to the Ninth Circuit, *see In re Apollo Grp., Inc. Sec. Litig.*, No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010), this case illustrates the inherent uncertainties facing both plaintiffs and defendants at every stage of litigation. *See also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr. 25, 2011) (reversing jury verdict in plaintiff's favor and granting defendants' post-trial motion for judgment as a matter of law), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

- 12 -

**E.      The Range of Possible Recovery and Certainty of Damages Supports
         Final Approval**

A "proper evaluation of a proposed settlement agreement should include an estimate of the
range of possible monetary recovery on the claims being compromised." *Maher v. Zapata Corp.*,
714 F.2d 436, 461 (5th Cir. 1983).  "'The fact that a proposed settlement may only amount to a
fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is
grossly inadequate and should be disapproved.'" *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th
Cir. 1982).  In fact, "'there is no reason, at least in theory, why a satisfactory settlement could not
amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'" *Id.*;
*see also In re Enron Corp. Sec.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point
would save great expense and would give the Plaintiffs hard cash, a bird in the hand.").

Here, Defendants strenuously argued that the potential recovery was $0 because "the class
suffered no damages." *See* Dkt. No. 123 at 14.  Defendants' expert, Glenn Hubbard, opined that "the
disclosure of information about production issues at Jubilee Field following Kosmos' IPO did not
cause any declines in Kosmos' stock price during the Class Period."  Dkt. No. 124 at Appx. 000035.
As a result, he concluded that "there is no economic evidence that the members of the putative class
have been damaged as a result of the alleged misrepresentations and omissions Plaintiffs describe in
their complaint." *Id.*  Lead Plaintiff disagreed with Defendants' assessment of the case, and has
estimated a realistic scenario for damages at trial at approximately $35 million.

Moreover, as Professor Miller explains in his declaration, "the settlement reached in this
case, if approved, will exceed the median settlements in cases asserting §11 and §12(a)(2) claims,
since the proposed settlement represents an amount equal to approximately 300% of the median
Securities Act settlement[s] and an amount equal to approximately 200% of the median securities

- 13 -

class action settlements in the Fifth Circuit."[7]  In addition, the $10.2 million settlement in this case exceeds by more than 40% the median settlement in cases settling after a ruling on motion to dismiss but before a ruling on motion for summary judgment.  *Securities Class Action Settlements – 2013 Review and Analysis* (Cornerstone Research 2014).[8]

While "[n]either side received all which it desired," "[s]uch is the nature of compromise." *Cotton*, 559 F.2d at 1334.  Appropriately viewed in this context, the amount of the proposed Settlement supports preliminary approval.  *See OCA*, 2008 U.S. Dist. LEXIS 84869, at *39 (finding that "the $6.5 million settlement, although less than 20% of plaintiffs' damage estimate of $32 million, appears to be within a reasonable range for approval"); *see also* Preliminary Approval Appendix Tab 2 at 14-20.

### F.    The Opinions of Lead Counsel and Plaintiffs Support Final Approval

"The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when evaluating a proposed settlement.  *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010) (Fitzwater, J.) (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)); *Cotton*, 559 F.2d at 1330 ("the trial court is entitled to rely upon the judgment of experienced counsel for the parties").  Indeed, "where the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'"  *Schwartz*, 2005 U.S. Dist. LEXIS 27077, at *72.

Here, Lead Counsel and Plaintiffs believe that this Settlement merits final approval.  Given that the Settlement provides a substantial recovery for the Settlement Class and given the risks in

---

[7]    *See* Declaration of Arthur R. Miller in Support of Joint Motion for Preliminary Approval of Settlement.  Dkt. No. 148-2 at 16-17.

[8]    *See* http://www.cornerstone.com/getattachment/e1800abc-dc50-4df3-b7a9-cf8ee3fea116/ Securities-Class-Action-Settlements%E2%80%942013-Review-an.aspx.

litigating this action further, it is Lead Counsel's opinion that it is possible that a better result might not be obtained.  The fact that Plaintiffs have also concluded that the proposed Settlement is a fair, reasonable and adequate compromise of the claims against Defendants should be given considerable weight.

Therefore, Lead Counsel respectively submit that the analyses set forth above and all of the circumstances of the Settlement demonstrate that the Settlement is fair, reasonable and adequate.

## V.      THE PLAN FOR ALLOCATING THE SETTLEMENT PROCEEDS IS FAIR, REASONABLE AND ADEQUATE

Lead Plaintiff also seeks the Court's approval of the plan for allocating the settlement proceeds as fair, reasonable and adequate.  To obtain approval, the "allocation formula 'need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.'"  *In re Dell Inc., Sec. Litig.*, No. A-06-CA-726-SS, 2010 U.S. Dist. LEXIS 58281, at *35-*36 (W.D. Tex. June 11, 2010) (approving plan of allocation in securities class action settlement), *aff'd sub nom. Union Asset Mgmt. Holding A.G. v. Dell Inc.*, 669 F.3d 632 (5th Cir.), *cert. denied*, ___ U.S. ___, 133 S. Ct. 317 (2012).  The Plan of Allocation in this case is fair, reasonable, rational and recommended by competent counsel.

Lead Counsel prepared the Plan of Allocation after careful consideration and analysis, and without reference to any particular trading patterns of any of the Plaintiffs.  Alvarez Decl., ¶¶76-83.  Appendix at 29-31.  As Professor Feinstein explains, §11 sets forth the methodology for calculating damages.  *See* Declaration of Professor Steven P.  Feinstein, Ph.D., CFA ("Feinstein Decl."), ¶9.  Appendix at 167.  And, to be fair, reasonable and adequate, a plan of allocation in a case asserting §11 claims should employ this methodology.  *Id.*, ¶10.  Appendix at 167.  This is precisely what the Plan of Allocation in this case does.  *Id.*, ¶11.  Appendix at 168.

First, the Plan of Allocation considers how many shares of Kosmos common stock issued pursuant or traceable to the Company's Registration Statement and Prospectus were acquired by a

- 15 -

putative Settlement Class Member between May 10, 2011 through and including January 10, 2012. *See* Notice of Pendency and Proposed Settlement of Class Action at 6 (Dkt. No. 149-2).  Next, the Plan of Allocation takes into account whether any of those shares were sold on or before January 10, 2012 or were retained at the close of trading on January 10, 2012 and/or sold after January 10, 2012. *Id.*  If the shares were sold on or before January 10, 2012, the claim per share is calculated as the Purchase Price per share (not to exceed $18 per share, the IPO price) less the Sales Price per share. *Id.*  If, however, the shares were retained at the close of trading on January 10, 2012 and/or sold after January 10, 2012, the claim per share is calculated as the Purchase Price per share (not to exceed $18 per share, the IPO price) less $14.21 (the closing price of Kosmos stock on the date the lawsuit was filed).  *Id.* at 7.  This formula tracks the statutory formula precisely.  *See* Feinstein Decl., ¶9. Appendix at 167.

Because the Plan of Allocation will distribute the proceeds of the Settlement amongst all Settlement Class Members equally in a manner consistent with both the allegations in the Consolidated Complaint and §11, this approach "is a reasonable one." *Dell*, 2010 U.S. Dist. LEXIS 58281, at *36.  Accordingly, the Plan of Allocation is fair, reasonable and adequate, and should be approved.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff and Lead Counsel request that the Settlement and Plan of

Allocation are fair, reasonable and adequate, and that this Court should grant final approval of the

Settlement and the Plan of Allocation.

DATED:  June 23, 2014                    Respectfully submitted,

                                         ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                         DARREN J. ROBBINS
                                         X. JAY ALVAREZ
                                         JEFFREY D. LIGHT
                                         DANIELLE S. MYERS


                                                  s/ Darren J. Robbins
                                         DARREN J. ROBBINS

                                         655 West Broadway, Suite 1900
                                         San Diego, CA  92101
                                         Telephone:  619/231-1058
                                         619/231-7423 (fax)

                                         Lead Counsel for Plaintiff

                                         KENDALL LAW GROUP, LLP
                                         JOE KENDALL (State Bar No. 11260700)
                                         JAMIE J. MCKEY (State Bar No. 24045262)
                                         3232 McKinney Avenue, Suite 700
                                         Dallas, TX  75204
                                         Telephone:  214/744-3000
                                         214/744-3015 (fax)

                                         Liaison Counsel

CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 23, 2014.

s/ Darren J. Robbins
DARREN J. ROBBINS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  DarrenR@rgrdlaw.com

# Mailing Information for a Case 3:12-cv-00373-B

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **X Jay Alvarez**
  JayA@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Theodore Carl Anderson , III**
  tca@kilgorelaw.com,pam@kilgorelaw.com

- **Robert M Behrendt**
  rmb@kilgorelaw.com,ddb@kilgorelaw.com

- **Willie Briscoe**
  wbriscoe@thebriscoelawfirm.com

- **Warren T Burns**
  wburns@susmangodfrey.com,eehrenfeld@susmangodfrey.com

- **Daniel H Charest**
  dcharest@susmangodfrey.com,rlicon@susmangodfrey.com

- **Deborah Clark-Weintraub**
  dweintraub@scott-scott.com,edewan@scott-scott.com,efile@scott-scott.com

- **Amber L Eck**
  Ambere@zhlaw.com

- **Carol E Farquhar**
  carolf@lfdlaw.com,betsya@lfdlaw.com

- **William B Federman**
  wbf@federmanlaw.com,ngb@federmanlaw.com,law@federmanlaw.com

- **Jim L Flegle**
  jimf@lfdlaw.com,dylans@lfdlaw.com,coreyw@lfdlaw.com,lisaf@lfdlaw.com,monicaj@lfdlaw.com

- **Lionel Z Glancy**
  lglancy@glancylaw.com,dmacdiarmid@glancylaw.com,mmgoldberg@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **Katherine L I Hacker**
  khacker@susmangodfrey.com,rlicon@susmangodfrey.com

- **David J Harris**
  dharris@rgrdlaw.com

- **Zenobia V Harris**
  zharris@susmangodfrey.com,cgreer@susmangodfrey.com

- **Andrew Eric Jackson**
  ajackson@velaw.com,schiniara@velaw.com

- **James I Jaconette**
  jamesj@rgrdlaw.com,e_file_sd@rgrdlaw.com,ldeem@rgrdlaw.com

- **Geoffrey Johnson**
  gjohnson@scott-scott.com,aslaughter@scott-scott.com

- **Julie A Kearns**
  jkearns@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joe Kendall**
  administrator@kendalllawgroup.com,jkendall@kendalllawgroup.com

- **Veronica S Lewis**
  VLewis@gibsondunn.com,CFitzgerald@gibsondunn.com

- **Hamilton Philip Lindley**
  hlindley@deanslyons.com,mgoens@deanslyons.com

- **Brian M Lutz**
  BLutz@gibsondunn.com

- **James A Maro**
  jmaro@ktmc.com,pleadings@ktmc.com

- **Tricia L McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jamie Jean McKey**
  jmckey@kendalllawgroup.com,bgribble@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Danielle S Myers**
  danim@rgrdlaw.com

- **Lucas F Olts**
  lolts@rgrdlaw.com,stremblay@rgrdlaw.com

- **Terrell W Oxford**
  toxford@susmangodfrey.com,kswecker@susmangodfrey.com

- **Layn R Phillips**
  lphillips@irell.com,adr@irell.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com,stremblay@rgrdlaw.com

- **Matthew R Stammel**
  mstammel@velaw.com,schiniara@velaw.com

- **Stephen D Susman**
  ssusman@susmangodfrey.com,jmccrary@susmangodfrey.com

- **John C Wander**
  jwander@velaw.com,sadavis@velaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Brian F Maxted**
901 Main Street
Suite 5100
Dallas, TX 75202